FRANK J. FERNANDEZ, D612  E-filing
PO BOX 7500. D3 - 110
CRESCENT CITY, CA 95532

FILED

MAR - 4 2008

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

THE UNITED STATES DIST...
FOR THE NORTHERN DISTR...

IN PRO PER

FRANK J. FERNANDEZ
                        PLAINTIFF

          V.

SUSAN RISENHOOVER, F.N.P.;

MICHAEL SAYRE, M.D.;

C.E. WILLER, CC II;

JOSEPH J. KRAVITZ, CC II;

MAUREEN MC LEAN, FNP.;

R. PIMENTEL, CAPTAIN; AND

N. GRANNIS, CHIEF INMATE
APPEALS.

                        DEFENDANTS

CV 08    1266
CASE NO. _____ CRB
                        (PR)

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF; AND MONEY
AND PUNITIVE DAMAGES.
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF COMPLAINT.

          42 U.S.C. § 1983

          DEMAND FOR JURY TRIAL

FACE SHEET

# TABLE OF CONTENTS

| ITEM | PAGE |
|---|---|
| FACE SHEET | |
| TABLE OF CONTENTS | 1-2 |
| TABLE OF AUTHORITIES | 3-5 |
| INTRODUCTION | 6 |
| JURISDICTION | 6-7 |
| VENUE | 7 |
| PARTIES | 7-9 |
| EXHAUSTION | 9-10 |
| STATEMENT OF FACTS | 10-15 |
| HISTORY | 14-15 |
| CLAIMS | 16 |
| PRAYER FOR RELIEF | 17 |
| VERIFICATION / DECLARATION | 18 |
| PROOF OF SERVICE | 19 |
| MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMPLAINT 42 U.S.C. § 1983 | 20-24 |
| CLAIM I. | 25-32 |
| CLAIM II. | 32-42 |
| CLAIM III. | 42-47 |
| CLAIM IV. | 48-52 |
| CONCLUSION | 53-60 |
| EXHIBIT A | 61-76 |
| EXHIBIT B | 77-79 |
| EXHIBIT C | 80-84 |
| EXHIBIT D | 85-88 |
| EXHIBIT E | 89-109 |
| EXHIBIT F | CONT. PAGE 2 |

<u>TABLE OF AUTHORITIES</u>

<u>FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS OF THE
UNITED STATES CONSTITUTION</u>

TOUSSAINT V. MC CARTHY (VI), 926 F.2d 800, 801 (9TH CIR 1990).

MICHENFELDER V. SUMNER, 860 F.2d 328, 335 (9TH CIR 1988).

ESTELLE V. GAMBLE, 429 U.S. 97, 102, 97 S.CT. 285, 290 (1976).

SPAIN V. PROCUNIER, 600 F.2d 189, 200 (9TH CIR 1979).

HELLING V. MC KINNEY, 113 S.CT. 2475, 2480 (1993).

FARMER V. BRENNAN, 114 S.CT. 1970, 1977 (1994).

RHODES V. CHAPMAN, 101 S.CT. 2392, 2399 (1981).

DESHANEY V. WINNEBAGO COUNTY DEPT OF SOCIAL SERVICES,
489 U.S. 189, 200, 109 S.CT. 998, 1006 (1989).

TOUSSAINT V. MC CARTHY (IV), 801 F.2d 1080, 1111 (9TH CIR 1986).

WILSON V. SEITER, 111 S.CT. 2371 (1991).

JORDAN V. GARDNER, 986 F.2d 1521, 1528 (9TH CIR 1993).

MC GILL V. DUCKWORTH, 944 F.2d 344, 351 (7TH CIR 1991).

CABRALES V. COUNTY OF LOS ANGELES, 864 F.2d 1454, 1461 (9TH CIR 1988).

HOPTOWIT V. RAY, 682 F.2d 1237, 1253 (9TH CIR 1982).

ORTIZ V. CITY OF IMPERIAL, 884 F.2d 1312, 1314 (9TH CIR 1989).

MC GUCKIN V. SMITH, 974 F.2d 1050, 1060 (9TH CIR 1992).

WOLFF V. MC DONNELL, 418 U.S. 539 (1974).

KENTUCKY DEPT OF CORREC. V. THOMPSON, 798 U.S. 454, 460 (1989).

SANDIN V. CONNER, 115 S.CT. 2293, 2300 (1995).

SMITH V. SUMNER, 994 F.2d 1401, 1406 (9TH CIR 1993).

BAGGULEY V. BUSH, 953 F.2d 600, 662 (DC CIR 1991).

WOOD V. HOUSEWRIGHT, 900 F.2d 1332, 1335 (9TH CIR 1990).

LOPEZ V. SMITH, 203 F.3d 1122 (9TH CIR 2000).

CASEY V. LEWIS, 834 F. SUPP 1477, 1543 (D ARIZ 1993).

TABLE OF AUTHORITIES

GREGG V. GEORGIA , 96 S.CT. 2925 (        ).

BELL V. WOLFISH, 441 U.S. 520 , 99 S.CT. 1861 (1979).

CAPPS V. ATIYEH, 559 F. SUPP 912 (        )

LIGHTFOOT V. WALKER, 486 F. SUPP 504 (S.D. ILL 1980).

CODY V. HILLARD, 599 F. SUPP 1025, 1058 (D.S.D. 1984).

BURKS V. TEASDALE , 492 F. SUPP 650, 676 (W.D. MO 1980).

HUTCHINSON V. UNITED STATES, 838 F. 2d 390, 394 (9TH CIR 1998).


42 U.S.C. SECTION 1983.

28 U.S.C. SECTIONS 1331, 1343 AND 1391 (b), (2).

AMERICANS WITH DISABILITIES ACT OF 1990
42 U.S.C.A. SECTIONS 12111 (8), 12112 (A).


49 C.F.R. SECTION 391.41 (b), (10).

CALIFORNIA CODE OF REGULATIONS, TITLE 15, SECTIONS :

3350 (A).

3350.1 (A).

3354 (A)

3084.3 (A).

3084.6 (A), (2), (4), (5) (A) (B) (C), (6).

3384.5 (F), (1).

3385.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION
    DEPARTMENT OPERATIONS MANUAL (D.O.M.) SECTIONS :

54100.1

54100.2

54100.3

54100.5

TABLE OF AUTHORITIES

54100.6

54100.12

54100.32

91040.3

91040.9

91070.2

91070.2.1

91070.7.1

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN PRO PER

FRANK J. FERNANDEZ
        PLAINTIFF

        V.

SUSAN RISENHOOVER, FNP.;

MICHAEL SAYRE, M.D.;

C.E. WILBER, CCII

JOSEPH J. KRAVITZ, CCII

MAUREEN MC LEAN, FNP.;

R. PIMENTEL, CAPTAIN; AND

N. GRANNIS, CHIEF INMATE
APPEALS.

        DEFENDANTS

CASE NO. _____

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND MONETARY
AND PUNITIVE DAMAGES.
MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF COMPLAINT

42 U.S.C. § 1983

DEMAND FOR JURY TRIAL

INTRODUCTION

(1). PLAINTIFF, FRANK J. FERNANDEZ, BRINGS THIS COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF, AND MONETARY AND PUNITIVE DAMAGES AGAINST
THE ABOVE MENTIONED DEFENDANTS FOR THEIR RECKLESS NEGLIGENCE
AND DELIBERATE INDIFFERENCE TOWARDS PLAINTIFF'S SERIOUS MEDICAL
NEEDS DURING HIS CONFINEMENT AT PELICAN BAY STATE PRISON (HEREIN-
AFTER PBSP).

JURISDICTION

(2). THIS COMPLAINT IS BROUGHT PURSUANT TO 42 U.S.C. SECTION 1983,
BECAUSE PLAINTIFF'S CONSTITUTIONAL RIGHTS AS GUARANTEED BY

6

THE EIGTHT AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTI-
TUTION WERE VIOLATED BY THE DEFENDANTS, ACTING UNDER THE COLOR
OF STATE LAW. JURISDICTION IS BASED UPON 28 U.S.C. SECTIONS
1331 AND 1343. THE COURT ALSO HAS SUPPLEMENTAL JURISDICTION
OVER THE STATE CLAIMS.

## VENUE

(3). ALL THE CONDUCT, OF THE DEFENDANTS, GIVING RISE TO THE CLAIMS
ALLEGED IN THIS COMPLAINT AROSE IN DEL NORTE COUNTY, CALIFORNIA.
THEREFORE, VENUE IS PROPER UNDER 28 U.S.C. SECTION 1391 (b) (2).

## PARTIES

(4). PLAINTIFF, FRANK J. FERNANDEZ, IS AND WAS AT ALL RELEVANT TIMES,
MENTIONED HEREIN, AN INMATE IN THE CUSTODY, CONTROL AND CARE OF
WARDEN ROBERT A. HOREL, AND THOSE EMPLOYED AT PBSP, AND HAS
RELIED ON PRISON MEDICAL PROVIDERS TO PROVIDE HIM WITH THE NECES-
SARY, AND ADEQUATE MEDICAL CARE AND TREATMENT.

(5). DEFENDANT, SUSAN RISENHOOVER, (HEREINAFTER NURSE RISENHOOVER) IS
A FAMILY NURSE PRACTITIONER, AND IS RESPONSIBLE FOR DIAGNOSING
AND TREATING INMATES AT PBSP, AND IS FURTHER RESPONSIBLE FOR
PRESCRIBING MEDICATIONS, AND OR, TREATMENTS; AS WELL AS, ORDER-
ING MEDICAL CHRONOS FOR ANY MEDICAL CONDITIONS OR AILMENTS
OF INMATES UNDER HER CARE AND SUPERVISION.

(6). DEFENDANT, MICHAEL SAYRE, M.D., (HEREINAFTER DR SAYRE) IS A
MEDICAL DOCTOR AND CHIEF MEDICAL OFFICER AT PBSP, AND IS RESPON-
SIBLE FOR OVERSEEING ALL MEDICAL PERSONNEL FUNCTIONS, AND PARTI-
CIPATES IN THE HEALTH CARE REVIEW COMMITTEE; IN WHICH, REVIEWS
ALL MEDICAL CASES AT PBSP, AND HAS THE AUTHORITY TO APPROVE

7

OR DENY RECOMMENDED MEDICATIONS, TREATMENTS AND MEDICAL
CHRONOS ORDERED BY PRISON PHYSICIANS OR NURSES.

(7). DEFENDANT, MAUREEN MC LEAN, (HEREINAFTER NURSE MC LEAN) IS A
FAMILY NURSE PRACTITIONER AND HEALTH CARE MANAGER, AND IS RESPON-
SIBLE FOR MANAGING AND OVERSEEING THE MEDICAL DEPARTMENT AT
PBSP, AND PARTICIPATES IN THE HEALTH CARE REVIEW OF COMPLAINTS,
SUCH AS, 602 APPEALS ON MEDICAL ISSUES, AND HAS THE AUTHORITY
TO GRANT OR DENY THOSE 602 APPEALS.

(8). DEFENDANT, C.E. WILBER, (HEREINAFTER MR. WILBER) IS A CORREC-
TIONAL COUNSELLOR II AND APPEALS COORDINATOR AT PBSP, AND IS
RESPONSIBLE FOR THE SCREENING AND PROCESSING OF ALL 602 APPEALS,
AND HAS THE AUTHORITY TO GRANT OR DENY THE FILING OF ANY 602
APPEAL FILED WITHIN HIS OFFICE.

(9). DEFENDANT, JOSEPH J. KRAVITZ, (HEREINAFTER MR KRAVITZ) IS A
CORRECTIONAL COUNSELLOR II AND MEDICAL APPEALS COORDINATOR AT
PBSP, AND IS RESPONSIBLE FOR THE SCREENING AND PROCESSING OF ALL
MEDICAL 602 APPEALS, AND HAS THE AUTHORITY TO GRANT OR DENY
THE FILING OF ANY MEDICAL 602 APPEAL FILED WITHIN HIS OFFICE.

(10). DEFENDANT, R. PIMENTEL, (HEREINAFTER MR PIMENTEL) IS A CORREC-
TIONAL CAPTAIN AND APPEALS EXAMINER FOR THE DEPARTMENT OF
CORRECTIONS AND REHABILITATION IN SACRAMENTO CALIFORNIA, AND IS
RESPONSIBLE FOR THE PROCESSING AND REVIEWING 602 APPEALS AT
THE DIRECTORS LEVEL.

(11). DEFENDANT, N. GRANNIS, (HEREINAFTER MR. GRANNIS) IS CHIEF

8

OF INMATE APPEALS FOR THE DEPARTMENT OF CORRECTION AND REHABILITATION IN SACRAMENTO CALIFORNIA, AND IS RESPONSIBLE FOR THE PROCESSING AND REVIEWING 602 APPEALS AT THE DIRECTORS LEVEL, AND HAS THE AUTHORITY TO GRANT OR DENY THOSE 602 APPEALS.

(12). AT ALL TIMES MENTIONED IN THIS COMPLAINT, EACH INDIVIDUAL DEFEN- DANT WAS ACTING UNDER THE COLOR OF STATE LAW.

(13). THE DEFENDANTS NURSE RISENHOOVER, DR SAYRE, NURSE McLEAN, MR. WILBER AND MR. KRAVITZ ARE ALL CURRENTLY EMPLOYED AND WORKING AT P.B.S.P, AND CAN BE LOCATED AND REACHED AT :

> PELICAN BAY STATE PRISON
> 5905 LAKE EARL DRIVE
> PO BOX 7000
> CRESCENT CITY, CA 95531-7000

(14) THE DEFENDANTS MR PIMENTEL AND MR GRANNIS ARE BOTH EMPLOYED BY THE CALIFORNIA DEPARTMENT OF CORRECTION AND REHABILITATION, AND CAN BE LOCATED AND REACHED AT :

> INMATE APPEALS BRANCH
> PO BOX 972883
> SACRAMENTO, CA 94283-0001

EXHAUSTION

(15). ON 9-18-2006 PLAINTIFF FILED A 602 APPEAL IN REGARDS TO THE RAISED CLAIMS WITHIN HIS COMPLAINT; IN WHICH, HE HAS EXHAUSTED THROUGHOUT THE APPEAL SYSTEM AT P.B.S.P AND THE INMATE APPEALS BRANCH IN SACRAMENTO, AS WELL AS, WITH THE GOVERNMENT CLAIMS BOARD. SEE EXHIBIT A, PAGES 61 THRU 76 (602 APPEAL FILED ON 9-18-2006 BY PLAINTIFF); ALSO SEE EXHIBIT B, PAGES 77 AND 79 (VICTIM COMPENSATION AND GOVERNMENT CLAIMS BOARD RESPONSE FILED

9

ON 6-11-2007 AND ON 8-28-2007 BY ANITA AHUJA).

## STATEMENT OF FACTS

(16). ON 9-18-2006 PLAINTIFF FILED A 602 APPEAL RAISING THE RENEWAL OF HIS MEDICAL CHRONO FOR AN EXTRA MATTRESS; IN WHICH, WAS INIATIALLY ORDERED IN 2002 DUE TO PLAINTIFF'S MEDICAL CONDITION, WHICH CONSISTED OF A LOWER LUMBER DEGENERATIVE JOINT DESEASE. THE 602 APPEAL IN QUESTION WAS PARTIALLY GRANTED AT THE INFORMAL LEVEL BY NURSE J. FLOWERS; IN THAT, PLAINTIFF WAS SCHEDULED TO SEE NURSE RISENHOOVER. NO OTHER ACTION WAS TAKEN. SEE EXHIBIT A, PAGE 62 (602 APPEAL FILED ON 9-18-2006 BY PLAINTIFF).

(17). ON 10-16-2006 PLAINTIFF WAS SEEN BY NURSE RISENHOOVER; HOWEVER, NURSE RISENHOOVER, AS WELL AS, NURSE J. FLOWERS INFORMED PLAINTIFF THAT HIS MEDICAL FILE WAS NOT WITHIN THE FACILITY CLINIC, AND THAT HE WOULD HAVE TO BE BROUGHT BACK TO THE FACILITY CLINIC ON THE WEEK OF 10-23-2006. AT WHICH TIME, PLAINTIFF'S MEDICAL FILE WOULD BE PRESENT, IN ORDER FOR NURSE RISENHOOVER TO ADDRESS PLAINTIFF'S MEDICAL CHRONO FOR AN EXTRA MATTRESS. HOWEVER, PLAINTIFF WAS NEVER SUMMONED TO THE FACILITY CLINIC ON 10-23-2006.

(18). ON 11-7-2006 PLAINTIFF FILED AN AMERICANS WITH DISABILITY APPEAL (HEREINAFTER ADA APPEAL) FOR A REASONABLE MODIFICATION/ACCOMMODATION REQUEST FOR AN EXTRA MATTRESS; IN WHICH, MR WILBER REFUSED TO PROCESS. THE REASON BEING, AS MR WILBER STATED, PLAINTIFF HAD NOT SHOWN THAT HE WAS BEING DENIED OR IMPEDED. THEREFORE, AS A RESULT MR WILBER INSTRUCTED PLAINTIFF TO RESUBMIT HIS APPEAL AS A 602 APPEAL WITH A COPY OF THE EXPIRED MEDICAL CHRONO. SEE EXHIBIT C PAGES 80 THRU 84 (ADA APPEAL FILED ON 11-7-2006 BY PLAINTIFF) AND PAGE 86 (ADA APPEAL SCREENING FORM FILED

ON 11-13-2006 BY MR WILBER).

(19). ON 11-14-2006 PLAINTIFF RESUBMITTED HIS 602 APPEAL TO THE FIRST LEVEL.

(20). ON 11-15-2006 PLAINTIFF WAS SEEN BY NURSE RISENHOOVER, AND IT WAS AT THIS TIME THAT NURSE RISENHOOVER ORDERED A RENEWAL OF PLAINTIFF'S MEDICAL CHRONO FOR AN EXTRA MATTRESS; HOWEVER, NURSE RISENHOOVER INFORMED PLAINTIFF, QUOTE "... IT WILL ONLY BE A WASTE OF TIME IF I ORDER THE CHRONO, BECAUSE DR SAYRE IS GOING TO DISAPPROVE IT ANYWAY, " UNQUOTE. PLAINTIFF INQUIRED AS TO WHAT NURSE RISENHOOVER MEANT BY THIS REMARK, BEING THAT HE HAD BEEN RECEIVING THE RENEWAL OF HIS MEDICAL CHRONO FOR FIVE (5) YEARS AS A RESULT OF HIS LOWER— LUMBAR DEGENERATIVE JOINT DESEASE. NURSE RISENHOOVER'S RESPONSE WAS QUOTE "... I KNOW THIS, WHICH IS WHY I AM ORDERING THE RENEWAL OF THE CHRONO; BUT, DR SAYRE IS GOING TO BEING DISAPPROVE IT ANYWAY, " UNQUOTE. NO FURTHER DISCUSSION WAS PURSUED. SEE EXHIBIT A, PAGE 65 (MEDICAL CHRONO FOR AN EXTRA MATTRESS FILED ON 11-15-2006 BY NURSE RISENHOOVER).

(21). ON 11-16-2006 DR SAYRE DISAPPROVED PLAINTIFF'S MEDICAL CHRONO FOR AN EXTRA MATTRESS. NO REASON WAS GIVEN BY DR SAYRE AT THIS TIME. SEE EXHIBIT A , PAGE 65 (DISAPPROVED MEDICAL CHRONO FOR AN EXTRA MATTRESS, FILED ON 11-16-2006 BY DR SAYRE).

(22). ON 1-26-2007 AND ON 1-29-2007 NURSE RISENHOOVER AND DR SAYRE BOTH RESPONDED TO PLAINTIFF'S FIRST LEVEL 602 APPEAL; IN WHICH, NURSE RISENHOOVER WAS THE PRIMARY REVIEWER. TAKE NOTE, "NURSE RISEN— HOOVER PARTIALLY GRANTED PLAINTIFF'S 602 APPEAL; IN THAT, SHE

11

PARTIALLY GRANTED A THOROUGH REVIEW OF PLAINTIFF'S APPEAL. HOWEVER, SHE DENIED PLAINTIFF'S RENEWAL OF A MEDICAL CHRONO FOR AN EXTRA MATTRESS; THE VERY SAME MEDICAL CHRONO SHE ORDERED ON 11-15-2006 ALSO TAKE NOTE, NURSE RISENHOOVER ATTRIBUTES HER DENIAL TO DR SAYRE'S OPINION THAT HE DID NOT FEEL IT WAS INDICATED TO RENEW PLAINTIFF'S MEDICAL CHRONO FOR AN EXTRA MATTRESS OR FOR A LOWER TIER". SEE EXHIBIT A, PAGES 63 THRU 66 (FIRST LEVEL RESPONSE FILED ON 1-26-2007 AND 1-29-2007 BY NURSE RISENHOOVER AND DR SAYRE).

(23). ON 1-31-2007 PLAINTIFF RESUBMITTED HIS 602 APPEAL TO THE SECOND LEVEL; IN WHICH, MR KRAVITZ REFUSED TO SCREEN AND PROCESS. BECAUSE, IT WAS IN HIS OPINION THAT PLAINTIFF HAD CHANGED THE ISSUES RAISED IN HIS 602 APPEAL. THEREFORE, AS A RESULT PLAINTIFF WROTE TO MR WILBER INFORMING HIM OF MR KRAVITZ REFUSING TO SCREEN AND PROCESS PLAINTIFF'S 602 APPEAL. IN RESPONSE, MR WILBER SENT BACK PLAINTIFF'S 602 APPEAL TO MR KRAVITZ INSTRUCTING HIM TO PROCEED FORWARD WITH PLAINTIFF'S 602 APPEAL. SEE EXHIBIT D, PAGE 86 (CDC 695 FORM FILED ON 2-1-2007 BY MR KRAVITZ).

(24). ON 2-13-2007 MR KRAVITZ AND NURSE MC LEAN RESPONDED TO PLAINTIFF'S 602 APPEAL; IN WHICH MR KRAVITZ WAS THE PRIMARY REVIEWER TAKE NOTE, PLAINTIFF'S 602 APPEAL WAS DENIED BY MR KRAVITZ AND NURSE MC LEAN; HOWEVER, NURSE MC LEAN CONCLUDED, QUOTE... " THE CRITERION FOR INSUANCE OF A DOUBLE MATTRESS CHRONO, IS THAT THE PATIENT MUST HAVE DEMONSTRATED SEVERE DEGENERATIVE ARTHRITIS ON X RAY EXAMINATION. DR SAYRE BASED HIS DECISION TO DISAPPROVE THE DOUBLE MATTRESS CHRONO BASE ON PART OF YOUR PHYSICAL EXAMINATION. BASED ON THE AFOREMENTIONED THERE HAS BEEN

12

No additional evidence provided to warrant the reversal of the first level appeal decision. This concludes the review of this appeal at the second level," unquote. See exhibit A, pages 63 thru 73 (second level appeal response filed on 2-13-2007 and 2-14-2007 by Mr Kravitz and nurse McLean).

(25). On 2-19-2007 plaintiff pursued his 602 appeal to the third level; in which, was denied by Mr Pimentel and Mr Grannis. Take note, Mr Grannis concluded the following, quote... "The documentation and arguments are persuasive that the appellant has failed to support his appeal issues with sufficient evidence or facts to warrant a modification of the SLR (second level review). The SLR has presented the appellant a thorough and comprehensive review of the appellant's issue and the director's level of review (DLR) finds no basis to alter said decision. The appellant was examined by licensed physicians who determined that there was no medical evidence to support renewing the appellant's lower tier and extra mattress chronos. California code of regulations, title 15, section (CCR) 3354 establishes that only qualified medical staff shall be permitted to diagnose illness and prescribe medication and medical treatment for inmates. It is not appropriate for the appellant to self-diagnose his own medical problems and then expect a medical doctor to implement the appellant's recommendation for a course of medical treatment. Therefore no relief is provided at the DLR," unquote. See exhibit A, pages 63 thru 73 (director's level appeal decision filed on 7-8-2007 by Mr Pimentel and Mr Grannis).

# HISTORY

(26). PLAINTIFF SUFFERS FROM LOWER-LUMBAR DEGENERATIVE JOINT DESEASE; IN WHICH, HAS BEEN GIVING HIM INTENSE BACK PAIN SINCE 1993. ON 8-7-2003 PLAINTIFF HAD MAJOR BACK SURGERY; IN WHICH, CONSISTED OF INSERTING A VISTA BAK CAGE INTO HIS LOWER-LUMBAR REGION DUE TO THE SEVERE DEGENERATIVE CONDITION OF HIS LOWER-LUMBAR L 4-5. SEE EXHIBIT A, PAGES 69 THRU 72 (OPERATIVE REPORT FILED ON 9-18-2003 BY HILDA FOR DR BENJAMIN J. REMINGTON).

SINCE 1993 PLAINTIFF HAS RECEIVED PAIN MEDICATIONS FOR HIS LOWER-BACK PAIN; AND ON 4-26-2002 DR W. ECHENDU WAS THE FIRST DOCTOR AT PBSP TO ORDER A MEDICAL CHRONO FOR AN EXTRA MATTRESS DUE TO PLAINTIFF'S INABILITY TO SLEEP WITH ONLY ONE MATTRESS ON A CONCRETE SLAB, WHICH IS WHAT PLAINTIFF IS REQUIRED TO SLEEP ON, IN THE SECURITY HOUSING UNIT AT PBSP. IT IS THE REQUIREMENT OF THIS SLEEPING ON A CONCRETE SLAB WITH ONE TWO AND A HALF INCH MATTRESS, THAT HAS PRECIPITATED FURTHER PAIN AND STIFFNESS IN PLAINTIFF'S LOWER BACK, AND IT IS ALSO THE REASON WHY DR W. ECHENDU ORDERED A MEDICAL CHRONO FOR AN EXTRA MATTRESS. THIS MEDICAL CHRONO, IN QUESTION, HAS BEEN ORDERED AND RENEWED BY SIX DIFFERENT DOCTORS, AND BY NURSE RISENHOOVER HERSELF, FOR OVER A PERIOD OF FOUR YEARS. IN ADDITION, PLAINTIFF HAS SEEN OVER A TOTAL OF TWENTY FIVE DIFFERENT DOCTORS THROUGHOUT HIS INCARCERATION; THIRTEEN OF WHICH HAVE PRESCRIBED AND ORDERED PAIN MEDICATIONS FOR HIS LOWER BACK PAIN; INCLUDING NURSE RISENHOOVER.

TAKE NOTE, "THAT PLAINTIFF HAS CONSTANTLY TAKEN PAIN MEDICATIONS FOR HIS LOWER-LUMBAR DEGENERATIVE AILMENT SINCE 1999", AND "ALL THE INFORMATION AND DOCUMENTATION REGARDING THE ABOVE, IS LOCATED WITHIN PLAINTIFF'S MEDICAL FILE, AND WITHOUT DOUBT,

14

IT SUBSTANTIATES THESE FACTS AND EVENTS". FURTHERMORE, THERE IS FOURTEEN YEARS OF WRITTEN DOCUMENTATION BY NUMEROUS DOCTORS WHICH CLEARLY PROVE AND SUPPORT PLAINTIFF'S CLAIMS RAISED IN HIS 602 APPEAL, AND NOW WITHIN THIS COMPLAINT.

OBVIOUSLY, THIS INFORMATION AND DOCUMENTATION IS CONTRARY TO THE DEFENDANTS POSITION THAT NOTHING SUPPORTS PLAINTIFF'S CLAIMS. THEREFORE, THIS EXTENSIVE INFORMATION, WHICH CONSISTS OF THOUSANDS OF PAGES OF MEDICAL DOCUMENTS, CANNOT BE REGARDED AS, NOT SUFFICIENT, NOT INDICATED, NO PROOF OR NO EVIDENCE, AS THE DEFENDANTS HAVE CONCLUDED IN THEIR RESPONSES.

SEE EXHIBIT E, PAGES 90 THRU 102 (MEDICAL RADIOLOGY REPORTS FILED ON 1-8-98; 6-22-2001; 12-19-2001; 2-15-2002; 4-12-2002; 2-5-2003; 12-16-2003 AND 10-25-2004 BY DR SANDS; DR KATHLEEN J. ADAMS; DR ROBERT H. TAMBEAUX; DR MARK M. LAU; DR MICHAEL W. POTTER; DR WILLIAM R. NEMZEK; DR SAM KUKORIS; DR J. ARENAS AND DR D. M. HECHANOVA). ALSO SEE EXHIBIT F, PAGES 103 THRU 109 (MEDICAL CHRONOS ORDERED FOR AN EXTRA MATTRESS FILED ON 4-26-2002; 10-31-2002; 10-24-2003; 2-10-2004; 2-6-2004; 8-8-2004 AND 11-15-2005 BY DR W. ECHENDU; DR DWIGHT W. WINSLOW; DR DOUGLAS C. PETTERSON; DR CHARLES I. HOOPER; DR GABRIEL BORGES; DR LINDA ROWE; DR J. TRELLA; DR D. W. HECHANOVA AND NURSE RISENHOOVER). TAKE NOTE, "THAT DR DWIGHT W. WINSLOW WAS HEALTH CARE MANAGER AT PBSP, AND DR DOUGLAS C. PETTERSON WAS HEALTH CARE MANAGER AT CALIFORNIA STATE PRISON SACRAMENTO". SEE EXHIBIT G, PAGES 110 THRU 139 (MEDICATION ADMINISTRATION RECORDS FILED ON 6-6-97 THROUGHOUT 8-30-2007

CLAIMS

I

PLAINTIFF WAS DENIED COMPETENT AND ADEQUATE MEDICAL CARE/
TREATMENT BY THE DEFENDANT MR WILBER, WHEN HE REFUSED
TO PROCESS PLAINTIFF'S A.D.A APPEAL; IN WHICH, AMOUNTED TO
RECKLESS NEGLIGENCE AND DELIBERATE INDIFFERENCE, IN VIO-
LATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS GUARANTEED UNDER
THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES
CONSTITUTION

II

PLAINTIFF WAS DENIED COMPETENT AND ADEQUATE MEDICAL CARE/
TREATMENT BY THE DEFENDANTS NURSE RISENHOOVER AND DR
SAYRE, WHEN THEY DENIED TO GRANT PLAINTIFF'S 602 APPEAL AND
RENEW HIS MEDICAL CHRONO FOR AN EXTRA MATTRESS FOR HIS
LOWER-LUMBAR DEGENERATIVE JOINT DESEASE; IN WHICH, AMOUNTED
TO RECKLESS NEGLIGENCE AND DELIBERATE INDIFFERENCE, IN VIO-
LATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS GUARANTEED UNDER
THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES
CONSTITUTION

III

PLAINTIFF WAS DENIED COMPETENT AND ADEQUATE MEDICAL CARE/
TREATMENT BY THE DEFENDANTS MR KRAVITZ AND NURSE MC
LEAN, WHEN THEY DENIED TO GRANT PLAINTIFF'S 602 APPEAL
FOR AN EXTRA MATTRESS FOR HIS LOWER-LUMBAR DEGENERA-
TIVE JOINT DESEASE; IN WHICH, AMOUNTED TO RECKLESS NEGLI-
GENCE AND DELIBERATE INDIFFERENCE, IN VIOLATION OF PLAIN-
TIFF'S CONSTITUTIONAL RIGHTS GUARANTEED UNDER THE EIGHTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CON-
STITUTION

IV

PLAINTIFF WAS DENIED COMPETENT AND ADEQUATE MEDICAL
CARE/TREATMENT BY THE DEFENDANTS MR PIMENTEL AND
MR GRANNIS, WHEN THEY DENIED TO GRANT PLAINTIFF'S 602
APPEAL AND RENEW HIS MEDICAL CHRONO FOR AN EXTRA
MATTRESS FOR HIS LOWER-LUMBAR DEGENERATIVE JOINT
DESEASE; IN WHICH, AMOUNTED TO RECKLESS NEGLIGENCE
AND DELIBERATE INDIFFERENCE, IN VIOLATION OF PLAINTIFF'S
CONSTITUTIONAL RIGHTS GUARANTEED UNDER THE EIGHTH AND
FOURTEENTH AMENDMENTS OF THE UNITED STATES CON-
STITUTION

16

PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF PRAYS THIS HONORABLE COURT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND DECLARE :

(1). THE DEFENDANTS SUSAN RISENHOOVER, MICHAEL SAYRE, MAUREEN MC
LEAN, JOSEPH J. KRAVITZ, C.E. WILBER, R. PIMENTEL AND N. GRANNIS
ALL LIABLE OF RECKLESS NEGLIGENCE AND DELIBERATE INDIFFERENCE,
LIABLE FOR THE CONSTITUTIONAL VIOLATIONS ALLEGED IN THIS COMPLAINT;
AND

(2). GRANT MONETARY DAMAGES IN THE SUM OF FORTY THOUSAND DOLLARS
($40,000) FROM EACH DEFENDANT IN THEIR OFFICIAL AND INDIVIDUAL
CAPACITIES, FOR A TOTAL SUM OF FIVE HUNDRED AND SIXTY THOUSAND
DOLLARS ($560,000); AND

(3). GRANT PUNITIVE DAMAGES IN THE SUM OF FORTY THOUSAND DOLLARS
($40,000) FROM EACH DEFENDANT IN THEIR INDIVIDUAL CAPACITY, FOR
A TOTAL SUM OF TWO HUNDRED AND EIGHTY THOUSAND DOLLARS ($280,000),
AND

(4). GRANT ALL COSTS RELATING TO THE FILING OF THIS COMPLAINT, AND
ANY FUTURE FILINGS THEREOF; AND

(5). GRANT ANY AND ALL COURT COSTS; AND

(6). GRANT ANY AND ALL FUTURE ATTORNEY FEES; AND

(7). GRANT DEMAND FOR JURY TRIAL ON ALL CLAIMS; AND

(8). GRANT ANY OTHER RELIEF THAT THIS HONORABLE COURT DEEMS APPROPRIATE
IN THE INTEREST OF JUSTICE.

DATED FEB 7, 2008            S/ Frank L. Fernandez
                                    PLAINTIFF

17

## VERIFICATION / DECLARATION

I, FRANK J. FERNANDEZ, PLAINTIFF, VERIFY AND DECLARE UNDER PENALTY OF PERJURY THAT ALL THE INFORMATION / DOCUMENTATION, AND ALL CLAIMS ALLEGED HEREIN ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. EXECUTED ON FEBRUARY 7, 2008; AT PELICAN BAY STATE PRISON CRESCENT CITY, CALIFORNIA. 95532

s/ Frank J. Fernandez
PLAINTIFF

## PROOF OF SERVICE BY MAIL

(C.C.P. Section 101a #2105.5, 20 U.S.C. 1746)

I, FRANK J FERNANDEZ, am a resident of Pelican Bay State Prison, in the County of Del Norte, State of California. I am over eighteen (18) years of age and am a party to the below named action.

My Address is: P.O. Box 7500, Crescent City, CA 95531.

On the ___7___ day of __FEBRUARY__, in the year of 20 08, I served the following documents: (set forth the exact title of documents served)

_____Complaint 42 U.S.C § 1983_____

on the party(s) listed below by placing a true copy(s) of said document, enclosed in a sealed envelope(s) with postage thereon fully paid, in the United States mail, in a deposit box so provided at Pelican Bay State Prison, Crescent City, CA 95531 and addressed as follows:

U.S NORTHERN DISTRICT      CALIFORNIA ATTORNY GENERAL
Court                      455 GOlden GATE AVE
450 GOlden GATE AVE        SUITE # 11000
SAN FRANCISCO, CA          SAN FRANCISCO, CA 94102
        94102

I declare under penalty of perjury that the foregoing is true and correct.

Dated this ___7___ day of __FEBRUARY__, 20 08.

Signed: _____ (Declarant Signature)

Rev. 12/06

19

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF COMPLAINT 42 U.S.C. § 1983

## EIGHTH AMENDMENT OVERVIEW

BY VIRTUE OF THEIR CONVICTION, INMATES FORFEIT MANY OF THEIR CONSTITU-
TIONAL LIBERTIES AND RIGHTS: MANY ARE ISOLATED IN PRISONS, AND SUBJECTED
TO STRINGENT RESTRICTIONS THAT GOVERN EVERY ASPECT OF DAILY LIVES.
NONETHELESS, THOSE WHO HAVE TRANSGRESSED THE LAW ARE STILL HUMAN BEINGS.
EVEN THOSE PRISONERS AT THE BOTTOM OF THE SOCIAL HEAP ... HAVE, NONE-
THELESS, A HUMAN DIGNITY. TOUSSAINT V. MC CARTHY (VII), 926 F.2d 800, 801
(9TH CIR 1990), CERT. DENIED 112 S.CT. 213 (1991).  IN RECOGNITION OF THIS
FUNDAMENTAL PRINCIPAL, OUR JURISPRUDENCE IS CLEAR: WHILE INCARCERATION
MAY EXTINGUISH OR CURTAIL MANY RIGHTS, THE EIGHTH AMENDMENT'S PROTECTION
AGAINST CRUEL AND UNUSUAL PUNISHMENT STILL RETAIN ITS FULL FORCE
BEHIND PRISON DOORS. MICHENFELDER V. SUMNER, 860 F.2d 328, 335 (9TH
CIR 1988). IT IS A RIGHT ANIMATED BY BROAD AND IDEALISTIC CONCEPTS
OF DIGNITY, CIVILIZED STANDARDS, HUMANITY AND DECENCY. ESTELLE V.
GAMBLE, 97 S.CT. 285, 290 (   ); SEE ALSO, MICHENFELDER, 860 F.2d
AT 335; SPAIN V. PROCUNIER, 600 F.2d 189, 200 (9TH CIR 1979).
CONSISTENT WITH THESE HUMANITARIAN CONCEPTS, COURTS HAVE LONG
ACKNOWLEDGED THAT WHEN THE STATE, BY IMPRISONMENT, PREVENTS A
PERSON FROM CARING FOR HIMSELF, THE CONSTITUTION IMPOSES A CORRES-
PONDING DUTY TO ASSUME SOME RESPONSIBILITY FOR HIS SAFETY AND
GENERAL WELL BEING. HELLING V. MC KINNEY, 113 S.CT. 2475, 2480
(1993).  HAVING STRIPPED PRISONERS OF VIRTUALLY EVERY MEANS OF
SELF-PROTECTION AND FORECLOSED THEIR ACCESS TO OUTSIDE AID, SOCIETY
MAY NOT SIMPLY LOCK AWAY OFFENDERS AND LET THE STATE OF NATURE
TAKE ITS COURSE. FARMER V. BRENNAN, 114 S.CT. 1970, 1977 (1994);
RATHER, GOVERNMENT OFFICIALS MUST ENSURE THAT PRISONS, WHILE
PERHAPS RESTRICTIVE AND EVEN HARSH, RHODES V. CHAPMAN, DO NOT
DEGENERATE INTO PLACES THAT VIOLATE BASIC STANDARDS OF DECENCY

AND HUMANITY. SUPRA, 101 S.CT. 2392, 2399 (1981). IN SHORT, WHILE THE EIGHTH AMENDMENT does NOT MANDATE COMFORTABLE PRISONS ... NEITHER does IT PERMIT INHUMANE ONES. FARMER, 114 S.CT. AT 1976. THUS, IT IS WELL PAST DISPUTE THAT THE EIGHTH AMENDMENT REQUIRES THAT PRISON OFFICIALS PROVIDE INMATES WITH SUCH MINIMUM ESSENTIALS AS ADEQUATE FOOD, SHELTER, CLOTHING, MEDICAL CARE AND SAFETY.

> WHEN THE STATE BY THE AFFIRMATIVE EXERCISE OF ITS POWER So RESTRAINS AN INDIVIDUAL'S LIBERTY THAT IT RENDERS HIM UNABLE TO CARE FOR HIMSELF, AND AT THE SAME TIME FAILS TO PROVIDE FOR HIS BASIC HUMAN NEED'S ... EX., FOOD, CLOTHING, SHELTER, MEDICAL CARE AND REASONABLE SAFETY ... IT TRANSGRESSES THE SUBSTANTIVE LIMITS ON STATE ACTION SET BY THE EIGHTH AMENDMENT.

HELLING, 113 S.CT. AT 2475 (QUOTING DESHANEY V. WINNEBAGO COUNTY DEPT. OF SOCIAL SERVICES, 109 S.CT. 998, 1005-6 (1989). SEE ALSO, FARMER, 114 S.CT. AT 1976; AND TOUSSAINT V. McCARTHY (IV), 801 F.2d 1080, 1107 (9TH CIR 1986).    IN ORDER TO PREVAIL ON ANY EIGHTH AMENDMENT CLAIM ALLEGING CRUEL AND UNUSUAL PUNISHMENT, A PLAINTIFF MUST SATISFY TWO REQUIREMENTS:

> FIRST, THE DEPRIVATION ALLEGED MUST BE OBJECTIVELY, SUFFICIENTLY SERIOUS; A PRISON OFFICIAL'S ACT OR OMISSION MUST RESULT IN THE DENIAL OF THE MINIMAL CIVILIZED MEASURE OF LIFE'S NECESSITIES. FOR A CLAIM BASED ON A FAILURE TO PREVENT HARM, THE INMATE MUST SHOW THAT HE IS INCARCERATED UNDER CONDITIONS POSING A SUBSTANTIAL RISK OF SERIOUS HARM ...

> THE SECOND REQUIREMENT FOLLOWS FROM THE PRINCIPLE THAT ONLY THE UNNECESSARY AND WANTON INFLICTION OF PAIN IMPLICATES THE EIGHTH AMENDMENT. TO VIOLATE THE CRUEL AND UNUSUAL PUNISHMENTS CLAUSE, A PRISON OFFICIAL MUST HAVE A SUFFICIENTLY CULPABLE STATE OF MIND.

FARMER, 114 S.CT. AT 1977; SEE ALSO, WILSON V. SEITER, 111 S.CT.

AT 2321 (1991). THUS, EVERY EIGHTH AMENDMENT CLAIM EMBODIES AN OBJECTIVE AND SUBJECTIVE COMPONENT. WILSON, 111 S.CT. AT 2323-26. THE FORMER FOCUSES ON WHETHER THERE HAS BEEN A DEPRIVATION OR INFLICTION OF PAIN SERIOUS ENOUGH TO IMPLICATE CONSTITUTIONAL CONCERNS, WHILE THE LATTER REQUIRES INQUIRY INTO THE DEFENDANT'S STATE OF MIND TO DETERMINE WHETHER THE INFLICTION OF PAIN WAS UNNECESSARY AND WANTON. JORDAN V. GARDNER, 986 F.2d 1521, 1525-28 (9TH CIR 1993).

IN CONSIDERING WHETHER THE OBJECTIVE COMPONENT HAS BEEN MET, THE COURT MUST FOCUS ON DISCRETE AND ESSENTIAL HUMAN NEEDS SUCH AS HEALTH, SAFETY, FOOD, WARMTH OR EXERCISE. WILSON, 111 S.CT. AT 2327. THE STATE OF MIND INQUIRY PRESENTS A QUESTION OF FACT, AND IS SUBJECT TO DEMONSTRATION IN THE USUAL WAYS, INCLUDING INFERENCE FROM CIRCUMSTANTIAL EVIDENCE. FARMER, 114 S.CT. AT 1981. FOR MOST EIGHTH AMENDMENT CLAIMS, THE PLAINTIFF SATISFIES THE CULPABILITY REQUIREMENT BY PROVING THAT THE DEFENDANT'S ACTIONS OR OMISSIONS CONSTITUTE "DELIBERATE INDIFFERENCE."

THE UNITED STATES SUPREME COURT CLARIFIED THE TEST FOR DETERMINING "DELIBERATE INDIFFERENCE" IS ESSENTIALLY EQUIVALENT TO THE STANDARD FOR ESTABLISHING "SUBJECTIVE RECKLESSNESS" IN CRIMINAL CASES; FARMER, 114 S.CT. AT 198. THUS, A PLAINTIFF MUST SHOW THAT:

> THE PRISON OFFICIAL KNOWS OF AND DISREGARDS AN EXCESSIVE RISK TO INMATE HEALTH AND SAFETY; THE OFFICIAL MUST BOTH BE AWARE OF FACTS FROM WHICH THE INFERENCE COULD BE DRAWN THAT A SUBSTANTIAL RISK OF SERIOUS HARM EXISTS, AND HE MUST ALSO DRAW THE INFERENCE.

ID. AT 1979. IN OTHER WORDS, THE DEFENDANT MUST CONSCIOUSLY DISREGARD A SUBSTANTIAL RISK OF SERIOUS HARM, ID. AT 1980. SUCH A STANDARD PRESUPPOSES THAT THE DEFENDANT HAS NOT

ACTED REASONABLY IN THE FACE OF A KNOW RISK. IN SUM, DELIBERATE INDIFFERENCE OCCURS WHERE THE PRISON OFFICIAL KNOWS THAT INMATES FACE A SUBSTANTIAL RISK OF SERIOUS HARM AND DISREGARDS THAT RISK BY FAILING TO TAKE REASONABLE MEASURES TO ABATE IT, id. AT 1984. THIS STANDARD does NOT REQUIRE PLAINTIFFS TO SHOW THAT A PRISON OFFICIAL ACTED OR FAILED TO ACT BELIEVING THAT HARM ACTUALLY WOULD BEFALL AN INMATE; IT IS ENOUGH THAT THE OFFICIAL ACTED OR FAILED TO ACT DESPITE HIS KNOWLEDGE OF A SUBSTANTIAL RISK OF SERIOUS HARM. FARMER, 114 S.CT. AT 1981; NOR does THIS STANDARD MEAN THAT PRISON OFFICIALS WILL BE FREE TO IGNORE OBVIOUS DANGERS. WHILE THE OBVIOUSNESS OF A RISK IS NOT CONCLUSIVE, A FACTFINDER MAY CONCLUDE THAT A PRISON KNEW OF A SUBSTANTIAL RISK FROM THE VERY FACT THAT THE RISK WAS OBVIOUS, id. AT 1981-82. SIMILARLY, A DEFENDANT WOULD NOT ESCAPE LIABILITY IF THE EVIDENCE SHOWED THAT HE MERELY REFUSED TO VERIFY UNDERLYING FACTS THAT HE STRONGLY SUSPECTED TO BE TRUE, OR DECLINED TO CONFIRM INFERENCES OF RISK THAT HE STRONGLY SUSPECTED TO EXIST. id AT 1982; SEE ALSO, MC GILL V. DUCKWORTH, 944 F.2d 344, 351 (7TH CIR 1991); CABRALES V. COUNTY OF LOS ANGELES, 864 F.2d 1454, 1461 (9TH CIR 1988); (CITING, HOPTOWIT V. RAY, 682 F.2d 1237, 1253 (9TH CIR 1982); ORTIZ V. CITY OF IMPERIAL, 884 F.2d 1312, 1314 (9TH CIR 1989); AND ESTELLE V. GAMBLE, 429 U.S. AT 105. TAKE NOTE THAT: " INDICIA OF SERIOUS MEDICAL NEEDS INCLUDE THE EXISTENCE OF AN INJURY THAT A REASONABLE DOCTOR OR PATIENT WOULD FIND IMPORTANT AND WORTHY OF COMMENT OR TREATMENT; THE PRESENCE OF A MEDICAL CONDITION THAT SIGNIFICANTLY AFFECTS AN INDIVIDUAL'S DAILY ACTIVITIES; OR THE EXISTENCE OF CHRONIC AND SUBSTANTIAL

PAIN." MC GUCKIN V. SMITH, 974 F.2d 1050, 1059-60 (9TH CIR 1992).


FOURTEENTH AMENDMENT OVERVIEW

THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITU-
TION PROVIDES THAT, THE DUE PROCESS CLAUSES ARE TO PROTECT THE
INDIVIDUAL AGAINST ARBITRARY GOVERNMENT ACTION, IN THAT, THEY
PROHIBIT THE GOVERNMENT FROM DEPRIVING AN INMATE OF LIFE, LIBERTY
OR PROPERTY WITHOUT DUE PROCESS OF LAW. WOLFF V. MC DONNELL,
418 U.S. 539 (1974). ANALYSIS OF PROCEDURAL DUE PROCESS QUESTIONS
INVOLVES A TWO-PART INQUIRY: (1) WHETHER A PROTECTED LIBERTY OR
PROPERTY INTEREST HAS BEEN INTERFERED WITH BY THE STATE, AND
(2) WHETHER PROCEDURAL SAFEGUARDS ARE CONSTITUTIONALLY SUFFICIENT
TO PROTECT AGAINST ANY UNJUSTIFIED DEPRIVATION. KENTUCKY DEPT.
OF CORREC. V. THOMPSON, 498 U.S. 454, 460 (1989).
THESE PROTECTED LIBERTY INTEREST CAN BE CREATED (1) BY THE
DUE PROCESS CLAUSE OF ITS OWN FORCE, SANDIN V. CONNER, 115
S.CT. 2293, 2300 (1995); (2) BY A COURT ORDER, SMITH V. SUMNER,
994 F.2d 1401, 1406 (9TH CIR 1993), CERT DENIED 115 S.CT. 235
(1994); (3) BY A TREATY, BAGGULEY V. BUSH, 953 F.2d 600, 662
(DC CIR. 1991); OR (4) BY STATES THROUGH STATUTES OR REGULATIONS


———————  o  ———————

CLAIM

PLAINTIFF WAS DENIED COMPETENT AND ADEQUATE MEDICAL CARE/
TREATMENT BY THE DEFENDANT MR WILBER, WHEN HE REFUSED
TO PROCESS PLAINTIFF'S A DA APPEAL, IN WHICH AMOUNTED TO
RECKLESS NEGLIGENCE AND DELIBERATE INDIFFERENCE, IN
VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS GUARANTEED
BY THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED
STATES CONSTITUTION

PLAINTIFF CONTENDS THAT HE WAS DENIED READY ACCESS TO COMPETENT AND

ADEQUATE MEDICAL CARE/TREATMENT BY THE DEFENDANT MR WILBER, WHEN

HE REFUSED TO PROCESS PLAINTIFF'S A DA APPEAL FOR A REASONABLE MODIFI-

CATION OR ACCOMMODATION REQUEST FOR A MEDICAL CHRONO FOR AN EXTRA

MATTRESS. IN WHICH, PLAINTIFF HAD BEEN RECEIVING FOR FOUR CONSECUTIVE

YEARS FOR HIS DISABILITY. WHICH CONSISTED OF A LOWER-LUMBAR DEGEN-

ERATIVE JOINT DISEASE. SEE EXHIBIT C, PAGE    (ADA APPEAL FILED ON

11-7-2006 BY PLAINTIFF); AND PAGE    (ADA SCREENING FORM FILED ON 11-

13-2006 BY MR WILBER).

TAKE NOTE: THE CALIFORNIA CODE OF REGULATIONS TITLE 15, ARTICLE 7, SECTIONS

3084.3 AND 3085 STATES IN PART:

3084.3 (A)... "APPEALS COORDINATOR. EACH INSTITUTION HEAD AND
PAROLE REGION ADMINISTRATOR SHALL DESIGNATE AN APPEALS CO-
ORDINATOR, AT A STAFF POSITION LEVEL NO LESS THAN CORRECTIONAL
COUNSELLOR II OR PAROLE AGENT II, WHO SHALL PRIOR TO ACCEP-
TANCE FOR REVIEW SCREEN AND CATAGORIZE EACH APPEAL ORIGI-
NATING IN THEIR AREA FOR COMPLIANCE WITH THESE REGULATIONS,
AND SHALL COORDINATE THE PROCESSING OF APPEALS"

3085 ... "NO QUALIFIED INMATE OR PAROLEE WITH A DISABILITY, AS
DEFINED IN TITLE 42 U.S.C. SECTION 12102 SHALL, BY REASON
OF SUCH DISABILITY, BE EXCLUDED FROM PARTICIPATION IN, OR
BE DENIED THE BENEFITS OF THE SERVICES, PROGRAMS OR ACTI-
VITIES OF THE DEPARTMENT, OR BE SUBJECTED TO DISCRIMINATION.
(A) CDC FORM 1824, REASONABLE MODIFICATION OR ACCOMMODATION
REQUEST. IF OTHERWISE QUALIFIED OR ELIGIBLE, INMATE OR PAROLEE
WITH DISABILITIES AS DEFINED IN TITLE 42 U.S.C. SECTION
12102 MAY REQUEST REASONABLE MODIFICATION OR ACCOMMO-
DATION TO ACHIEVE ACCESS TO A PROGRAM, SERVICE OR ACTIVITY
OFFERED BY THE FACILITY, OR MAY GRIEVE AN ISSUE OF ALLEGED
DISCRIMINATION BASED ON DISABILITY, BY COMPLETING A CDC
FORM 1824. THE INMATE OR PAROLEE SHALL COMPLETE THE FRONT
SIDE OF THE FORM AND FORWARD IT TO THE APEALS COORDINA-
TOR'S OFFICE. THE FORM SHALL BE SCREENED IN ACCORDANCE

WITH SECTION 3084.3 SCREENING CRITERIA AND, IF IT MEETS
THE INITIAL SCREENING CRITERIA, IS LOGGED IN THE CDC
FORM 645, INMATE/PAROLEE APPEALS LOG, WITH THE STATUS
OF A FIRST LEVEL OF REVIEW.

(6) IF DISSATISFIED WITH THE DECISION RENDERED ON THE
CDC FORM 1824, THE APPELLANT MAY, WITHIN 15 DAY OF
RECEIPT OF THE DECISION, APPEAL TO THE SECOND LEVEL OF
REVIEW BY ATTACHING THE ORIGINAL REQUEST FORM, CDC
1824, TO A CDC FORM 602 INMATE/PAROLEE APPEAL FORM,
AND COMPLETING SECTION F OF THE CDC FORM 602.

(C) OTHER PROVISIONS PERTAINING TO INMATE OR PAROLEE
APPEALS NOT ADDRESSED IN THIS SECTION SHALL APPLY".

FURTHER TAKE NOTE: THE DEPARTMENT OPERATIONS MANUAL, ARTICLE 53, SECTIONS
54100.1, 54100.2, 54100.3, 54100.4, 54100.5, AND 54100.32 (HEREIN-
AFTER D.O.M.) STATES IN PART:

54100.1 ... "THE DEPARTMENT SHALL ENSURE DEPARTMENT APPEAL
FORMS AND FORMS PRESCRIBED BY THE B.T., THE NAEA, AND
PIA FOR APPEAL DECISIONS, ACTIONS OR POLICIES WITHIN THEIR
JURISDICTION, ARE READILY AVAILABLE TO ALL INMATES AND
PAROLEES".

54100.2 ... "THE PURPOSE OF THIS SECTION IS TO "A) PROVIDE A
VEHICLE FOR REVIEW OF DEPARTMENTAL POLICIES, PROCEDURES,
PRACTICES, CONDITIONS, INCIDENTS AND ACTIONS WHICH MAY
ADVERSELY AFFECT AN INMATE'S OR PAROLEE'S WELFARE, STATUS,
AND PROGRAM; (B) PROVIDE FOR THE RESOLUTION OF GRIEVANCES
AT THE LOWEST POSSIBLE LEVEL WITH TIMELY RESPONSES TO
THE APPELLANT; (C) PROVIDE FOR THE RESOLUTION OF REQUESTS FOR
REASONABLE MODIFICATION OR ACCOMMODATION SUBMITTED
BY ELIGIBLE INMATES/PAROLEES WITH DISABILITIES PURSUANT
TO THE ADA; (D) AFFORD THE SUCCESSFUL GRIEVANT A MEAN-
INGFUL REMEDY FOCUSED ON CORRECTING THE PROBLEM; (E)
PROVIDE AN AVENUE FOR THE EXCLUSION OF ADMINISTRATIVE
REMEDIES PRIOR TO ADVANCING TO THE COURT; AND (F) AUDIT
THE INTERNAL PROCESSES AND OPERATION OF THE DEPARTMENT
TO IDENTIFY, MODIFY, OR ELIMINATE PRACTICES WHICH MAY
NOT BE NECESSARY OR IMPEDE THE ACCOMPLISHMENT OF
CORRECTIONAL GOALS".

54100.3 ... "EACH WARDEN AND RPA SHALL IMPLEMENT THE APPEAL
PROCEDURE AND SHALL ENSURE IT OPERATES WITH SPECIFIC
POLICIES AS SET FORTH HEREIN, AND THE APPEALS COORDINATOR
SHALL PROCESS ALL APPEALS, MONITOR THE SYSTEM, PREPARE
THE QUARTERLY APPEALS REPORT, RECOMMEND CORRECTIVE
ACTION WHERE INDICATED, AND WORK WITH THE FIRST OFFICER
TO SEE THAT TRAINING ON THE APPEALS PROCEDURE IS
CARRIED OUT, AND THE APPEALS COORDINATOR'S OFFICE SHALL
RECEIVE, LOG, ROUTE, AND MONITOR DISPOSITION OF CDC FORM
1824, REASONABLE MODIFICATION OR ACCOMMODATION
REQUEST. A COPY OF CDC FORM 1824 SHALL BE FORWARDED

TO THE FACILITY' ADA COORDINATOR.

54100.4 "... ANY INMATE, PAROLEE, OR OUTPATIENT UNDER THE
JURISDICTION OF THE DEPARTMENT HAS THE RIGHT TO APPEAL
ANY DECISION, ACTION, CONDITION, POLICY, OR REGULATION OF
THE DEPARTMENT, THAT THEY CAN DEMONSTRATE AS HAVING AN
ADVERSE EFFECT ON THEIR WELFARE, AND THE ADMINISTRATIVE
REVIEW PROCESS FOR INMATE/PAROLEE REQUESTS FOR REA-
SONABLE MODIFICATION OR ACCOMMODATION, OR FOR GRIE-
VANCES FILED PURSUANT TO THE ADA SHALL BE PROCESSED
IN ACCORDANCE WITH D.O.M. SECTION 54100.32".

54100.5 "... THE CDC FORM 602, INMATE/PAROLEE FORM SHALL
NOT BE UTILIZED IN THE FOLLOWING APPEAL CATAGORIES:
1. BPT (SEE CCR (15) (2) 2050, APPEALS, BPT REGULATIONS
EXEPT AS SPECIFIED IN D.O.M. 54100.20.).
2. NAEA (SEE CCR (15) (2) 5400, APPEALS, NAEA REGULATIONS.
3. HEALH AND SAFETY GRIEVANCES (PIA) SEE D.O.M. 54100.
29.
4. INITIAL REQUESTS OR GRIEVANCES FILED BY INMATES/
PAROLES WITH disabilities PURSUANT TO THE ADA, REFER
TO D.O.M. 54100.32"

54100.32 "... IN ACCORDANCE WITH THE PROVISIONS OF THE ADA,
NO QUALIFIED INDIVIDUALS WITH A disability SHALL, ON THE
BASIS OF disability, BE EXCLUDED FROM PARTICIPATION IN, OR BE
DENIED THE BENEFITS OF, THE SERVICES, PROGRAMS, OR ACTIVITIES
OF A PUBLIC ENTITY, OR BE SUBJECTED TO discrimination.
THE FOLLOWING DEFINITIONS ARE CONTAINED IN THE ADA; 42
U.S.C. 12131, JULY 26, 1990 AND IN THE USDOJ REGULATION
28 CFR PART 35, NON discrimination ON THE BASIS OF dis-
ABILITY IN STATE AND LOCAL GOVERNMENT SERVICES; FINAL RULE,
JULY 26, 1991
1. QUALIFIED individual WITH A disability, THIS MEANS AN INDI-
VIDUAL WITH A disability WHO, WITH OR WITHOUT REASONABLE
MODIFICATIONS TO RULES, POLICIES, OR PRACTICES, THE REMOVAL OF
ARCHITECTURAL COMMUNICATION, OR TRANSPORTATION BAR-
RIERS, OR THE PROVISION OF AUXILIARY aids AND SERVICES,
MEETS THE ESSENTIAL ELIGIBILITY REQUIREMENTS FOR
THE RECEIPT OF SERVICES OR THE PARTICIPATION IN PROGRAMS
OR ACTIVITIES PROVIDED BY A PUBLIC ENTITY.
2. disability, THIS MEANS WITH RESPECT TO AN individual, A
PHYSICAL OR MENTAL IMPAIRMENT THAT SUBSTANTIALLY LIMITS
ONE OR MORE OF THE MAJOR LIFE ACTIVITIES OF SUCH indiv-
iduals; A RECORD OF SUCH AN IMPAIRMENT; OR BEING
REGARDED AS HAVING SUCH AN IMPAIRMENT.
3. PHYSICAL OR MENTAL IMPAIRMENT, THIS MEANS THE FOL-
LOWING: ANY PHYSIOLOGICAL disorder OR CONDITION, COS-
METIC disfigurement, OR ANATOMICAL LOSS AFFECTING
ONE OR MORE OF THE FOLLOWING BODY SYSTEMS: NEUROLOGI-
CAL, MUSCULOSKELETAL, SPECIAL SENSE ORGANS, RESPIRATORY
(INCLUDING SPEECH ORGANS), CARDIOVASCULAR REPRODUCTIVE,
DIGESTIVE, GENITOURINARY, HEMIC AND LYMPHATIC, SKIN
AND ENDOCRINE." (SEE FULL TEXT FOR MENTAL disorders)

IN LIGHT OF THE ABOVE RULES, REGULATIONS AND PROCEDURES, PLAINTIFF CONTENDS THAT HE WAS AND IS CONSTITUTIONALLY ENTITLED TO FILING HIS ADA APPEAL RAISING HIS CLAIMS THAT HE WAS BEING DENIED, EXCLUDED OR IMPEDED FROM RECEIVING THE RENEWAL OF HIS MEDICALLY APPROVED CHRONO FOR AN EXTRA MATTRESS, IN WHICH, WAS DETERMINED TO BE AN EFFECTIVE MEASURE, IN ADDITION TO, PAIN MEDICATIONS AND PHYSICAL THERAPY IN THE TREATMENT OF PLAINTIFF'S LOWER-LUMBAR DEGENERATIVE JOINT DISEASE. SEE EXHIBIT A, PAGES 7 THRU 10 (OPERATIVE REPORT FILED ON 8-7-2003 BY DR. BENJAMIN REMINGTON); EXHIBIT E, PAGES 89 THRU 102 (RADIOLOGY REPORTS FILED ON 1-8-1998 THROUGHOUT 10-25-2004); EXHIBIT F, PAGES 103 THRU 109 (MEDICAL CHRONOS FOR AN EXTRA MATTRESS FILED ON 4-26-2001 THROUGHOUT 10-8-2004); AND EXHIBIT G, PAGES 110 THRU 137 (MEDICATION ADMINISTRATION RECORDS FILED ON 6-6-97 THROUGHOUT 8-30-2007.
ALL THE ABOVE MENTIONED EXHIBITS SUBSTANTIATES PLAINTIFF'S DISABILITY AND THE LENGTHLY MEDICAL CARE AND TREATMENT PLAINTIFF HAS BEEN RECEIVING SINCE 1989, FOR THE INTENSE PAIN HE HAS AND CONTINUES TO ENDURE, AS A RESULT OF HIS DEGENERATIVE JOINT DISEASE.
IN LIGHT OF THE ABOVE INFORMATION AND DOCUMENTATION, MR. WILBER REFUSED TO PROCESS PLAINTIFF'S ADA APPEAL; IN VIOLATION OF, THE RULES, REGULATIONS AND PROCEDURES SETFORTH WITHIN TITLE 15, ARTICLE 7, SECTIONS 3084.3, 3085 AND D.O.M., ARTICLE 53; SECTIONS 54100.1, 54100.2, 54100.3, 54100.4; AND SPECIFICALLY THAT OF SECTION 54100.5. IN WHICH, CLEARLY STATES: " THE 602, INMATE/PAROLEE FORM SHALL NOT BE UTILIZED WITH INITIAL REQUESTS OR GRIEVANCES FILED BY INMATES/PAROLEES WITH DISABILITIES PURSUANT TO THE ADA." HOWEVER, MR. WILBER SIMPLY RETURNED PLAINTIFF'S ADA APPEAL TO HIM, INSTRUCTING PLAINTIFF TO FILE A 602 APPEAL; IN WHICH, IS CONTRARY TO WHAT PLAINTIFF IS REQUIRED TO DO. SEE EXHIBIT C, PAGE 84 (ADA APPEAL SCREENING

FORM FILED ON 11-13-2006 BY MR WILBER). TAKE NOTE: "A QUALIFIED INMATE /
PAROLEE WITH A DISABILITY WHO IS REQUESTING MODIFICATION OR ACCOMMO-
DATION PURSUANT TO A DA OR WHO HAS A GRIEVANCE BASED ON A DISABILITY
SHALL FOLLOW THE PROCEDURES IN D.O.M., ARTICLE 53, SECTION 54100.32"
IN WHICH, IN THE INSTANT CASE, PLAINTIFF HAS DONE BY FILING HIS
A DA APPEAL; YET, MR WILBER HAS FAILED TO ADHERE TO THESE SAME
ESTABLISHED RULES, REGULATIONS AND PROCEDURES SETFORTH IN THE
TITLE 15 AND D.O.M., AND AS A RESULT, HAS DENIED PLAINTIFF THE
READY ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE / TREATMENT.
PLAINTIFF CONTENDS THAT THESE ACTS AND OMISSIONS RENDERED BY
MR WILBER WERE A RECKLESS NEGLIGENCE AND DELIBERATE INDIFFERENCE
TOWARDS PLAINTIFF'S HEALTH AND WELL BEING. EVENMORESO, WHEN
PLAINTIFF HAD EXPLAINED WITHIN HIS A DA APPEAL THE CIRCUMSTANCES OF
HIS MAJOR SURGERY, WHICH CONSISTED OF A SPINAL FUSION OF HIS
LOWER-LUMBAR REGION. SEE EXHIBIT C, PAGES 80 AND 84 (A DA
APPEAL FILED ON 11-7-2006 BY PLAINTIFF). IN ADDITION, MR WILBER
NEVER TOOK THE TIME TO PERSONALLY INTERVIEW PLAINTIFF, IN ORDER TO
ACQUIRE FURTHER INFORMATION, OR TO APPOINT OTHER AUTHORIZED
STAFF TO ADDRESS THE A DA APPEAL, AS HE WAS PROCEDURALLY
REQUIRED TO DO. INSTEAD, MR WILBER REFUSED TO PROCESS PLAINTIFF'S
A DA APPEAL ALTOGETHER. FURTHERMORE, MR WILBER IS A CORRECTIONAL
COUNSELLOR, AND IS NOT OFFICIALLY AUTHORIZED (UNDER TITLE 15, ARTICLE
8, SECTION 3354 (A)) TO MAKE ANY DECISIONS OR DETERMINATIONS
REGARDING AN INMATE'S HEALTH CARE AND TREATMENT. TAKE NOTE:
TITLE 15, ARTICLE 8, SECTION 3354 (A) STATES IN PART:

> "AUTHORIZED STAFF. ONLY FACILITY EMPLOYED HEALTH CARE
> STAFF, CONTRACTORS PAID TO PERFORM HEALTH SERVICES
> FOR THE FACILITY, OR PERSONS EMPLOYED AS HEALTH CARE
> CONSULTANTS SHALL BE PERMITTED, WITHIN THE SCOPE
> OF THEIR LICENSURE, TO DIAGNOSE ILLNESS OR PRE-

SCRIBE MEDICATION AND HEALTH CARE TREATMENT FOR INMATES. NO OTHER PERSONNEL OR INMATES MAY DO SO".

THEREFORE, CLEARLY SECTION 3354 (A) PRECLUDED MR WILBER FROM MAKING ANY HEALTH CARE DECISIONS IN DETERMING WHETHER PLAINTIFF'S A DA APPEAL SHOULD OR SHOULD NOT HAVE BEEN PROCESSED. THIS POINT IS UNDOUBTEDLY CLEAR, NOT ONLY BY SECTION 3354 (A), BUT ALSO BY THE D.O.M. SECTIONS 54100.5, 54100.6 AND 54100.32, IN WHICH, REQUIRED MR WILBER TO PROCESS PLAINTIFF'S A DA APPEAL TO THE APPROPRIATE PERSONNEL, WHOM ARE AUTHORIZED UNDER SECTION 3354. (A TO MET OUT SUCH DISCISIONS, DETERMINATIONS AND CONCLUSIONS.

THE COURT IN WOOD V. HOUSEWRIGHT HELD THAT THE POSSIBLE BASES OF LIABILITY UNDER SECTION 1983 ARE AS FOLLOWS: "A PERSON SUBJECTS ANOTHER TO THE DEPRIVATION OF A CONSTITUTIONAL RIGHT, WITHIN THE MEANING OF SECTION 1983, IF HE DOES AN AFFIRMATIVE ACT, PARTICIPATES IN IN ANOTHER'S AFFIRMATIVE ACTS OR OMITS TO PERFORM AN ACT WHICH HE IS LEGALLY REQUIRED TO DO THAT CAUSES THE DEPRIVATION OF WHICH COMPLAINT IS MADE"... MOREOVER, PERSONAL PARTICIPATION IS NOT THE ONLY PREDICATE FOR SECTION 1983 LIABILITY. ANYONE WHO "CAUSES" ANY CITIZEN TO BE SUBJECTED TO A CONSTITIONAL DEPRIVATION IS ALSO LIABLE. THE REQUISITE CAUSAL CONNECTION CAN BE ESTABLISHED NOT ONLY BY SOME KIND OF DIRECT PERSONAL PARTICIPATION IN THE DEPRIVATION, BUT ALSO BY SETTING IN MOTION A SERIES OF ACTS BY OTHERS WHICH THE ACTOR KNOWS OR REASONABLY SHOULD KNOW WOULD CAUSE OTHERS TO INFLICT THE CONSTITUTIONAL INJURY. SUPRA, 900 F 2d 1332 - 35 (9TH CIR 1990). TAKE NOTE: "PLAINTIFF NEED NOT PROVE THAT HE WAS COMPLETELY DENIED MEDICAL CARE, IN ORDER TO RECOVER ON EIGHTH AMENDMENT CLAIM, BUT RATHER HE CAN ESTABLISH DELIBERATE

INDIFFERENCE BY SHOWING THAT OFFICIALS INTENTIONALLY INTERFERED WITH HIS MEDICAL TREATMENT." LOPEZ V. SMITH, 203 F.3d 1122 (9TH CIR 2000); ESTELLE, 429 U.S. AT 105; 97 S.CT. AT 285. SEE ALSO HOPTOWIT, 682 F2d AT 1253 AND CASEY V LEWIS, 834 F. SUPP AT 1245 (D. ARIZ 1993). THUS, "PRISON OFFICIALS SHOW DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS IF PRISONERS ARE UNABLE TO MAKE THEIR MEDICAL PROBLEMS KNOWN TO MEDICAL STAFF."

IN THE INSTANT CASE, PLAINTIFF CONTENDS THAT THE SUBMITTED DOCUMENTED MEDICAL INFORMATION, WITHIN THIS COMPLAINT, SUBSTANTIATES THAT PLAINTIFF DOES SUFFER FROM A LOWER-LUMBAR DEGENERATIVE JOINT DISEASE; IN WHICH, CLEARLY FALLS UNDER THE D.O.M., ARTICLE 53, SECTION 54100.32 AS BEING A RECOGNIZED DISABILITY BY THE DEPARTMENT OF CORRECTIONS AND REHABILITATION; AND THAT OF THE AMERICANS WITH DISABILITIES ACT OF 1990 42 U.S.C.A. SECTIONS 12111.3], 12101 (2)(A) AND 12112 (A). IN ADDITION, PLAINTIFF'S MEDICAL FILE CONTAINS OVER A THOUSAND PAGES OF DOCUMENTED MEDICAL REPORTS, WHICH SUPPORTS THIS DISABILITY AND THE MAJOR SURGERY THAT WAS A RESULT OF IT. IN LIGHT OF THE ABOVE, MR. WILBER CONCIENCIOUSLY AND WILLFULLY REFUSED TO PROCESS PLAINTIFF'S ADA APPEAL AS HE WAS PROCEDURALLY REQUIRED TO DO. INSTEAD, MR. WILBER INSTRUCTED PLAINTIFF TO FILE A 602 APPEAL; IN WHICH, WAS NOT THE APPROPRIATE REMEDY TO PURSUE ACCORDING TO DEPARTMENTAL PROCEDURES; AND AS A RESULT, MR. WILBER INTENTIONALLY INTERFERED WITH PLAINTIFF RECEIVING THE READY ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE/ TREATMENT; AND AS A FURTHER RESULT, DEPRIVED PLAINTIFF THE OPPORTUNITY IN MAKING HIS SERIOUS MEDICAL NEEDS KNOWN TO MEDICAL STAFF, AND SETTING IN MOTION THE CHAIN OF EVENTS THAT FOLLOWED WHICH FURTHER DEPRIVED PLAINTIFF THE READY

ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE / TREATMENT. THEREFORE,

PLAINTIFF FURTHER CONTENDS THAT THE ACTS AND OMISSIONS RENDERED

BY MR WILBER DENIED HIM THE READY ACCESS TO COMPETENT AND ADEQUATE

MEDICAL CARE / TREATMENT; IN WHICH, AMOUNTED TO RECKLESS NEGLIGENCE

AND DELIBERATE INDIFFERENCE, IN VIOLATION OF HIS CONSTITIONAL RIGHTS

GUARANTEED UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE

UNITED STATES CONSTITUTION.


## CLAIM

## II.

PLAINTIFF WAS DENIED COMPETENT AND ADEQUATE MEDICAL CARE /
TREATMENT BY THE DEFENDANTS NURSE RISENHOOVER AND
DR SAYRE, WHEN THEY DENIED TO GRANT PLAINTIFF'S 602 APPEAL
AND RENEW HIS MEDICAL CHRONO FOR AN EXTRA MATTRESS
FOR HIS LOWER-LUMBAR DEGENERATIVE JOINT DESEASE, IN
WHICH AMOUNTED TO RECKLESS NEGLIGENCE AND DELIBERATE
INDIFFERENCE, IN VIOLATION OF PLAINTIFF'S CONSTITUTIONAL
RIGHTS GUARANTEED UNDER THE EIGHTH AND FOURTEENTH
AMENDMENTS OF THE UNITED STATES CONSTITUTION

PLAINTIFF CONTENDS THAT HE WAS DENIED READY ACCESS TO COMPETENT AND

ADEQUATE MEDICAL CARE / TREATMENT BY THE DEFENDANTS NURSE RISENHOOVER

AND DR SAYRE, WHEN THEY DENIED TO GRANT PLAINTIFF'S 602 APPEAL FOR

THE RENEWAL OF HIS MEDICAL CHRONO FOR AN EXTRA MATTRESS. IN WHICH,

PLAINTIFF HAD BEEN MEDICALLY APPROVED TO RECEIVE IN 4-26-2002 FOR

HIS LOWER-LUMBAR DEGENERATIVE JOINT DESEASE; AND IN WHICH, HAD BEEN

CONTINUOUSLY RENEWED FOR FOUR CONSECUTIVE YEARS ON SEVEN DIFFERENT

OCCASIONS. TAKE NOTE: " PLAINTIFF ON 9-18-2006 INITIALLY FILED HIS 602

APPEAL, THAT NURSE FLOWERS PARTIALLY GRANTED ON 9-18-2006; IN WHICH,

MERELY CONSISTED OF SCHEDULING PLAINTIFF TO SEE NURSE RISENHOOVER TO

THE RENEWAL OF HIS MEDICAL CHRONO FOR AN EXTRA MATTRESS.

ON 10-16-2006 PLAINTIFF WAS SEEN BY NURSE RISENHOOVER AND NURSE

FLOWERS ONLY TO BE INFORMED THAT HIS MEDICAL FILE WAS NOT WITHIN

THE FACILITY CLINIC, AND THAT PLAINTIFF WOULD HAVE TO BE BROUGHT BACK TO
THE FACILITY CLINIC ON THE WEEK OF 10-23-2006. HOWEVER, PLAINTIFF WAS
NEVER CALLED BACK TO THE FACILITY CLINIC AT THAT TIME. THEREFORE, ON
11-14-2006 PLAINTIFF RESUBMITTED HIS 602 APPEAL; AND ON 11-15-2006 PLAINTIFF
WAS SEEN BY NURSE RISENHOOVER (HOWEVER, THIS VISIT WAS NOT IN RELATION
TO PLAINTIFF'S 602 APPEAL), IT WAS AT THIS POINT IN TIME THAT NURSE
RISENHOOVER ORDERED A RENEWAL OF PLAINTIFF'S MEDICAL CHRONO FOR AN
EXTRA MATTRESS, PILLOW, LOWER BUNK AND TIER, AS A RESULT OF PLAINTIFF'S
INABILITY TO SLEEP ON A CONCRETE BUNK WITH ONLY ONE MATTRESS, OR CLIMB
UP ON AN UPPER BUNK OR WALK UPSTAIRS WITHOUT THE DIFFICULTY OF PAIN."
IT IS CRITICAL TO FURTHER NOTE: "NURSE RISENHOOVER INFORMED PLAINTIFF
THAT, ALTHOUGH SHE WAS RENEWING THE MEDICAL CHRONO FOR AN EXTRA
MATTRESS, THAT IT WOULD BE A WASTE OF TIME IF SHE ORDERED IT, BECAUSE
DR SAYRE WAS GOING TO DISAPPROVE IT ANYWAY." PLAINTIFF INQUIRED AS
TO WHAT NURSE RISENHOOVER MEANT BY THIS REMARK, BEING THAT PLAIN-
TIFF HAD RECEIVED THE RENEWAL OF HIS MEDICAL CHRONO FOR FOUR CONSE-
CUTIVE YEARS, AS A RESULT OF HIS DEGENERATIVE JOINT DISEASE. NURSE
RISENHOOVER'S RESPONSE WAS, QUOTE ... "I KNOW THIS, THAT IS WHY I AM
ORDERING THE RENEWAL OF THE CHRONO", UNQUOTE.
ON 11-16-2006 DR SAYRE, DID IN FACT, DISAPPROVED PLAINTIFF'S MEDICAL
CHRONO FOR AN EXTRA MATTRESS. SEE EXHIBIT A, PAGE 65 (MEDICAL CHRONO
FILED ON 11-15-2006 BY NURSE RISENHOOVER, AND DISAPPROVED ON 11-16-2006
BY DR SAYRE). TAKE NOTE: "DR SAYRE NEVER SPOKE TO, OR EXAMINED
PLAINTIFF REGARDING HIS DEGENERATIVE JOINT DISEASE PRIOR TO DISAPPROV-
ING PLAINTIFF'S PRESCRIBED MEDICAL CHRONO BY NURSE RISENHOOVER."
ON 1-26-2007 NURSE RISENHOOVER AND DR SAYRE RESPONDED TO PLAIN-
TIFF'S 602 APPEAL, FIRST LEVEL REVIEW; IN WHICH, THEY DENIED
PLAINTIFF'S REQUEST FOR THE RENEWAL OF HIS MEDICAL CHRONO FOR

AN EXTRA MATTRESS. TAKE NOTE: "IT TOOK NURSE RISENHOOVER AND DR SAYRE SEVENTY TWO DAYS TO RESPOND TO PLAINTIFF'S 602 APPEAL"; AND FURTHER NOTE: "NURSE RISENHOOVER STATES IN HER RESPONSE THAT SHE PARTIALLY GRANTED PLAINTIFF'S 602 APPEAL, WHEN IN FACT, SHE DID NOT GRANT ANY OF THE ACTION SOUGHT, OTHER THAN HER OWN REFERENCE TO A THOROUGH REVIEW OF PLAINTIFF'S REQUEST PRESENTED WITHIN HIS 602 APPEAL". FURTHERMORE, NURSE RISENHOOVER GOES ON TO STATE WITHIN HER RESPONSE THAT DR SAYRE DID NOT FEEL IT WAS INDICATED TO RENEW PLAINTIFF'S MEDICAL CHRONO FOR AN EXTRA MATTRESS, WHEN IN FACT, NURSE RISENHOOVER HAD ORDERED THE RENEWAL OF THE MEDICAL CHRONO HERSELF ON 11-15-2006; IN WHICH, SHE BASED ON HER EVALUATION OF PLAINTIFF AND HIS MEDICAL FILE. CLEARLY, NURSE RISENHOOVER WAS QUITE AWARE OF PLAINTIFF'S DEGENERATIVE JOINT DESEASE; IN WHICH, SHE HAD SEEN PLAIN- TIFF FOR ON SEVERAL OCCASIONS, WHICH ENTAILED THE ORDERING OF PAIN MEDICATIONS, PHYSICAL THERAPY AND THE RENEWAL OF HIS MEDICAL CHRONOS FOR AN EXTRA MATTRESS, PILLOW, LOWER BUNK AND TIER. THERE- FORE, NURSE RISENHOOVER'S KNOWLEDGE AND AWARENESS OF PLAINTIFF'S MEDICAL AILEMENT IS BASED ON HER PERSONAL EVALUATIONS, EXAMINATIONS AND ON THE EXTENSIVE DOCUMENTED MEDICAL REPORTS WITHIN PLAINTIFF'S MEDICAL FILE, WHICH SUPPORTED THE REQUIRED MEDICAL TREATMENT CON- SISTING OF "PAIN MEDICATIONS, PHYSICAL THERAPY AND THE ISSUANCE OF MEDICAL CHRONOS FOR AN EXTRA MATTRESS, PILLOW, LOWER BUNK AND TIER"; YET, IN NURSE RISENHOOVER'S FIRST LEVEL RESPONSE, HER POSITION HAS CHANGED SINCE THAT OF 11-15-2006. CLEARLY, AT THIS POINT THERE IS A BREAK-DOWN IN NURSE RISENHOOVER'S PROFESSIONAL OBLIGATIONS AND DUTIES; IN WHICH, PLAINTIFF ATTRIBUTES TO DR SAYRE'S REMARKS THAT "NOTHING WAS INDICATED TO RENEW PLAINTIFF'S MEDICAL CHRONO FOR AN EXTRA MATTRESS AND LOWER TIER". HOWEVER, CONTRARY TO

DR SAYRE'S POSITION, NURSE RISENHOOVER KNEW THAT THERE WAS SUBSTANTIAL MEDICAL DOCUMENTATION, IN WHICH SUPPORTED HER FINDINGS ON 11-15-2006; YET, ON 1-26-2007 NURSE RISENHOOVER HAS CHOSE TO DELIBERATELY DISREGARD THOSE FINDINGS, IN ORDER OF SUPPORTING HER SUPERIOR DR SAYRE'S POSITION. SEE EXHIBIT A, PAGE 66 (602 APPEAL FIRST LEVEL RESPONSE FILED ON 1-26-2007 AND 1-29-2007 BY NURSE RISENHOOVER AND DR SAYRE).

PLAINTIFF CONTENDS THAT, IT IS EVIDENT FROM THE INFORMATION SUBMITTED AND THAT OF WHICH IS CONTAINED WITHIN HIS MEDICAL FILE, DR SAYRE COULD NOT HAVE READ PLAINTIFF'S MEDICAL FILE IN ORDER TO CONCLUDE HIS OPINION THAT NOTHING WAS INDICATED TO RENEW PLAINTIFF'S MEDICAL CHRONO, BECAUSE IF, DR SAYRE HAD, HE WOULD HAVE UNDOUBTEDLY COME ACROSS THOUSAND PLUS PAGES OF DOCUMENTED MEDICAL AND RADIOLOGY REPORTS THAT CLEARLY INDICATE PLAINTIFF SUFFERS FROM A LOWER-LUMBAR DEGENERATIVE JOINT DESEASE; IN WHICH, REQUIRED MAJOR SURGERY ON 8-7-2003 CONSISTING OF THE INSTILATION OF A POSTERIOR FIXATION DEVICE (VISTA BAK CAGE), IN ORDER TO STABILIZE PLAINTIFF'S LOWER-LUMBAR REGION AND PREVENTING FURTHER DETERIORATION. SEE EXHIBIT A, PAGES 69 THRU 72 (OPERATIVE REPORT FILED ON 8-7-2003 BY DR BENJAMIN REMINGTON); EXHIBIT E, PAGES 89 THRU 102 (RADIOLOGY REPORTS FILED ON 1-8-98 THROUGHOUT 10-25-2004); EXHIBIT F, PAGES 103 THRU 109 (MEDICAL CHRONO'S FOR AN EXTRA MATTRESS FILED ON 4-26-2002 THROUGHOUT 10-8-2004); AND EXHIBIT G, PAGES 110 THRU 139 (MEDICATION ADMINISTRATION RECORDS FOR PAIN MEDICATIONS FILED ON 6-6-97 THROUGHOUT 8-30-2007). TAKE NOTE: "ALL THE ABOVE MENTIONED MEDICAL DOCUMENTS WERE AND ARE WITHIN PLAINTIFF'S MEDICAL FILE AT PBSP."

THE TITLE 15, ARTICLE 8, SECTIONS 3350 (A) (B), 3350.1 (A), 3084.5 (F) (1) AND 3084.6 (A) (2) STATES IN PART:

3350 (A) ... "THE DEPARTMENT SHALL ONLY PROVIDE MEDICAL SERVICES FOR INMATES, WHICH ARE BASED ON MEDICAL NECESSITY AND SUPPORTED BY OUTCOME DATA AS EFFECTIVE MEDICAL CARE. IN THE ABSENCE OF AVAILABLE OUTCOME DATA FOR A SPECIFIC CASE, TREATMENT WILL BE BASED ON THE JUDGEMENT OF THE PHYSICIAN THAT THE TREATMENT IS CONSIDERED EFFECTIVE FOR THE PURPOSE INTENDED AND IS SUPPORTED BY DIAGNOSTIC INFORMATION AND CONSULTATIONS WITH APPROPRIATE SPECIA- LISTS. TREATMENTS FOR CONDITIONS, WHICH MIGHT OTHERWISE BE EXCLUDED, MAY BE ALLOWED PURSUANT TO SECTION 3350. 1 (d).

(b) FOR THE PURPOSES OF THIS ARTICLE, THE FOLLOWING DEFINI- TIONS APPLY :

(1) MEDICALLY NECESSARY MEANS HEALTH CARE SERVICES THAT ARE DETERMINED BY THE ATTENDING PHYSICIAN TO BE RE- SEASONABLE AND NECESSARY TO PROTECT LIFE, PREVENT SIG- NIFICANT ILLNESS OR DISABILITY, OR ALLEVIATE SEVERE PAIN, AND ARE SUPPORTED BY HEALTH OUTCOME DATA AS BEING EFFECTIVE MEDICAL CARE ; AND

(2) OUTCOME STUDY MEANS THE DEFINITION, COLLECTION AND ANALYSIS OF COMPARABLE DATA BASED ON VARIATIONS IN TREATMENT, CONCERNING PATIENT HEALTH ASSESSMENT FOR PURPOSES OF IMPROVING OUTCOMES AND IDENTIFYING COST- EFFECTIVE ALTERNATIVES ; AND

(3) OUTCOME DATA MEANS STATISTICS SUCH AS DIAGNOSES PRO- CEDURES, DISCHARGE STATUS, LENGTH OF HOSPITAL STAY, MORBIDITY AND MORTALITY OF PATIENTS, THAT ARE COLLECTED AND EVALUATED USING SCIENCE-BASED METHODOLOGIES AND EXPERT CLINICAL JUDGMENT FOR PURPOSES OF OUTCOME STUDIES ; AND

(4) SEVERE PAIN MEANS A DEGREE OF DISCOMFORT THAT SIGNI- FICANTLY DISABLES THE PATIENT FROM REASONABLE INDEPEN- DENT FUNCTION ; AND

(5) SIGNIFICANT ILLNESS AND DISABILITY MEANS ANY MEDICAL CONDITION THAT CAUSES OR MAY CAUSE IF LEFT UNTREATED A SEVERE LIMITATION OF FUNCTION OR ABILITY TO PERFORM THE DAILY ACTIVITIES OF LIFE OR THAT MAY CAUSE PREMATURE DEATH.

3350.1 (A) ... "TREATMENT REFERS TO ATTEMPTED CURATIVE TREAT- MENT AND DOES NOT PRECLUDE PALLIATIVE THERAPIES TO ALLE- VIATE SERIOUS DEBILITATING CONDITIONS SUCH AS PAIN MAN- AGEMENT AND NUTRITIONAL SUPPORT".

3384.5 (F)(1) ... "INTERVIEW REQUIREMENTS. A PERSONAL SHALL BE CONDUCTED WITH THE APPELLANT AT THE FIRST LEVEL OF REVIEW UNLESS :

(1) THE FIRST LEVEL WAS WAIVED. IN SUCH CASE, A PERSONAL INTERVIEW SHALL BE CONDUCTED WITH THE APPELLANT AT THE SECOND LEVEL".

3084.6 (A)(2) ... "COMMENCEMENT. TIME LIMITS FOR SUBMIT-

36

TING OR REVIEWING APPEALS SHALL COMMENCE UPON THE DATE
OF RECEIPT OF THE APPEAL DOCUMENT BY THE APPEALS COORDI-
NATOR OR THE APPELLANT.
(2) FIRST LEVEL RESPONSES SHALL BE COMPLETED WITHIN
30 WORKING DAYS.

THE D.O.M., ARTICLE 4, SECTIONS 91040.9 AND 91040.3; AND ARTICLE 7, SECTIONS

91070.2.1 AND 91070.7.1 STATES IN PART:

91040.9 ... "EACH RN SHALL PERFORM THEIR DUTIES ACCORDING TO
THE SCOPE OF PRACTICE AS STATED IN THE B & PC 2725 "PRACTICE
OF NURSING DEFINED". SPECIFICALLY SELECTED AND TRAINED RN'S
MAY PERFORM BEYOND THE NORMAL SCOPE OF PRACTICE ONLY BY
UTILIZING STANDARDIZED PROCEDURES AS DEFINED IN B & PC
2725 (D)(2). EACH STANDARDIZED PROCEDURE SHALL BE DEVEL-
OPED AND SUPERVISED BY A COMMITTEE ON INTERDISCIPLINARY
PRACTICE. EACH STANDARDIZED PROCEDURE SHALL BE DEVEL-
OPED ACCORDING TO THE CALIFORNIA BOARD OF REGISTERED
NURSES, STANDARDIZED PROCEDURE GUIDELINES.

91040.3 ... "THE CMO (CHIEF MEDICAL OFFICER) OR OTHER PHYSICIAN
DIRECTOR SHALL BE RESPONSIBLE FOR ALL HEALTH CARE SERVICES
AT EACH FACILITY."

91070.2.1 ... "EACH FACILITY SHALL MAINTAIN HEALTH RECORDS FOR
ALL PATIENTS TREATED BY THE FACILITY. THE RECORDS SHALL CON-
TAIN INFORMATION TO IDENTIFY THE PATIENT, JUSTIFY THE DIAGNO-
SIS, TO DESCRIBE THE PATIENT'S TREATMENT AND CARE, AND TO
PROVIDE FOR CONTINUITY OF MEDICAL CARE. THE RECORD SHALL
SERVE AS AN ACCURATE DATABASE FOR EVALUATION OF THE
QUALITY OF CARE PROVIDED, TO PROVIDE DOCUMENTATION FOR BUSI-
NESS PURPOSES, AND TO DEFEND LEGAL INTERESTS"; AND

91070.7.1 ... "THE INMATE'S HEALTH RECORD, INCLUDING X-RAY
FILMS, SHALL BE THE PROPERTY OF THE DEPARTMENT AND SHALL
BE MAINTAINED FOR THE BENEFIT OF THE INMATE, THE MEDICAL
STAFF, THE HEALTH CARE FACILITY AND THE DEPARTMENT. THE
HEALTH CARE FACILITY SHALL SAFEGUARD THE INFORMATION IN
THE RECORD AGAINST LOSS, DEFACEMENT, TAMPERING, OR
USE BY UNAUTHORIZED PERSONS".

IN THE INSTANT CASE, PLAINTIFF CONTENDS THAT, THE OBLIGATIONS AND DUTIES OF

NURSE RISENHOOVER AND DR SAYRE FELL FAR BELOW THE EXPECTED AND RE-

QUIRED STANDARDS SETFORTH WITHIN THE ABOVE RULES, REGULATIONS AND

PROCEDURES. THESE FACTS ARE UNDOUBTEDLY CLEAR BY (1) ... NURSE

RISENHOOVER'S FAILURE IN NOT HAVING PLAINTIFF'S MEDICAL FILE

WITHIN THE FACILITY CLINIC ON 10-16-2006, AT WHICH TIME

PLAINTIFF WAS NOT GIVEN ANY MEDICAL CARE OR TREATMENT, AS A
RESULT OF HIS MEDICAL FILE NOT BEING WITHIN THE FACILITY CLINIC;
THEREFORE, PLAINTIFF WAS FORCED TO WAIT TWENTY-NINE DAYS BEFORE
HE WAS SEEN AGAIN ON 11-15-2006, IN VIOLATION OF D.O.M., SECTIONS
91070.2.i AND 91070.7.1; (2) ... NURSE RISENHOOVER AND DR SAYRE'S
LATE RESPONSE TO PLAINTIFF'S 602 APPEAL, WHICH TOOK THEM SEVENTY-
TWO DAYS TO RESPOND TO, IN VIOLATION OF TITLE 15, SECTION 3084.6 (A)
(2), IN WHICH REQUIRED THIRTY WORKING DAYS FOR FIRST LEVEL RESPONSES;
AND (3) ... NURSE RISENHOOVER AND DR SAYRE NEVER TOOK THE TIME TO
CONDUCT A PERSONAL INTERVIEW WITH PLAINTIFF AT THE FIRST LEVEL
REVIEW, AS THEY ARE REQUIRED TO DO, ALSO IN VIOLATION OF TITLE 15,
SECTION 3084.5 (F), (i). IN ADDITION, PLAINTIFF FURTHER CONTENDS THAT,
NURSE RISENHOOVER COMPLETELY DISREGARDED AND IGNORED THE OBVIOUS
DANGERS THAT SHE HERSELF WAS PERSONALLY KNOWLEDGEABLE OF, WHEN SHE
HAD EXAMINED PLAINTIFF ON SEVERAL OCCASIONS, AND AT WHICH TIMES, SHE
PRESCRIBED PAIN MEDICATIONS, PHYSICAL THERAPY AND THE RENEWAL OF
MEDICAL CHRONOS FOR AN EXTRA MATTRESS, PILLOW, LOWER BUNK AND TIER.
THIS FACT IS ALSO CLEAR BY NURSE RISENHOOVER'S FIRST LEVEL RESPONSE; IN
WHICH, SHE SUPPORTS DR SAYRE'S POSITION, IN THAT, HE FELT NOTHING
WAS INDICATED TO WARRANT THE RENEWAL OF A MEDICAL CHRONO FOR AN
EXTRA MATTRESS AND LOWER TIER. SEE EXHIBIT A, PAGE 66 (602 APPEAL
FIRST LEVEL RESPONSE FILED ON 1-26-2007 AND 1-29-2007 BY NURSE RISEN-
HOOVER AND DR SAYRE). HOWEVER, CONTRARY TO DR SAYRE'S REASONING, HE
DID NOT DISAPPROVE PLAINTIFF'S MEDICAL CHRONO FOR AN EXTRA PILLOW AND
LOWER BUNK. PLAINTIFF CONTENDS THAT, DR SAYRE'S CONCLUSIONS
WERE NOT BASED ON A THOROUGH REVIEW OF PLAINTIFF'S MEDICAL FILE,
BECAUSE IF THOSE CONCLUSIONS HAD BEEN, DR SAYRE WOULD HAVE EN-
COUNTERED THE EXTENSIVE MEDICAL DOCUMENTATION, SUPPORTING THAT

PLAINTIFF DOES, IN FACT, SUFFER FROM A DEGENERATIVE JOINT DESEASE, FOR WHICH PLAINTIFF HAD BEEN RECEIVING PAIN MEDICATIONS, PHYSICAL THERAPY AND MEDICAL CHRONOS, AS FAR BACK AS, 1993. IN LIGHT OF THE EXTENSIVE OPERATIVE AND RADIOLOGY REPORTS WITHIN PLAINTIFF'S MEDICAL FILE, REGARDING PLAINTIFF'S MAJOR SURGERY, THERE IS NO REASONABLE BASES FOR DR SAYRE'S CONCLUSION, THAT NOTHING WAS INDICATED TO WARRANT THE RENEWAL OF A MEDICAL CHRONO FOR AN EXTRA MATTRESS; EVENMORESO, WHEN NURSE RISENHOOVER ALREADY HAD DIRECT PERSONAL KNOWLEDGE OF PLAINTIFF'S DEGENERATIVE JOINT DESEASE; IN WHICH, SHE HERSELF HAD PRESCRIBED PAIN MEDICATIONS, PHYSICAL THERAPY AND MEDICAL CHRONOS. PLAINTIFF CONTENDS THAT, HE RELIES ON THE MEDICAL DEPARTMENT AT P.B SP TO CARE FOR HIS BASIC HEALTH AND MEDICAL CARE NEEDS; IN WHICH, NURSE RISENHOOVER AND DR SAYRE DEPRIVED HIM OF, AND THIS DEPRIVATION PLAINTIFF HAS SUFFERED WAS OBJECTIVELY, SUFFICIENTLY SERIOUS; IN WHICH, FURTHER RESULTED IN THE DENIAL OF COMPETENT AND ADEQUATE MEDICAL CARE / TREATMENT WHICH WAS UNNECESSARY AND A WANTON INFLICTION OF PAIN. PLAINTIFF FURTHER CONTENDS THAT, THIS BLATANT DISREGARD TOWARDS THE EXTENSIVE DOCUMENTED MEDICAL INFORMATION, WITHIN PLAINTIFF'S MEDICAL FILE WAS NOT IN COMPLIANCE WITH D.O.M. SECTIONS 91070.2.1 AND 91070. 7.1, AND THAT OF TITLE 15 SECTION 3350 (A), (B), (2) AND (3). IN ADDITION, CLEARLY THE ACTS AND OMISSIONS OF NURSE RISENHOOVER ESTABLISH HER TOTAL DISREGARD TO HER OWN PERSONAL KNOWLEDGE OF PLAINTIFF'S MEDICAL CONDITION, AND HER FAILURE IN PROHIBITING DR SAYRE FROM MAKING AN INCOMPETENT AND INADEQUATE MEDICAL DECISION TO DISAPPROVE THE RENEWAL OF PLAINTIFF'S MEDICAL CHRONO FOR AN EXTRA MATTRESS AND LOWER TIER. THE VERY SAME MEDICAL CHRONO THAT NURSE RISENHOOVER ORDERED HERSELF ON 11-15-2006. THERE CAN BE NO DOUBT FROM THESE FACTS ABOVE, THAT NURSE RISENHOOVER AND

DR SAYRE CONSCIOUSLY DISREGARDED A SUBSTANTIAL RISK TO SERIOUS HARM FARMER, 114 S.CT. AT 1979 ; AND THEY did NOT ACT REASONABLY IN THE FACE OF A KNOWN RISK. THEREFORE, PLAINTIFF CONTENDS THAT NURSE RISENHOOVER AND DR SAYRE ARE LIABLE FOR RECKLESS NEGLIGENCE AND deliberate INDIFFERENCE.

DELIBERATE INDIFFERENCE OCCURS WHEN THE PRISON OFFICIALS KNOWS THAT INMATES FACE A SUBSTANTIAL RISK OF SERIOUS HARM, AND disRE-GARDS THAT RISK BY FAILING TO TAKE REASONABLE MEASURES TO ABATE IT. FARMER, 114 S.CT. AT 1984. THIS STANDARD DOES NOT REQUIRE PLAINTIFFS TO SHOW THAT A PRISON OFFICIAL ACTED OR FAILED TO ACT BELIEVING THAT HARM ACTUALLY WOULD BEFALL AN INMATE ; IT IS ENOUGH THAT THE OFFICIAL ACTED OR FAILED TO ACT DESPITE HIS KNOWLEDGE OF A SUBSTANTIAL RISK OF SERIOUS HARM, FARMER, 114 S.CT AT 1981 ; NOR does THIS STANDARD MEAN THAT PRISON OFFICIALS WILL BE FREE TO IGNORE OBVIOUS DANGERS, Id. WHILE THE OBVIOUSNESS OF A RISK IS NOT CONCLUSIVE, A FACTFINDER MAY CONCLUDE THAT A PRISON OFFICIAL KNEW OF A SUBSTANTIAL RISK FROM THE VERY FACT THAT THE RISK WAS OBVIOUS, FARMER, 114 S.CT. AT 1981-82.

SIMILARLY, A DEFENDANT WOULD NOT ESCAPE LIABILITY IF THE EVIDENCE SHOWED THAT HE MERELY REFUSED TO VERIFY UNDERLYING FACTS THAT HE STRONGLY SUSPECTED TO BE TRUE, OR declINED TO CONFIRM IN-FERENCES OF RISK THAT HE STRONGLY SUSPECTED TO EXIST, FARMER, 114 S.CT. AT 1982. SEE ALSO, CABRALES, 864 F.2d 1454-61 ; HOPTOWIT, 682 F.2d 1237-53 ; AND ORTIZ, 884 F.2d 1312-14.

TAKE NOTE : " THE SUPREME COURT IN ESTELLE V. GAMBLE CONCLUD-ED THAT deliberate INDIFFERENCE TO SERIOUS MEDICAL NEEDS OF PRISONERS CONSTITUTES THE UNNECESSARY AND WANTON INFLICTION OF PAIN, GREGG V. GEORGIA, 96 S.CT. AT 2925, PROSCRIBED

BY THE EIGHTH AMENDMENT. THIS IS TRUE WHETHER THE INDIFFERENCE IS MANIFESTED BY PRISON DOCTORS IN THEIR RESPONSES TO PRISONER'S NEEDS, OR BY PRISON GUARDS IN INTENTIONALLY DENYING OR DELAYING ACCESS TO MEDICAL CARE, SUPRA, 429 U.S. AT 104-5. IN THE INSTANT CASE, PLAINTIFF HAS SHOWN THAT EXTENSIVE MEDICAL DOCUMENTATION DOES EXIST WITHIN HIS MEDICAL FILE AT P.B.S.P. THAT PROVES HE SUFFERS FROM A LOWER-LUMBAR DEGENERATIVE JOINT DESEASE; IN WHICH, NURSE RISENHOOVER HAD DIRECT PERSONL KNOWLEDGE OF; YET, SHE AND DR SAYRE IGNORED AND FAILED TO ACT TO THAT SUBSTANTIAL RISK OF SERIOUS HARM THAT PLAINTIFF WAS CONFRONTED WITH, AND THEY FURTHER FILED TO TAKE ANY REASONABLE MEASURES TO ABATE THAT SUBSTANTIAL RISK OF SERIOUS HARM.

IN LIGHT OF THESE FACTS STATED ABOVE, IT IS ENOUGH THAT NURSE RISENHOOVER AND DR SAYRE ACTED OR FAILED TO ACT DISPITE THEIR KNOWLEDGE OF A SUBSTANTIAL RISK OF SERIOUS HARM. CLEARLY, NURSE RISENHOOVER HAD DIRECT PERSONAL KNOWLEDGE OF PLAINTIFF'S MEDICAL CONDITION; IN WHICH, SHE ON SEVERAL OCCASIONS PRESCRIBED PAIN MEDICATIONS, PHYSICAL THERAPY AND MEDICAL CHRONOS FOR AN EXTRA MATTRESS, PILLOW, LOWER BUNK AND TIER. THEREFORE, NURSE RISENHOOVER'S ACTS AND OMISSIONS EXHIBITED A RECKLESS NEGLIGENCE AND DELIBERATE INDIFFERENCE IN DENYING PLAINTIFF'S 602 APPEAL FOR A MEDICAL CHRONO FOR AN EXTRA MATTRESS; SPECIFICALLY, A MEDICAL CHRONO THAT SHE HERSELF WAS CONSCIENOUSLY AND KNOWLEDGEABLY AWARE OF THAT WAS WARRANTED IN THE TREATMENT OF PLAINTIFF'S DEGENERATIVE JOINT DESEASE.

TAKE NOTE: " THE MOST CRITICAL EVIDENCE OF THIS RECKLESS NEGLIGENCE AND DELIBERATE INDIFFERENCE, IS THE FACT, THAT ON 11-15-2006 NURSE RISENHOOVER INFORMED PLAINTIFF THAT IT

WOULD BE A WASTE OF TIME FOR HER TO ORDER THE RENEWAL OF THE MEDICAL CHRONO FOR AN EXTRA MATTRESS, BECAUSE DR SAYRE IS GOING TO DISAPPROVE IT ANYWAY." THEREFORE, PLAINTIFF CONTENDS THAT, THE ACTS AND OMISSIONS RENDERED BY NURSE RISENHOOVER AND DR SAYRE DENIED HIM THE READY ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE / TREATMENT; IN WHICH, AMOUNTED TO RECKLESS NEGLI- GENCE AND DELIBERATE INDIFFERENCE, IN VIOLATION OF HIS CONSTITUTION- AL RIGHTS, GUARANTEED UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

## CLAIM III

PLAINTIFF WAS DENIED COMPETENT AND ADEQUATE MEDICAL CARE/ TREATMENT BY THE DEFENDANTS MR KRAVITZ AND NURSE MCLEAN, WHEN THEY DENIED TO GRANT PLAINTIFF'S 602 APPEAL AND RENEW HIS MEDICAL CHRONO FOR AN EXTRA MATTRESS FOR HIS LOWER- LUMBAR DEGENERATIVE JOINT DESEASE; IN WHICH AMOUNTED TO RECKLESS NEGLIGENCE AND DELIBERATE INDIFFERENCE, IN VIO- LATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS GUARANTEED UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

PLAINTIFF CONTENDS THAT, HE WAS DENIED THE READY ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE/ TREATMENT BY THE DEFENDANTS MR KRAVITZ AND NURSE MC LEAN, WHEN THEY DENIED TO GRANT PLAINTIFF'S 602 APPEAL FOR THE RENEWAL OF A MEDICAL CHRONO FOR AN EXTRA MATTRESS FOR HIS LOWER- LUMBAR DEGENERATIVE JOINT DESEASE. ON 1-31-2007 PLAINTIFF RESUBMITTED HIS 602 APPEAL TO THE SECOND LEVEL REVIEW; IN WHICH, INITIALLY MR KRAVITZ REFUSED TO PROCESS. THE REASON BEING THAT PLAINTIFF ALLEGED- LY HAD CHANGED THE ISSUES WITHIN HIS 602 APPEAL, AND THAT PLAINTIFF WAS NOW ASKING TO HAVE IT PROCESSED AS AN A.D.A APPEAL. HOWEVER, THIS WAS NOT THE CASE. SEE EXHIBIT D, PAGE 86 (INMATE / PAROLEE APPEALS SCREENING FORM FILED ON 2-1-2007 BY MR KRAVITZ). IT WAS AT

THIS TIME ON 2-2-2007 THAT PLAINTIFF WROTE A LETTER TO MR WILBER INFORMING HIM OF MR KRAVITZ'S REFUSAL TO PROCESS PLAINTIFF'S 602 APPEAL. AS A RESULT, MR WILBER FORWARDED PLAINTIFF'S 602 APPEAL BACK TO MR KRAVITZ INSTRUCTING HIM TO PROCESS THE SECOND LEVEL REVIEW. SEE EXHIBIT D, PAGES 87 AND 88 (LETTER WRITTEN ON 2-2-2007 TO MR WILBER BY PLAINTIFF).

ON 2-13-2007 MR KRAVITZ AND NURSE MC LEAN CONDUCTED A SECOND LEVEL REVIEW. TAKE NOTE: "MR KRAVITZ AND NURSE MC LEAN NEVER TOOK THE TIME TO PERSONALLY INTERVIEW PLAINTIFF, IN ORDER TO AFFORD HIM A MEANINGFUL REVIEW, OR AT THE VERY LEAST, AFFORD HIM THE READY ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE/TREATMENT". FURTHER TAKE NOTE: "MR KRAVITZ IS A CORRECTIONAL COUNSELLOR AND MEDICAL APPEALS COORDINATOR. THERE-FORE, MR KRAVITZ IS NOT OFFICIALLY AUTHORIZED UNDER TITLE 15, SECTION 3354 (A) TO MAKE ANY MEDICAL DECISIONS OR DETERMINATIONS REGARDING PLAINTIFF'S HEALTH CARE AND WELL BEING, WHICH IS WHAT HE DID IN PLAINTIFF'S CASE WITH THE ASSISTANCE OF NURSE MC LEAN".

NURSE MC LEAN IN HER SECOND LEVEL RESPONSE, MERELY REITERATES WHAT NURSE RISENHOOVER STATED IN HER FIRST LEVEL RESPONSE. NURSE MC LEAN GOES ON TO STATE THAT PLAINTIFF'S 602 APPEAL WITH THE ATTACHMENTS AND HIS REQUEST RECEIVED CAREFUL CONSIDERATION. NURSE MC LEAN FURTHER STATED, QUOTE... "THE CRITERION FOR ISSUANCE OF A DOUBLE MATTRESS CHRONO IS THAT THE PATIENT MUST HAVE DEMONSTRATED SEVERE DEGENERA-TIVE ARTHRITIS ON X RAY EXAMINATION, UNQUOTE. AS INDICATED IN PLAINTIFF'S SECOND CLAIM, PLAINTIFF'S MEDICAL FILE CONTAINS OVER A THOUSAND PLUS PAGES OF EXTENSIVE MEDICAL DOCUMENTATION, WHICH CLEARLY SUBSTANTIATES THE VERY EXACT CRITERION THAT NURSE MC LEAN DESCRIBES IN HER RESPONSE. TAKE NOTE: "THE WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY DESCRIBES DEGENERATIVE ARTHRITIS

AS:    ARTHRITIS OF MIDDLE AGE CHARACTERIZED BY DEGENERATIVE AND SOMETIMES HYPERTROPHIC CHANGES IN THE BONE AND CARTILAGE OF ONE OR MORE JOINTS AND A PROGRESSIVE WEAR-ING DOWN OF APPOSING JOINT SURFACES WITH CONSEQUENT DISTORTION OF JOINT POSITION".

PLAINTIFF CONTENDS THAT, HE HAS SUBMITTED MEDICAL DOCUMENTATION WITHIN THIS COMPLAINT THAT VERIFIES HE DOES, IN FACT, SUFFER FROM A SEVERE LOWER-LUMBAR DEGENERATIVE JOINT DISEASE; IN WHICH IS CLINICALLY IDENTICAL TO THAT OF DEGENERATIVE ARTHRITIS; AND IN WHICH REQUIRED MAJOR SURGERY ON 8-2-2003 CONSISTING OF THE INSTILLATION OF A POSTERIOR FIXATION DEVICE (VISTA BAK CAGE) TO STABILIZE PLAINTIFF'S LOWER-LUMBAR REGION AND PREVENT ANY FURTHER DETERIORATION. AS A RESULT OF THIS MAJOR SURGERY AND THE LENGTHY PERIOD OF TIME THAT PLAINTIFF HAS SUFFERED FROM THIS DEGENERATIVE DISEASE THERE HAS BEEN AN EXTEN-SIVE ACCUMULATION OF MEDICAL DOCUMENTATION, IN THE FORM OF OPERATIVE REPORTS, RADIOLOGY REPORTS, PHYSICAL THERAPY REPORTS, MEDICALLY APPROV-ED CHRONOS AND MEDICATION ADMINISTRATION RECORDS; YET, ACCORDING TO NURSE MC LEAN AND MR KRAVITZ THERE WAS NOT AN X RAY EXAMINATION WITHIN PLAINTIFF'S MEDICAL FILE FOR REFERENCE. OBVIOUSLY, NURSE MC LEAN AND MR KRAVITZ NEVER REVIEWED PLAINTIFF'S MEDICAL FILE IN ITS ENTIRETY, BECAUSE IF THEY HAD, THEY WOULD HAVE CONCLUDED, FROM THE EXTENSIVE MEDICAL DOCUMENTATION THAT THERE WAS SUBSTANTIAL INFORMATION VERIFYING THAT PLAINTIFF'S REQUEST FOR A MEDICAL CHRONO FOR AN EXTRA MATTRESS WAS WARRANTED, AND HAD BEEN WARRANTED FOR THE LAST FOUR CONSECUTIVE YEARS BY EIGHT DIFFERENT DOCTORS, TWO OF WHICH WERE HEALTH CARE MANAGERS, AS NURSE MC LEAN IS. IN ADDITION, IT IS EVIDENT TO SOME EXTENT THAT NURSE MC LEAN AND MR KRAVITZ DID SEE PLAINTIFF'S OPERATIVE REPORT SUBMITTED WITHIN HIS 602 APPEAL. PLAINTIFF CONTENDS THAT, THE OPERATIVE REPORT IN ITSELF, SHOULD HAVE RAISED A LEVEL OF CONCERN FROM NURSE MC LEAN AND MR KRAVITZ,

44

PROMPTING THEM TO THOROUGHLY REVIEW PLAINTIFF'S ENTIRE MEDICAL FILE, WHERE THEY WOULD HAVE UNDOUBTEDLY LOCATED THE VERY X RAY THEY ALLEGE DID NOT EXIST FOR REFERENCE. SEE EXHIBIT A, PAGES 69 THRU 72 (OPERATIVE REPORT FILED ON 8-2-2003 BY DR BENJAMIN REMINGTON); AND EXHIBIT E, PAGES 89 THRU 102 (RADIOLOGY REPORTS FILED ON 1-8-98 THROUGHOUT 10-25-2004). TAKE NOTE: "THE SUBMITTED RADIOLOGY REPORTS WITHIN THIS COMPLAINT ARE MERELY A FRACTION OF THE RADIOLOGY REPORTS THAT ARE CONTAINED WITHIN PLAINTIFF'S MEDICAL FILE AT PBSP." THEREFORE, PLAINTIFF FURTHER CONTENDS THAT THE EXTENSIVE MEDICAL DOCUMENTATION WITHIN HIS MEDICAL FILE DOES NOT COINCIDE WITH NURSE MCLEAN AND MR KRAVITZ'S SECOND LEVEL REVIEW FINDINGS. IN FACT, PLAINTIFF CONTENDS THAT THESE FINDINGS EXHIBIT A RECKLESS NEGLIGENCE AND DELIBERATE INDIFFERENCE TOWARDS HIS HEALTH AND WELL BEING.

THE EIGHTH AMENDMENT DOES NOT REQUIRE THAT PRISON OFFICIALS MUST PROVIDE DESIRABLE MEDICAL AND MENTAL HEALTH CARE; HOWEVER, THE EIGHTH AMENDMENT DOES REQUIRE THAT DEFENDANTS PROVIDE A SYSTEM OF READY ACCESS TO ADEQUATE MEDICAL CARE, HOPTOWIT, 682 F2d AT 1253; AND CASEY, 834 F. SUPP. AT 1545. SEE ALSO, BELL V. WOLFISH, 441 U.S. 520, 543 N 27; 99 S.CT. 1861, 1876 N 27 (1979). FOR THOSE INMATES WHO ARE TREATED WITHIN THE PRISON, ACCESS TO MEDICAL TREATMENT CANNOT BE SUBSTANTIALLY DELAYED IN A SYSTEMATIC MANNER. IN ADDITION, THE REQUIREMENT OF READY ACCESS TO ADEQUATE CARE PRECLUDES PRISON OFFICIALS FROM PREVENTING TREATMENT WHICH IS MEDICALLY NECESSARY IN THE JUDGMENT OF THE TREATING DOCTOR, ESTELLE, 429 U.S. AT 104-05, 95 S.CT AT 291. THUS, INTENTIONAL INTERFERENCE WITH PRESCRIBED TREATMENT MANIFESTS DELIBERATE INDIFFERENCE, CASEY, 834 F SUPP AT 1545. FURTHERMORE, REVIEWS OF RECORDS TO EVALUATE THE DELIVERY OF CARE ARE ESSENTIAL, CAPPS V. ATIYEH, 559 F.SUPP AT 912 (  ). LACK

OF CHART REVIEW IS ELEMENT OF VIOLATION, LIGHTFOOT V. WALKER, 486 F SUPP AT 517 (S.D. ILL 1980). MEDICAL RECORDS MUST BE SUFFICIENTLY ORGANIZED AND THOROUGH TO ALLOW THE PROVISION OF ADEQUATE CARE TO INMATES, HOPTOWIT, 682 F2d AT 1252-53. DEFICIENT MEDICAL RE-CORDS PART OF VIOLATION, CAPPS, 559 F. SUPP AT 912; AND CASEY, 834 F. SUPP AT 1503. MEDICAL RECORDS THAT ARE INADEQUATE, INACCURATE AND UNPROFESSIONALLY MAINTAINED CONSTITUTE A GRAVE RISK OF UN-NECESSARY PAIN AND SUFFERING, IN VIOLATION OF THE EIGHTH AMENDMENT, CODY V. HILLARD, 599 F. SUPP 1025, 1058 (D.S.D. 1984) - (QUOTING... BURKS V. TEASDALE, 492 F. SUPP 650, 676 (W.D. MO. 1980).

IN THE INSTANT CASE, PLAINTIFF CONTENDS THAT EITHER HIS MEDICAL FILE WAS SUFFICIENTLY UNORGANIZED, DEFICIENT, INADEQUATE AND UNPROFESSIONAL-LY MAINTAINED, OR NURSE MC LEAN AND MR KRAVITZ SIMPLY FAILED TO REVIEW PLAINTIFF'S MEDICAL FILE IN ITS ENTIRETY, IN ORDER TO BASE THEIR DETERMINATIONS AND CONCLUSIONS ON DOCUMENTED MEDICAL EVI-DENCE; EITHER OF WHICH ARE CONSTITUTIONAL VIOLATION. PLAINTIFF FURTHER CONTENDS THAT, NURSE MC LEAN AND MR KRAVITZ INTENTIONALLY INTERFERED WITH THE PRESCRIBED TREATMENT THAT PLAINTIFF HAS BEEN RECEIVING IN THE FORM OF A MEDICAL CHRONO FOR AN EXTRA MATTRESS, WHICH WAS DETERMINED AND MEDICALLY APPROVED BY EIGHT DIFFERENT DOCTORS OVER A FOUR YEAR PERIOD ON SEVEN DIFFERENT OCCASIONS. IN ADDITION THE MEDICAL DOCUMENTATION WITHIN PLAINTIFF'S MEDICAL FILE, SUBSTAN-TIATES THAT HE DOES, IN FACT, SUFFER FROM A LOWER-LUMBAR DEGEN-ERATIVE JOINT DESEASE, AND AS A RESULT HAS ENDURED AN INTENSE LOWER-BACK PAIN FOR ALMOST SEVENTEEN YEARS OF HIS INCARCERATION. AN INTENSE PAIN THAT HAS BEEN MEDICALLY TREATED WITH VARIOUS PAIN MEDICATIONS, PHYSICAL THERAPY AND MEDICAL CHRONOS FOR AN EXTRA MATTRESS, PILLOW, LOWER BUNK AND TIER. ALL OF WHICH HAVE

BEEN THOROUGHLY DOCUMENTED WITHIN PLAINTIFF'S MEDICAL FILE SINCE 1993 THROUGHOUT 2007. PLAINTIFF CONTENDS THAT, FROM SUCH AN EXTENSIVE PERIOD OF TIME OF MEDICAL CARE AND TREATMENT, INCLUDING MAJOR SURGERY, THERE HAS BEEN AN OVERWHELMING ACCUMULATION OF MEDICAL DOCUMENTATION; ALL OF WHICH THAT HAS BEEN COMPILED AND TRANSCRIBED BY OVER TWENTY-FIVE DOCTORS, ALL OF WHOM HAD CONCLUDED THE SAME METHOD OF TREATMENT; YET, IN NURSE MC LEAN AND MR KRAVITZ'S OPINIONS, THEY HAVE CONCLUDED THAT NO X RAY EXAMINATION WAS PRESENT WITHIN PLAINTIFF'S MEDICAL FILE FOR REFERENCE. PLAINTIFF FURTHER CONTENDS, FOR THE SAKE OF ARGUENDO, EVEN IF, THERE WAS NOT AN X RAY EXAMINATION WITHIN HIS MEDICAL FILE, AS ALLEGED BY NURSE MC LEAN AND MR KRAVITZ, THEY STILL WOULD HAVE COME ACROSS THE COUNTLESS PAGES OF RADIOLOGY REPORTS, IN WHICH CLEARLY DIAGNOSES PLAINTIFF'S AILMENT AND CONDITION BY THE VERY EXACT CRITERION WHICH NURSE MC LEAN GIVES IN HER SECOND LEVEL RESPONSE. HOWEVER, NURSE MC LEAN MAKES NO MENTION OF THIS DOCUMENTATION, OR ANY OTHER MEDICAL INFORMATION. IT IS PLAINTIFF'S CONTENTION, THE REASON BEING, IS THAT NURSE MC LEAN OR MR KRAVITZ NEVER READ PLAINTIFF'S MEDICAL FILE IN ITS ENTIRETY; SIMPLY BECAUSE, THEY COULD NOT HAVE REASONABLY CONCLUDED THE FINDINGS IN WHICH THEY DID, IF, THEY HAD READ PLAINTIFF'S MEDICAL FILE IN ITS ENTIRETY, WHICH UNDOUBTEDLY CONTAINED ALL DOCUMENTED MEDICAL INFORMATION THEY ALLEGE WAS NOT PRESENT. THEREFORE, PLAINTIFF CONTENDS THAT, THE ACTS AND OMISSIONS RENDERED BY NURSE MC LEAN AND MR KRAVITZ DENIED HIM THE READY ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE/TREATMENT; IN WHICH AMOUNTED TO RECKLESS NEGLIGENCE AND DELIBERATE INDIFFERENCE, IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS GUARANTEED UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

CLAIM

IV.

PLAINTIFF WAS DENIED COMPETENT AND ADEQUATE MEDICAL CARE/
TREATMENT BY THE DEFENDANTS MR PIMENTEL AND MR GRANNIS,
WHEN THEY DENIED TO GRANT PLAINTIFF'S 602 APPEAL AND RENEW
HIS MEDICAL CHRONO FOR AN EXTRA MATTRESS FOR HIS LOWER-
LUMBAR DEGENERATIVE JOINT DESEASE; IN WHICH AMOUNTED TO
RECKLESS NEGLIGENCE AND DELIBERATE INDIFFENCE, IN VIOLATION
OF PLAINTIFF'S CONSTITUTIONAL RIGHTS GUARANTEED UNDER THE
EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES
CONSTITUTION.

PLAINTIFF CONTENDS THAT, HE WAS DENIED READY ACCESS TO COMPETENT AND ADEQUATE

MEDICAL CARE/TREATMENT BY THE DEFENDANTS MR PIMENTEL AND MR GRANNIS, WHEN

THEY DENIED PLAINTIFF'S 602 APPEAL FOR THE RENEWAL OF A MEDICAL CHRONO

FOR AN EXTRA MATTRESS FOR HIS LOWER-LUMBAR DEGENERATIVE JOINT DESEASE.

ON 2-19-2007 PLAINTIFF RESUBMITED HIS 602 APPEAL TO THE THIRD LEVEL REVIEW

IN WHICH, WAS EXAMINED BY MR PIMENTEL, AND FINDINGS RENDERED BY

MR GRANNIS. TAKE NOTE: " IT TOOK MR PIMENTEL AND MR GRANNIS FIVE

MONTHS TO RESPOND TO PLAINTIFF'S THIRD LEVEL REVIEW, IN WHICH, ACCORD-

ING TO THE TITLE 15, ARTICLE 7, SECTION 3084.6 AND THE D.O.M.,

ARTICLE 53, SECTION 54100.12 THIRD LEVEL REVIEWS ARE REQUIRED WITHIN

SIXTY DAYS."

TITLE 15, ARTICLE 7, SECTION 3084.6 AND THE D.O.M., ARTICLE 53, SEC-

TION 54100.12 STATES IN PART :

3084.6 (A)" COMMENCEMENT. TIME LIMITS FOR SUBMITTING OR
REVIEWING APPEALS SHALL COMMENCE UPON THE DATE OF RECEIPT
OF THE APPEAL DOCUMENT BY THE APPEALS COORDINATOR OR THE
APPELLANT. (B) DEPARTMENTAL RESPONSE. APPEALS SHALL BE
RESPONDED TO AND RETURNED TO THE APPELLANT BY STAFF WITHIN
THE FOLLOWING TIME LIMITS :
(4) THIRD LEVEL RESPONSES SHALL BE COMPLETED WITHIN 60 WORK-
ING DAYS.
(5) EXCEPTION IS AUTHORIZED IN THE EVENT OF :
(A) UNAVAILABILITY OF THE APPELLANT, OR STAFF OR INMATE WIT-
NESSES.
(B) COMPLEXITY OF THE DECISION, ACTION, OR POLICY.
(C) NECESSARY INVOLVEMENT OF OTHER AGENCIES OR JURISDICTIONS.
(6) EXCEPT FOR THE THIRD LEVEL, IF AN EXCEPTIONAL DELAY PRE-
VANTS COMPLETION OF THE REVIEW WITHIN SPECIFIED TIME LIMITS, THE
APPELLANT SHALL BE INFORMED IN WRITING OF THE REASONS
FOR THE DELAY AND THE ESTIMATED COMPLETION DATE."

54100.12 ... APPEAL RESPONSES SHALL BE MADE WITHIN FIXED
TIME LIMITS AT EACH LEVEL OF REVIEW. THIRD LEVEL REVIEWS
SHALL BE PROCESSED AND RETURNED WITHIN SIXTY WORKING
DAYS OF RECEIPT".

IN THE INSTANT CASE, PLAINTIFF WAS NEVER NOTIFIED BY EITHER MR PIMENTEL, NOR

MR GRANNIS AS TO THE REASON FOR THE EXTENSIVE DELAY IN PLAINTIFF'S

THIRD LEVEL REVIEW. ALTHOUGH, MR PIMENTEL AND MR GRANNIS ARE NOT

REQUIRED TO GIVE PLAINTIFF A WRITTEN NOTIFICATION OF AN EXCEPTIONAL DELAY,

THEY ARE REQUIRED TO ADHERE TO PROCEDURAL POLICIES, AS THOSE, SETFORTH BY

SECTIONS 3084.6 AND 54100.12 ; BOTH OF WHICH REQUIRED THEM TO RES-

POND TO PLAINTIFF'S 602 APPEAL WITHIN SIXTY WORKING DAYS. FURTHERMORE,

MR PIMENTEL AND MR GRANNIS NEVER GAVE ANY REASON AS TO WHY THEY

DID NOT RESPOND WITHIN THE PROSCRIBED TIME LIMITS.

FURTHER TAKE NOTE : " PLAINTIFF WAS NEVER PERSONALLY INTERVIEWED BY MR PIMEN-

TEL OR MR GRANNIS. IN ORDER FOR THEM TO ACQUIRE ANY FURTHER INFORMATION

OR DOCUMENTATION TO AFFORD PLAINTIFF A MEANINGFUL REVIEW OF HIS CLAIMS

PRESENTED WITHIN HIS 602 APPEAL". IN ADDITION, MR PIMENTEL AND MR

GRANNIS ARE CORRECTIONAL OFFICIALS, BOTH OF WHOM ARE NOT OFFICIALLY

AUTHORIZED UNDER TITLE 15, ARTICLE 8, SECTION 3354 (A) TO MAKE ANY

MEDICAL DECISIONS OR DETERMINATIONS REGARDING PLAINTIFF'S HEALTH CARE

AND TREATMENT. IRONICALLY, MR GRANNIS MAKES REFERENCE TO THIS FACT

AND SECTION 3354 IN HIS FINDINGS, WHEN HE ATTEMPTS TO USE THIS SECTION

IN DETERMINING THAT, QUOTE " ... IT IS NOT APPROPRIATE FOR APPELLANT TO SELF

DIAGNOSE HIS OWN MEDICAL PROBLEM AND THEN EXPECT A MEDICAL DOCTOR

TO IMPLEMENT THE APPELLANT'S RECOMMENDATION FOR A COURSE OF MEDICAL

TREATMENT. THEREFORE, NO RELIEF IS PROVIDED AT THE DLR", UNQUOTE.

CONTRARY TO MR GRANNIS' ONE-SIDED INTERPRETATION OF THIS SECTION,

HE FAILS TO REALIZE THAT HE HIMSELF IS PRECLUDED FROM MAKING

ANY MEDICAL DECISIONS OR DETERMINATIONS REGARDING PLAINIFF'S

HEALTH CARE AND TREATMENT. MR GRANNIS STATES IN HIS FINDINGS THAT ALL SUBMITTED DOCUMENTATION AND SUPPORTING ARGUMENTS OF THE PARTIES HAVE BEEN CONSIDERED, AND FURTHER STATES THAT PLAINTIFF ALLEGES THAT MEDICAL STAFF AT PBSP INAPPROPRIATELY DENIED THE RENEWAL OF HIS EXTRA MATTRESS, EXTRA PILLOW, AND LOWER BUNK/LOWER TIER. SEE EXHIBIT A, PAGE 75, PARAGRAPH 1 (DIRECTOR'S LEVEL APPEAL DE-CISION FILED ON 7-8-2007 BY MR PIMENTEL AND MR GRANNIS). TAKE NOTE: " THESE ARE NOT THE ISSUES RAISED IN PLAINTIFF'S 602 APPEAL. PLAINTIFF ONLY RAISED THE RENEWAL OF HIS MEDICAL CHRONO FOR AN EXTRA MATTRESS". FURTHER TAKE NOTE: " THAT MR GRANNIS MERELY SUPPORTS THE FIRST AND SECOND LEVEL REVIEWER'S FINDINGS; YET, MR GRANNIS MAKES NO INDEPENDENT FINDINGS OF HIS OWN BASED ON AN INVESTIGATION INTO PLAINTIFF'S MEDICAL FILE". ALTHOUGH, MR GRANNIS MAKES REFERENCE THAT PLAINTIFF'S DOCUMENTATION AND ARGU-MENTS ARE PERSUASIVE, HE STATES THAT PLAINTIFF HAS FAILED TO SUPPORT HIS ISSUES WITH SUFFICIENT EVIDENCE OR FACTS TO WARRANT A MODIFI-CATION OF THE SECOND LEVEL REVIEW. MR GRANNIS GOES ON TO FURTHER STATE THAT, QUOTE ... " APPELLANT WAS EXAMINED BY LICENSED PHYSICIANS WHO DETERMINED THAT THERE WAS NO MEDICAL EVIDENCE TO SUPPORT RE-NEWING THE APPELLANT'S LOWER TIER AND EXTRA MATTRESS CHRONO, UNQUOTE. TAKE NOTE: " PLAINTIFF WAS NEVER SPOKEN TO OR SEEN BY ANY OF THE FIRST OR SECOND LEVEL REVIEWERS; IN WHICH, THE ONLY LICENSED PERSONNEL OF THOSE REVIEWERS WERE NURSE RISENHOOVER, DR SAYRE AND NURSE MCLEAN, NONE OF WHICH INTERVIEWED OR EXAMINED PLAIN-TIFF DURING THEIR INDEPENDENT REVIEWS". THEREFORE, MR GRANNIS' FINDINGS ARE FALSE AND BASED ON HIS OBVIOUS INCOMPETENT REVIEW OF PLAINTIFF'S 602 APPEAL. A FINDINGS, THAT PLAINTIFF CONTENDS, COINCIDES WITH THE ACTS AND OMISSIONS OF THE OTHER

DEFENDANTS FROM THE VERY ONSET OF THE FILING OF PLAINTIFF'S 602 APPEAL; IN WHICH, HAS TOOK FIVE MONTHS FOR MR PIMENTEL AND MR GRANNIS TO RESPOND TO. CLEARLY, IN VIOLATION OF THE TITLE 15, ARTICLE 7, SECTION 3084.6, AND D.O.M., ARTICLE 53, SECTION 54100.12.

BY VIRTUE OF THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION THE GOVERNMENT HAS AN OBLIGATION TO PROVIDE MEDICAL CARE FOR THOSE WHOM IT IS PUNISHING BY INCARCERATION. ESTELLE, 429 U.S. AT 97. PRISON OFFICIALS VIOLATE THAT OBLIGATION WHEN THEY MANIFEST "DELIBERATE INDIFFERENCE" TO SERIOUS MEDICAL NEEDS OF PRISONERS. THIS IS TRUE WHETHER THE INDIFFERENCE IS MANIFESTED BY PRISON DOCTORS IN THEIR RESPONSE TO THE PRISONERS NEEDS OR BY PRISON GUARDS IN INTENTIONALLY DENYING OR DELAYING ACCESS TO MEDICAL CARE OR INTENTIONALLY INTERFERING WITH THE TREATMENT ONCE PRESCRIB-ED, SUPRA, AT 104-5; 97 S.CT. AT 291-92. FURTHERMORE, A PERSON SUBJECTS ANOTHER TO THE DEPRIVATION OF A CONSTITUTIONAL RIGHT, WITHIN THE MEANING OF SECTION 1983, IF HE DOES AN AFFIRMATIVE ACT, PARTICI-PATES IN ANOTHER'S AFFIRMATIVE ACTS, OR OMITS TO PERFORM AN ACT WHICH HE IS LEGALLY REQUIRED TO DO THAT CAUSES THE DEPRIVATION OF WHICH COMPLAINT IS MADE ... MOREOVER, PERSONAL PARTICIPATION IS NOT THE ONLY PREDICATE FOR SECTION 1983 LIABILITY. ANYONE WHO CAUSES ANY CITIZEN TO BE SUBJECTED TO A CONSTITUTIONAL DEPRIVATION IS ALSO LIABLE, WOOD, 900 F.2d 1332, 1335. SEE ALSO TOUSSAINT V. MC CARTHY (IV), 801 F.2d 1080, 1111 (9TH CIR 1986); AND HUTCHINSON V. UNITED STATES, 838 F.2d 390, 394 (9TH CIR 1988).

IN THE INSTANT CASE, PLAINTIFF CONTENDS THAT MR PIMENTEL AND MR GRANNIS FAILED TO CONDUCT A THOROUGH REVIEW OF PLAINTIFF'S MEDICAL FILE, IN ORDER TO BASE THEIR FINDINGS ON TANGIBLE DOCUMENTED MEDICAL EVIDENCE. IN WHICH, WOULD HAVE PROVED THAT "1" "THERE IS

EXTENSIVE MEDICAL DOCUMENTATION ESTABLISHING PLAINTIFF DOES SUFFER FROM A LOWER-LUMBAR DEGENERATIVE JOINT DISEASE"; (2) "PLAINTIFF HAS BEEN MEDICALLY TREATED WITH PAIN MEDICATIONS AND PHYSICAL THERAPY FOR OVER A PERIOD OF SEVENTEEN YEARS OF HIS INCARCERATION"; AND (3) " PLAINTIFF HAS BEEN SEEN BY OVER TWENTY FIVE DIFFERENT DOCTORS, EIGHT OF WHICH HAVE ORDERED AND APPROVED A MEDICAL CHRONO FOR AN EXTRA MATTRESS TO HELP ALLEVIATE THE PAIN PLAINTIFF HAS TO ENDURE WHILE BEING REQUIRED TO SLEEP ON A CONCRETE BUNK". YET, IN LIGHT OF ALL THIS EXTENSIVE MEDICAL DOCUMENTATION, MR GRANNIS BASED HIS FINDINGS ON HIS ASSUMPTIONS THAT PLAINTIFF WAS INTERVIEWED AND EXAMINED BY LICENSED PHYSICIANS, WHO DETERMINED THAT THERE WAS NO MEDICAL EVIDENCE TO SUPPORT RENEWING PLAINTIFF'S EXTRA MATTRESS AND LOWER TIER CHRONO; IN WHICH, AS INDICATED ABOVE, IS FALSE. AN ATTENTIVE REVIEW OF PLAINTIFF'S 602 APPEAL AT THE FIRST AND SECOND LEVEL REVIEWS WILL PROVE THIS POINT. SEE EXHIBIT A, PAGES 66 AND 73 (FIRST LEVEL RESPONSE FILED ON 1-26-2007 AND 1-29-2007 BY NURSE RISENHOOVER AND DR SAYRE); AND (SECOND LEVEL RESPONSE FILED ON 2-13-2007 AND 2-14-2007 BY MR KRAVITZ AND NURSE MCLEAN). PLAINTIFF FURTHER CONTENDS THAT, AS A RESULT OF MR PIMENTEL AND MR GRANNIS' FAILURE TO AFFORD PLAINTIFF A THOROUGH AND MEANINGFUL REVIEW OF HIS 602 APPEAL, THEY INTENTIONALLY INTERFERED WITH PLAINTIFF'S PRESCRIBED MEDICAL TREATMENT. THEREFORE, THE ACTS AND OMISSIONS RENDERED BY MR PIMENTEL AND MR GRANNIS DENIED PLAINTIFF THE READY ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE/TREATMENT, IN WHICH, AMOUNTED TO RECKLESS NEGLIGENCE AND DELIBERATE INDIF- FERENCE, IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS GUARANTEED UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

## CONCLUSION

PLAINTIFF CONTENDS THAT, HE HAS SUBMITTED DOCUMENTED MEDICAL REPORTS WITHIN THIS COMPLAINT THAT SUBSTANTIATES HE DOES SUFFER FROM A SEVERE LOWER-LUMBAR DEGENERATIVE JOINT DESEASE. IN WHICH, BEGAN TO GIVE PLAINTIFF INTENSE PAIN (IN HIS LOWER-BACK) AS FAR BACK AS 1993; AND IN 1998 PLAINTIFF'S PAIN HAD WORSENED WHICH RESULTED IN HIM BEGINNING TO TAKE PAIN MEDICATIONS DAILY, UP UNTIL THE PRESENT DAY, IN WHICH HE CONTINUES TO TAKE DAILY.    TAKE NOTE: " ON 1-8-98 DR GENE BABBITT HAD RULED OUT DEGENERATIVE DISK DESEASE. SEE EXHIBIT E, PAGE 90 (X RAY REPORT FILED ON 1-8-98 BY DR GENE BABBITT). HOWEVER, ON 6-22-2001 PLAINTIFF HAD AN MRI TAKEN OF HIS LUMBO-SACRAL SPINE BY DOCTORS KATHLEEN J. ADAMS AND ROBERT H. TAMBEAUX, IN WHICH, INDICATED A MULTILEVEL DEGENERATIVE DISK AND FACET DESEASE" SEE EXHIBIT E, PAGES 91 AND 92 (RADIOLOGY REPORT FILED ON 6-22-2001 BY DR KATHLEEN J. ADAMS AND DR ROBERT H. TAMBEAUX).    THIS RADIOLOGY REPORT WAS FURTHER CONFIRMED ON 12-19-2001 BY ORTHOPEDIC SURGION DR MARK M. LAU WHO CONDUCTED A PHYSICAL EXAMINATION OF PLAINTIFF, AND CONCLUDED THAT THE STUDIES CONDUCTED ON PLAINTIFF CONFIRM A DEGENERATIVE DISK DESEASE.  SEE EXHIBIT E, PAGE 93 (ORTHOPEDIC CONSULTATION REPORT FILED ON 12-19-2001 BY DR MARK M. LAU).    ON 4-12-2002 PLAINTIFF WAS SEEN AND EXAMINED BY NEURO-SURGION DR MICHAEL W. POTTER WHO CONCLUDED AND CONFIRMED DR MARK M. LAU'S FINDINGS, THAT PLAINTIFF DID IN FACT HAVE THE FOLLOWING :

(1) SMALL ANTERIOR ANNULAR TEAR AT L3-4, OTHERWISE NOR-MAL APPEARING L3-L NUCLEUS PULPOSUS.
(2) DIFFUSE DEGENERATION OF THE L4-5 NUCLEUS PULPOSUS WITH ANNULAR TEARS AND SMALL CENTRAL DISK PROTRUSION WITH MILD SPINAL STENOSIS.
(3) PARTIAL POSTERIOR ANNULAR TEAR L5-S1, OTHERWISE NORMAL APPEARING L5-S1 NUCLEUS PULPOSUS.
(4) THERE IS NARROWING OF THE L4-5 DISK SPACE.

SEE EXHIBIT E, PAGES 96 THRU 98 (RADIOLOGY REPORT FILED 4-12-2002 BY

DR MICHAEL W. POTTER ); AND SEE PAGES 99 AND 100 (MRI REPORT FILED ON 2-5-2003 BY DR SAM KOKORIS).

ON 8-7-2003 PLAINTIFF HAD MAJOR SURGERY; IN WHICH CONSISTED OF INSERTING A POSTERIOR FIXATION DEVICE, WHICH WAS MEDICALLY REFERRED TO AS L4-5 ANTERIOR LUMBAR ANTIBODY FUSION USING VISTA BAK CAGES AND INFUSE.

PLAINTIFF FURTHER CONTENDS THAT, THE OPERATIVE REPORT COMPILED ON 8-7-2003, UNDOUBTEDLY PROVES THAT PLAINTIFF'S MAJOR SURGERY WAS A RESULT OF A SEVERE DEGENERATION OF HIS LOWER-LUMBAR L4-5. A DEGENERATION WHICH HAS BEEN FURTHER DIAGNOSED AND TREATED BY OVER TWENTY-FIVE DIFFERENT DOCTORS, THROUGHOUT PLAINTIFF'S INCARCERATION. ALL OF WHICH, AT SOME POINT, HAVE PRESCRIBED PAIN MEDICATIONS, PHYSICAL THERAPY AND MEDICAL CHRONOS FOR AN EXTRA MATTRESS, PILLOW, LOWER BUNK AND TIER; AND ALL OF WHICH, HAS BEEN DOCUMENTED WITHIN PLAINTIFF'S MEDICAL FILE. SEE EXHIBIT A, PAGES 69 THRU 72 (OPERATIVE REPORT FILED ON 8-7-2003 BY DR MICHAEL W. POTTER). IN LIGHT OF THE DOCUMENTED REPORTS SUBMITTED WITHIN THIS COMPLAINT AND PLAINTIFF'S MEDICAL FILE, PLAINTIFF CONTENDS THAT, THERE IS EXTENSIVE MEDICAL HISTORY INFORMATION THAT DETAILS THE EXACT CONDITION OF HIS LOWER-LUMBAR DEGENERATIVE DESEASE. IN WHICH, HAS BEEN INCOMPETENTLY AND INADEQUATELY ADDRESSED BY ALL THE DEFENDANTS, AND AS A RESULT, HAS DENIED PLAINTIFF THE READY ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE / TREATMENT. THESE ACTS AND OMISSIONS OF THE DEFENDANTS, AS ARGUED IN CLAIM I THRU IV, ARE NOT ISOLATED INCIDENTS. THESE ACTS AND OMISSIONS CONTINUED ON FOR OVER A PERIOD OF NINE MONTHS, AND CONTINUE ON THROUGH OUT THE PRESENT DAY.

AS CLEARLY POINTED OUT ABOVE, PLAINTIFF'S MEDICAL DOCUMENTATION SUBSTANTIATES HIS MEDICAL REQUEST PRESENTED WITHIN HIS ADA AND

602 APPEALS; YET, THE DEFENDANTS STILL RECKLESSLY AND DELIBERATELY DENIED TO AFFORD PLAINTIFF A MEANINGFUL AND TIMELY REVIEW OF HIS MEDICAL ISSUES WHICH COULD HAVE EASILY BEEN CONFIRMED BY A THOROUGH REVIEW OF PLAINTIFF'S MEDICAL FILE IN ITS ENTIRETY; YET, NONE OF THE DEFENDANTS BOTHERED TO REVIEW PLAINTIFF'S MEDICAL FILE IN ITS ENTIRETY. THE CRITICAL INDICATIONS OF THIS RECKLESSNESS AND INDIFFERENCE ARE EXHIBITED BY [1] ... MR WILBER'S TOTAL DISREGARD AND REFUSAL TO PROCESS PLAINTIFF'S A.D.A APPEAL ACCORDING TO DEPARTMENTAL PROCEDURAL POLICIES, AND FORCING PLAINTIFF TO FILE A 602 APPEAL WHICH WAS THE INCORRECT REMEDY TO PURSUE FOR HIS DISABILITY. THESE ACTS AND OMISSIONS NOT ONLY DENIED PLAINTIFF THE READY ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE/TREATMENT, BUT THEY DENIED PLAINTIFF THAT READY ACCESS ALTOGETHER; [2] ... NURSE RISENHOOVER'S OBVIOUS BREAKDOWN IN HER PROFESSIONAL OBLIGATIONS AND DUTIES ARE CLEARLY EVIDENT BY HER CONTRADICTION IN DENYING PLAINTIFF'S 602 APPEAL (AT THE FIRST LEVEL) FOR THE RENEWAL OF HIS MEDICAL CHRONO FOR AN EXTRA MATTRESS; IN WHICH, SHE BASED HER FINDINGS ON THE OPINION OF DR. SAYRE WHOM HAD FELT NOTHING WAS INDICATED TO WARRANT THE RENEWAL OF A MEDICAL CHRONO. HOWEVER, NURSE RISENHOOVER WAS PERSONALLY KNOWLEDGEABLE THAT DOCUMENTED INFORMATION IN PLAINTIFF'S MEDICAL FILE DID, IN FACT, WARRANT THE RENEWAL OF PLAINTIFF'S MEDICAL CHRONO; IN WHICH, SHE HERSELF ORDERED ON 11-15-2006. IN ADDITION, NURSE RISENHOOVER FAILED TO CONDUCT A PERSONAL INTERVIEW WITH PLAINTIFF AND FAILED TO RESPOND TO PLAINTIFF'S 602 APPEAL WITHIN THE PROSCRIBED TIME LIMITS AS SHE WAS PROCEDURALLY REQUIRED TO DO. THEREFORE, NURSE RISENHOOVER'S TOTAL DISREGARD OF HER OWN CONFIRMED CONCLUSIONS ON 11-15-2006 AND FOR PROCEDURAL POLICIES, CLEARLY DENIED PLAINTIFF OF A MEANING-

FUL AND TIMELY REVIEW OF HIS MEDICAL ISSUES, AND AS A FURTHER RESULT DENIED PLAINTIFF THE READY ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE/TREATMENT; (3) ... DR SAYRE'S DISAPPROVAL OF PLAINTIFF'S MEDICAL CHRONO FOR AN EXTRA MATTRESS WAS NOT BASED ON A THOROUGH REVIEW OF PLAINTIFF'S MEDICAL FILE. THIS POINT IS EVIDENT FOR TWO REASONS, (A) " BY NURSE RISENHOOVER'S COMMENT TO PLAINTIFF ON 11-15-2006, WHEN SHE INFORMED PLAINTIFF THAT IT WOULD BE A WASTE OF TIME IF SHE ORDERED PLAINTIFF'S MEDICAL CHRONO FOR AN EXTRA MATTRESS, BECAUSE DR SAYRE WAS GOING TO DISAPPROVE IT ANYWAY", AND (B) " BY DR SAYRE'S OPINION THAT NOTHING WAS INDICATED TO WARRANT THE RENEWAL OF A MEDICAL CHRONO FOR AN EXTRA MATTRESS." OBVIOUSLY, DR SAYRE IS NOT MAKING REFERENCE TO ANY INDICATION WITHIN PLAINTIFF'S MEDICAL FILE, WHERE THERE IS OVER A THOUSAND PLUS PAGES OF DOCU-MENTED MEDICAL EVIDENCE PROVING THAT PLAINTIFF'S AILMENT AND CONDITION DOES WARRANT THE RENEWAL OF HIS MEDICAL CHRONO, AND HAS BEEN WARRANTED FOR FOUR CONSECUTIVE YEARS BY EIGHT DIFFERENT DOCTORS; YET, DR SAYRE ALLEGES NO INDICATION EXIST. IN ADDITION DR SAYRE FAILED TO CONDUCT A PERSONAL INTERVIEW WITH PLAINTIFF, AS HE WAS PROCEDURALLY REQUIRED TO DO, AND DR SAYRE'S FAILURE IN NOT REVIEWING PLAINTIFF'S MEDICAL FILE IN ITS ENTIRETY TO BASE HIS CONCLUSIONS ON MEDICAL DOCUMENTATION, CLEARLY DENIED PLAINTIFF A MEANINGFUL AND TIMELY REVIEW OF HIS 602 APPEAL, AND AS A FURTHER RESULT, DENIED PLAINTIFF THE READY ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE/TREATMENT; (4) ... MR KRAVITZ'S INITIAL REFUSAL TO PROCESS AND SCREEN PLAINTIFF'S 602 APPEAL, BASED ON MR KRAVITZ'S FALSE ALLEGATIONS THAT PLAINTIFF HAD CHANGED THE ISSUES IN HIS 602 APPEAL, WHICH ESTABLISHES THAT MR KRAVITZ NEVER INTEND-ED TO AFFORD PLAINTIFF A MEANINGFUL REVIEW OF HIS MEDICAL ISSUES

RAISED WITHIN HIS 602 APPEAL. THIS FACT IS EVIDENT BY, (A) " MR KRAVITZ'S INITIAL REFUSAL ", (B) " MR KRAVITZ'S FAILURE TO CONDUCT A PERSONAL INTERVIEW WITH PLAINTIFF ", AND (C) " MR KRAVITZ'S FAILURE TO CONDUCT A THOROUGH REVIEW OF PLAINTIFF'S MEDICAL FILE IN ITS ENTIRETY, IN ORDER TO DETERMINE THE VALIDITY OF THE MEDICAL ISSUES RAISED WITHIN PLAINTIFF'S 602 APPEAL ". THEREFORE, AS A RESULT, MR KRAVITZ VIOLATED PROCEDURAL POLICIES. IN WHICH, DENIED PLAINTIFF OF A MEANINGFUL REVIEW OF HIS 602 APPEAL , AND AS A FURTHER RESULT, DENIED PLAINTIFF THE READY ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE / TREATMENT, (5) ... NURSE MCLEAN'S DENIAL OF PLAINTIFF'S 602 WHICH SHE MERELY REITER- ATES DR SAYRE'S POSITION; BUT MOST IRONICALLY, NURSE MCLEAN SETS OUT TO DESCRIBE THE CRITERION FOR THE ISSUANCE FOR A DOUBLE MATTRESS. THE VERY SAME CRITERION THAT PLAINTIFF'S AILMENT AND CONDITION CONSISTS OF. THE SUBMITTED RADIOLOGY REPORTS WITHIN THIS COMPLAINT PROVES THIS POINT; YET, NURSE MCLEAN ALLEGES IN HER SECOND LEVEL RESPONSE THAT THERE WAS NO X RAY EXAMINATION WITHIN PLAINTIFF'S MEDICAL FILE FOR REFERENCE. FURTHERMORE, THE OPERATIVE REPORT SUBMITTED WITHIN PLAINTIFF'S 602 APPEAL DESCRIBES PLAINTIFF'S DEGENERATIVE DESEASE WITH THE VERY SAME DEGENERATIVE PROPERTIES AS THAT OF DEGENERATIVE ARTHRITIS ; YET, NURSE MCLEAN MAKES NO DISTINCTION OF THE TWO. IT IS THIS TOTAL DISREGARD OF THE FACTS BEFORE NURSE MCLEAN THAT SHE FAILS TO CONFIRM, VIA A THOROUGH REVIEW OF PLAINTIFF'S MEDICAL FILE, WHETHER OR NOT PLAINTIFF'S RAISED MEDICAL ISSUES WERE VALID. THEREFORE, NURSE MCLEAN DENIED PLAINTIFF OF A MEANING- FUL REVIEW OF HIS 602 APPEAL , AND AS A FURTHER RESULT, DENIED PLAINTIFF THE READY ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE / TREATMENT ; AND (6) ... MR PIMENTEL AND MR GRANNIS' DENIAL

OF PLAINTIFF's 602 APPEAL WHICH WAS BASED ON THEIR MISCONSTRUING OF THE FACTS AND ALLEGING OF EVENTS THAT NEVER OCCURRED, AND IN WHICH, MR PIMENTEL AND MR GRANNIS FURTHER BASED THEIR FINDINGS ON. MR GRANNIS STATED IN HIS FINDINGS THAT PLAINTIFF WAS SEEN AND EXAMINED BY THE FIRST AND SECOND LEVEL REVIEWERS; "THIS NEVER OCCURRED". IN ADDITION, MR PIMENTEL AND MR GRANNIS NEVER CON-DUCTED A PERSONAL INTERVIEW WITH PLAINTIFF, OR CONDUCTED A THOROUGH REVIEW OF HIS MEDICAL FILE, IN ORDER TO BASE THEIR FINDINGS ON DOCUMENTED MEDICAL EVIDENCE. INSTEAD, THEY BASED THEIR FINDINGS ON ASSUMPTIONS AND MERELY REITERATED THE FIRST AND SECOND LEVEL RESPONSES. FURTHERMORE, THEY FAILED TO RESPOND TO PLAINTIFF's 602 APPEAL WITHIN THE PROSCRIBED TIME LIMITS, AS THEY WERE PRO-CEDURALLY REQUIRED TO DO. IT IS THIS TOTAL DISREGARD FOR PROCE-DURAL POLICIES THAT DENIED PLAINTIFF A MEANINGFUL AND TIMELY REVIEW OF HIS 602 APPEAL, AND AS A FURTHER RESULT, DENIED PLAIN-TIFF THE READY ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE/ TREATMENT.

PLAINTIFF CONTENDS THAT, (1) THE ACTS AND OMISSIONS OF THE DEFEN-DANTS IN THIS CASE CLEARLY EXHIBITED A RECKLESS NEGLIGENCE AND DELIBERATE INDIFFERENCE; (2) PLAINTIFF IS CONSTITUTIONALLY ENTITLED TO THE READY ACCESS TO COMPETENT AND ADEQUATE MEDICAL CARE/ TREATMENT; (3) THAT THE DEPRIVATION OF THIS CONSTITUTIONAL RIGHT MUST BE OBJECTIVELY, SUFFICIENTLY SERIOUS; (4) PLAINTIFF MUST SHOW THAT HE IS INCARCERATED UNDER CONDITIONS POSING A SUBSTANTIAL RISK OF SERIOUS HARM; (5) THAT ONLY THE UNNECES-SARY AND WANTON INFLICTION OF PAIN IMPLICATES THE EIGHTH AMENDMENT; AND (6) TO VIOLATE THE CRUEL AND UNUSUAL PUNISH-MENT CLAUSE, A PRISON OFFICIAL MUST HAVE A SUFFICIENTLY

CULPABLE STATE OF MIND. IN LIGHT OF THESE FACTORS, PLAINTIFF FURTHER
CONTENDS THAT, HE IS INCARCERATED UNDER CONDITIONS POSING A
SUBSTANTIAL RISK OF SERIOUS HARM, IN THAT, PLAINTIFF RELIES ON THE
MEDICAL DEPARTMENT AT PBSP FOR HIS READY ACCESS TO COMPETENT
AND ADEQUATE MEDICAL CARE / TREATMENT; AND THAT THE DEPRIVATION
PLAINTIFF HAS SUFFERED, AS A RESULT OF THE DEFENDANT'S ACTS AND
OMISSIONS, WAS OBJECTIVELY, SUFFICIENTLY SERIOUS, IN THAT, PLAINTIFF
SUFFERS FROM A LOWER-LUMBAR DEGENERATIVE JOINT DISEASE, AND AS
A RESULT, ENDURES INTENSE LOWER-BACK PAIN, IN WHICH, ALL THE DE-
FENDANTS WERE MADE CONSCIOUSLY AND KNOWLEDGEABLY AWARE OF BY
PLAINTIFF'S A D A AND 602 APPEALS. THEREFORE, PLAINTIFF CONTENDS
THAT THE DEFENDANTS CONSCIOUSLY AND WILLFULLY DISREGARDED THIS
SUBSTANTIAL RISK OF SERIOUS HARM TO PLAINTIFF'S HEALTH AND WELL
BEING, AND THEY UNDOUBTEDLY FAILED TO ACT REASONABLY IN THE FACE
OF THIS KNOWN RISK, AND THEY FURTHER FAILED TO TAKE ANY REASONABLE
MEASURES TO ABATE IT. CLEARLY THE DEFENDANTS WERE ALL CONSCIOUS
LY AND KNOWLEDGEABLY AWARE OF PLAINTIFF'S DEGENERATIVE DISEASE
AND THE INTENSE PAIN HE ENDURES. THE DEFENDANTS RESPONSES TO
PLAINTIFF'S A D A AND 602 APPEALS CONFIRM THIS FACT; BUT MOST
IMPORTANTLY, THEY ALL REFUSED TO EITHER VERIFY OR CONFIRM
PLAINTIFF'S MEDICAL CONDITION VIA A THOROUGH REVIEW OF PLAINTIFF'S
ENTIRE MEDICAL FILE. SPECIFICALLY, IN THE CASE OF NURSE RISEN-
HOOVER WHOM HAD TREATED PLAINTIFF ON SEVERAL OCCASIONS; YET,
SHE REFUSED TO VERIFY OR CONFIRM HER OWN CONCLUSIONS MADE
ON 11-15-2006, AT WHICH TIME NURSE RISENHOOVER ORDERED A MEDICAL
CHRONO FOR AN EXTRA MATTRESS, PILLOW, LOWER BUNK AND TIER.
PLAINTIFF CONTENDS THAT HIS DEGENERATIVE DISEASE EXHIBITED THE
EXISTENCE OF AN AILMENT THAT A REASONABLE DOCTOR WOULD

HAVE FOUND IMPORTANT AND WORTHY OF COMMENT OR TREATMENT; YET THE
DEFENDANTS NURSE RISENHOOVER, DR SAYRE AND NURSE MCLEAN FAILED TO
ATTENTIVELY ADDRESS OR RECOGNIZE THESE OBVIOUS MEDICAL FACTORS,
AND MR WILBER, MR KRAVITZ, MR PIMENTEL AND MR GRANNIS FAILED
TO ACKNOWLEDGE THEM ALTOGETHER. THEREFORE, THE ACTS AND OMIS-
SIONS RENDERED BY THE DEFENDANTS DENIED PLAINTIFF THE READY AC-
CESS TO COMPETENT AND ADEQUATE MEDICAL CARE/TREATMENT; IN
WHICH, AMOUNTED TO RECKLESS NEGLIGENCE AND DELIBERATE INDIF-
FERENCE, IN VIOLATION OF PLAINTIFF'S CONSTITIONAL RIGHTS. IN ADDI-
TION, PLAINTIFF FURTHER CONTENDS THAT, THE ACTS AND OMISSIONS BY
THE DEFENDANTS ARE NOT ISOLATED INCIDENTS. PLAINTIFF HAS ENCOUN-
TERED THIS RECKLESS NEGLIGENCE AND DELIBERATE INDIFFERENCE ON
SEVERAL OCCASIONS BY THE MEDICAL DEPARTMENT AND PRISON OFFICIALS
AT PBSP. TAKE NOTE: "PLAINTIFF PRESENTLY HAS BEFORE THIS COURT A
SEPARATE CIVIL COMPLAINT, CASE NO C 06-0888 CRB (PR), ALLEGING
THE EXACT SAME RECKLESS NEGLIGENCE AND DELIBERATE INDIFFERENCE;
IN WHICH, OBVIOUSLY HAS NOT PRECLUDED THE SYSTEMIC AND GROSS
DEFICIENCIES IN MEDICAL CARE AND PROCEDURES THAT PLAINTIFF
HAS AND CONTINUES TO ENDURE AT PBSP."
IT IS FOR ALL THE ABOVE STATED REASONS THAT PLAINTIFF PRAYS THIS
HONORABLE COURT TO GRANT ALL THE RELIEF SOUGHT WITHIN THIS
COMPLAINT, IN THE INTEREST OF JUSTICE.

DATED FEB 7, 2008                    s/ Frank J. Fernandez
                                         PLAINTIFF

EXHIBIT A

1. 602 APPEAL FILED ON 9-18-2006 BY PLAINTIFF

PART II OF II  602 APPEAL (SECTION D)

TO this 602, Although, F.N.P RISENHOOVER AND R.N
FLOWERS tolD ME that MY FILE WAS NOT THERE
IN the CLINIC, THEREFORE, I WOULD be brought bACK
TO the CLINIC BEFORE the WEEK OF 10-23-06, WHEN
they will have MY MEDICAL FILE TO ADDRESS AND
RENEW MY CHRONO. I GAVE it time THINKING I
WOULD bE CAllED bACK. ALSO, AS EXPRESSED IN
MY ADA APPEAL I FEAR I AM being EXCLUDED
FROM AND IMPEDED FROM GETTING this CHRONO
RENEWED. AS to DATE I HAVE NOT bEEN CAllED
bACK to the CLINIC AS I WAS tolD by F.N.P
RISENHOOVER AND R.N FLOWERS.
FURTHERMORE, I WOULD LIKE this 602 PROCESSED
At the FORMAL LEVEL, AS WELL AS MODIFIED AND
ACCEPTED AS AN ADA APPEAL.


11-14-06                    Frank Fernandez


                          FRANK FERNANDEZ
                          D-61222   D3-110


                    2      (64)

Due to a medical condition, please issue this patient a double mattress, one-to-one exchange, for the duration of one (1) year. EXPIRES: 11/15/07. (Written by: S. Risenhoover, F.N.P.)

Original: Medical Records

cc:    Unit Sgt.
      C-File
      Capt. Lt.

DISAPPROVED

_____
MICHAEL SAYRE, M.D.
Chief Medical Officer

**Written: 11/15/06**
**Typed: 11/16/06**      **FERNANDEZ, FRANK**      **D61222**      **PBSP/dk**      **MEDICAL**

PELICAN BAY S.H.U.
UNIT D-3

4        (65)

## FIRST LEVEL SUPPLEMENTAL PAGE
First Level Reviewer's Response


**RE:**   PELICAN BAY STATE PRISON

  Appeal Log #: PBSP-IA-18-2006-00017
  Inmate Name: FERNANDEZ D61222

**APPEAL DECISION**: PARTIALLY GRANTED


**APPEAL ISSUE:** On September 3, 2006 you submitted a CDC 7362 to have your chronos for an extra mattress, extra pillow, lower bunk/lower tier renewed. See original CDC 602 and attached CDC 1824 for exact details. [This was originally submitted on a CDC 1824 form and was screened out by the appeals coordinator as not meeting ADA criteria.]

**FINDINGS:**   Your appeal with the attachments and your requested action has received careful consideration. On September 13, 2006, I, S. Risenhoover, FNP examined you for this appeal. You stated that at times you still have left leg pain that is constant and goes down your leg to the back of your knee. You also claimed that at times your foot was numb and tingling. You stated you are able to back stretching exercise but that is about it. When I examined you your vital signs were stable, your reflexes were within normal limits, you had good muscular development in your back area, you were able to stand easily. You had normal range of motion of the back, you were able to support yourself when you bent forward and finally you were able to heel toe walk. Upon the conclusion of the examination, I discussed your case with Dr. M. Sayre, Chief Medical Officer. Your chronos for the extra pillow and lower bunk were renewed. Dr. Sayre did not feel it was indicated to renew your chrono for an extra mattress or for a lower tier. Your medications were also renewed during this visit. This concludes the review of this appeal at the first level.

**DETERMINATION OF ISSUE:**   A thorough review of your request presented in this complaint has been completed.      Based on this review, the action requested to resolve the appeal is PARTIALLY GRANTED.


_S. RISENHOOVER, FNP_                    _1/26/07_
S. RISENHOOVER, FNP                    Date


_M. Sayre_                    _1/29/07_
M. SAYRE, M.D.                    Date
Chief Medical Officer


3        (66)

from receiving medical treatment. As a result of this
advisement, I filed a 602 appeal on 11-14-2006 to the
formal level raising the exact same issues as in
my ADA appeal, and on 1-26-2007 my 602 appeal
was partially granted, in that I was granted the
renewal of my chrono for an extra pillow and lower-
bunk. However, I was not granted the renewal of
my chrono for an extra mattress. See pages 3 and 4
of 602 appeal. Furthermore, I was not given a
specific reason as to why I was denied the extra
mattress; even though there is substantial evidence
in my medical file establishing that I had a serious
medical operation; which consisted of a spinal fusion,
that required inserting a vista bak cage, and sextant
pedicle screen fixation with rods, in my lower-lumbar
region. See pages 7 thru 10 of 602 appeal. Also
take note, that in 2003 I was granted a chrono for
an extra mattress by Dr. Rowe as a result of my
operation, and I was continuosly granted the renewal
of this chrono every year since then until 2007, see
page 2 of ADA appeal.

As a result of my operation, I continue to endure pain
in my lower back; evenmoreso, when I am required
to sleep on one mattress which does not give my
lower-back the appropriate support and comfort from
the concrete surface of my bunk. In light of

5        /67/                   -over-

D6(222

DOCTORS MEDICAL CENTER          PT:   FERNANDEZ, FRANK
1441 Florida Avenue             MR#:  000681457          DMC
P.O. Box 4138                   PT:   1                  RM:   3W0382 A
Modesto, CA  95352              ADM:  08/07/2003         DIS:
209/578-1211                    ACCT: 6270115            AUTH ID:  1122
DOB:  06/23/1963                000004286 REMINGTON
Page 1 of 4                                              OPERATIVE REPORT

cc:   BENJAMIN REMINGTON, M.D.


DATE OF OPERATION
08/07/03

PREOPERATIVE DIAGNOSIS
Discogenic low back pain.

POSTOPERATIVE DIAGNOSIS
Discogenic low back pain.

PROCEDURE
1.    L4-5 anterior lumbar antibody fusion using Vista BAK cages and
infuse.
2.    Interbody device placement at L4-5 using the Vista BAK cages, 15 x 20
mm.
3.    Posterior instrumentation using Sextant pedicle screw fixation from
L4 to L5.

SURGEON
Benjamin J. Remington, M.D.

CO-SURGEON                    PELICAN BAY S.H.U.
Patrick Coates, M.D.

ASSISTANT                        UNIT D-3
Eric Quek, PA

ANESTHESIOLOGIST
Henry Liau, M.D.

ANESTHESIA
General endotracheal anesthesia.

ESTIMATED BLOOD LOSS
100 cc.

INDICATIONS
The patient is a 40 -year-old male inmate with low back pain for greater
than 6 years. He's had extensive work up and conservative treatment and he
felt he was at the point where he desired to try surgery. He's had
extensive work up including magnetic resonance imaging scans and
diskograms. The magnetic resonance imaging clearly showed L4-5 being
severely degenerative. L3-4 on the diskogram showed that the disk appeared


PRINTED BY: HILDA              DATE    9/18/2003

7    (69/

DOCTORS MEDICAL CENTER          PT:  FERNANDEZ, FRANK
1441 Florida Avenue             MR#:  000681457         DMC
P.O. Box 4138                   PT:  1                  RM:  3W0382 A
Modesto, CA  95352              ADM:  08/07/2003        DIS:
209/578-1211                    ACCT:  6270115          AUTH ID:  1122
DOB:  06/23/1963                000004286 REMINGTON
Page 2 of 4                                             OPERATIVE REPORT

healthy however he did have leg pain. The patient did not have any leg pain
as part of his symptomatology however. L4 had concordant pain and was
severely degenerative. He had a normal L5-S1 diskogram with no symptoms.
Therefore, he was felt to be a good candidate for an L4-5 interbody fusion
with Sextant pedicle screw fixation for augmentation.

I had a lengthy discussion with the patient about the various treatment
options including surgery. I had a lengthy discussion with the patient
regarding the risks of surgery. He understood the risks and desired to
proceed with surgery despite these risks.

DESCRIPTION OF PROCEDURE
After informed written consent was obtained, the patient was taken back to
operating room #12 and intubated by the anesthesia team. He was placed in
the supine position on the operating room table and his abdomen was
exposed. His abdomen was then prepped and draped in the normal sterile
fashion.

Please see Dr. Coates' dictated operative report for the exposure to the
anterior L4-5 interspace.

Dr. Coates had placed a screw in the midline at L4-5. This was verified
with an AP and lateral C-arm fluoroscopy. At this point, I removed the
screw, marked the midline and using a centering guide, placed 2 holes
lateral. The starter reamer were then used at the 2 holes. Then sequential
distracting plugs were used, starting with a 9 mm and going up, alternating
size, until a 12 mm was placed on both sides. The centering post was then
positioned. The distracting plugs were removed.

Direct visualization was much as the double-barreled guide tube was placed
into position with the soft tissue carefully protected. This was then
tapped into place in a standard fashion. The patient's left side was done
first with a starter reamer which was then C-arm fluoroscopy x-rayed to
verify appropriate angle and depth. The final reamer was then used and any
residual disk material was removed using an elongated pituitary. The tap
was then used and final lateral C-arm fluoroscopy was obtained to verify
both angle and depth.

The 15 x 20 mm Vista BAK cage was then inserted with the infuse also
inserted in both compartments.

Attention was then focused on the patient's right side. The same procedures
were performed and the other Vista BAK cage was placed.

A final AP and lateral C-arm fluoroscopy image was attained using the dots.

PRINTED BY: HILDA          DATE     9/18/2003

```
DOCTORS MEDICAL CENTER        PT:   FERNANDEZ, FRANK
1441 Florida Avenue           MR#:  000681457        DMC
P.O. Box 4138                 PT:   1                RM:   3W0382 A
Modesto, CA  95352            ADM:  08/07/2003       DIS:
209/578-1211                  ACCT: 6270115          AUTH ID:  1122
DOB:  06/23/1963              000004286 REMINGTON
Page 3 of 4                                         OPERATIVE REPORT
```

We were able to see that we had excellent position of both cages. The cages were noted to be well recessed. AlloMatrix was then placed over the top of the cages and in between the cages.

The closure was then turned over to Dr. Coates. Please see his dictated operative report for details of his closure.

All of the patient's drapes were then removed and he was then flipped into the prone position on a Jackson table and padded in position in a standard fashion. His back was then prepped in a standard fashion.

Using C-arm fluoroscopy, the pedicles of L4 and L5, both the right and left side, were marked out. From the pedicles lateral, approximately 1-1/2 cm, a skin incision was drawn out on both sides. This area was then prepped and draped in the normal sterile fashion.

Using a spinal needle, the incision was checked to verify that we had accurate placement of the incision. All the incisions were injected with local anesthesia. A knife was used to open the incision. The Cook bone biopsy was then used to palpate the transverse process and to feel the midline in the start of where the pedicle is. AP C-arm fluoroscopy was used to check the guidance of the Cook needle into the pedicle. It was tapped gently into place. The C-arm was then positioned in a lateral position and followed as the Cook needle was tapped all the way into the vertebral body.

The trocar was then removed and a K-wire was inserted into the anterior portion of the vertebral body. The Cook catheter was then removed and the K-wire was secured to the drapes to get it out of the way. This procedure was done for all four pedicles at L4 and L5.

Starting on the patient's right side, the soft tissue dilation system was used to the big dilation system. The smaller ones were removed and a tap was used over the K-wire under direct visualization of a lateral C-arm fluoroscopy. This was tapped all the way to the end of the tap and removed carefully. We ended up using 45 mm screws for all four screws. The soft tissue dilator was then removed. The screw was placed over the K-wire and under direct fluoroscopic vision, was inserted into place. The K-wire was then removed. This was done for the other pedicle on the patient's right side.

The Sextant system was then mated and the Sextant arm was engaged. The skin entry site was marked out. Local anesthesia was used. The knife was used to open the skin. This was then placed into the upper screw and C-arm fluoroscopy was used to verify that it was adequate position. Using the measuring device, an appropriate sized rod was selected. The rod was then

```
DOCTORS MEDICAL CENTER        PT:  FERNANDEZ, FRANK
1441 Florida Avenue           MR#: 000681457        DMC
P.O. Box 4138                 PT:  1                RM:  3W0382 A
Modesto, CA  95352            ADM: 08/07/2003       DIS:
209/578-1211                  ACCT: 6270115         AUTH ID:  1122
DOB:  06/23/1963              000004286 REMINGTON
Page 4 of 4                                         OPERATIVE REPORT
```

inserted and verified with multiple C-arm fluoroscopy angles to ensure that
it had engaged both screw heads. The whole construct was then placed under
some compression and tightened. The torque wrench was then used to pop off
the screw caps. The whole system was then removed.

The same procedure was done for the patient's left side.

A postoperative AP and lateral C-arm fluoroscopy image was attained to
verify that we had excellent position.

The wounds were then irrigated with some irrigation. The fascia was closed
with #1-0 Vicryl stitch. The soft tissue was closed with interrupted #3-0
Vicryl sutures. The wounds were cleaned and dried. Mastisol, Steri-Strips
and sterile dressing was placed.

The patient tolerated the procedure well. There were no complications. All
counts were correct.


BR:ms1
D. 08/07/2003 11:46 A
T. 08/08/2003  7:13 A
JOB #:000004286
DOCUMENT # 1100407

                              BENJAMIN REMINGTON, M.D.


Authenticated by BENJAMIN REMINGTON, M.D. On 8/8/2003 1:54:26 PM

SECOND LEVEL APPEAL RESPONSE

RE:   PELICAN BAY STATE PRISON
      Appeal Log: PBSP-18-2006-00017
      Inmate: FERNANDEZ D61222

Maureen McLean, FNP, Health Care Manager at Pelican Bay State Prison (PBSP) reviewed this matter. Joseph Kravitz, Correctional Counselor II (A), conducted the Appeal at the Second Level of Review on February 13, 2007.

**APPEAL ISSUE:** On September 3, 2006 you submitted a CDC 7362 to have your chronos for an extra mattress, extra pillow, lower bunk/lower tier renewed. See original CDC 602 and attached CDC 1824 for exact details. [This was originally submitted on a CDC 1824 form and was screened out by the appeals coordinator as not meeting ADA criteria.]

Your appeal with the attachments and your requested action has received careful consideration. On September 18, 2006, S. Risenhoover, FNP examined you for this appeal. You stated that at times you still have left leg pain that is constant and goes down your leg to the back of your knee. You also claimed that at times your foot was numb and tingling. You stated you are able to back stretching exercise but that is about it. When S. Risenhoover examined you, your vital signs were stable, your reflexes were within normal limits, you had good muscular development in your back area and you were able to stand easily. You had normal range of motion of the back, you were able to support yourself when you bent forward and finally you were able to heel/toe walk. Upon the conclusion of the examination, she discussed your case with Dr. M. Sayre, Chief Medical Officer. Your chronos for the extra pillow and lower bunk were renewed. Dr. Sayre did not feel it was indicated to renew your chrono for an extra mattress or for a lower tier. Your medications were also renewed during this visit. This concludes the review of this appeal at the first level.

**FINDINGS:** A review of your appeal has been completed. Your appeal with the attachments and your requested action has received careful consideration. I, M. McLean, FNP, Health Care Manager, was assigned to investigate your allegations. Joseph Kravitz, Correctional Counselor II (A), reviewed your medical file and responses February 13, 2007. The criterion for issuance of a double mattress chrono is that the patient must have demonstrated severe degenerative arthritis on x-ray examination. Dr. Sayre based his decision to disapprove the double mattress chrono based on part of your physical examination. Additionally, you did not have an x-ray of your back in your medical record for reference. Based on the aforementioned there has been no additional evidence provided to warrant the reversal of the first level appeal decision. This concludes the review of this appeal at the second level.

**DECISION:** The Appeal is denied.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

Joseph Kravitz          Date          Maureen McLean, FNP          Date
Correctional Counselor II (A)          Health Care Manager

73/

constitutions; and (4) to exhaust my administrative remedies before
I pursue legal litigation.

I have continuously attempted to bring my medical condition
to the medical departments attention regarding my surgery on
8-7-2003; which consisted of a spinal fusion, that required in-
serting a vista back cage and sextant pedicle screw fixation
with rods in my lower-lumbar region. as a result of this
surgery I continue to experience lower-back pain; even more so,
when I am required to sleep on a concrete bed with a four
inch mattress. therefore, in 2003 Dr. Rowe ordered an extra
mattress chrono to help alleviate the pain. this chrono in
question was and has been renewed for three consecutive years
until 2007; at which time I was denied the extra mattress
chrono by Dr. Sayre. who in his opinion stated, he did
not feel it was indicated to renew my extra mattress chrono.
see pages 3 and 11.

Dr. Sayre's opinion is obviously contrary to that of Dr. Rowe and
S. risenhoover, whom both had determined and concluded
that I needed the use of an extra mattress. it should be
noted that my condition is not one which will subside in
time. I will continue to endure lower-back pain and discomfort
for the rest of my life. therefore, Dr. Sayre's failure to
recognize this fact from all the documented medical reports
within my central medical file clearly establishes a deliberate
indifference towards my medical condition, health and
well being.

see action requested for renewal of an extra mattress chrono.

12    (74)

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date: **JUL 0 8 2007**

In re:  Fernandez, D-61222
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0614321        Local Log No.: PBSP 06-00017

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Pimentel, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I  APPELLANT'S ARGUMENT:** It is the appellant's position that the medical staff at Pelican Bay State Prison (PBSP) inappropriately denied the renewal of his extra mattress, extra pillow, and lower bunk / lower tier chronos. The appellant asserts that he suffers from pain and the requested items are necessary. The appellant requests to have his chronos renewed.

**II  SECOND LEVEL'S DECISION:** The reviewer found that a comprehensive and thorough review of the appellant's appeal was conducted. The First Level of Review (FLR) noted that the appellant was examined on September 18, 2006 and the primary care physician found that the appellant demonstrated normal range of motion and other tests were within normal limits. The FLR noted that the appellant was approved for an extra pillow and lower bunk; however, the lower tier and extra mattress were denied. The FLR found that these items were not medically necessary. The Second Level of Review (SLR) concurred with the diagnosis of the FLR and noted that the appellant's case factors were reviewed by the Chief Medical Officer who concurred with the diagnosis of the FLR and found that there was no medical evidence to support issuance of the requested items. The SLR denied the appeal.

**III  DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A. FINDINGS:** The documentation and arguments are persuasive that the appellant has failed to support his appeal issues with sufficient evidence or facts to warrant a modification of the SLR. The SLR has presented the appellant a thorough and comprehensive review of the appellant's issue and the Director's Level of Review (DLR) finds no basis to alter said decision. The appellant was examined by licensed physicians who determined that there was no medical evidence to support renewing the appellant's lower tier and extra mattress chronos. California Code of Regulations, Title 15, Section (CCR) 3354 establishes that only qualified medical staff shall be permitted to diagnose illness and prescribe medication and medical treatment for inmates. It is not appropriate for the appellant to self-diagnose his own medical problems and then expect a medical doctor to implement the appellant's recommendation for a course of medical treatment. Therefore no relief is provided at the DLR.

The appellant filed the appeal as an Americans with Disabilities Act issue. Following careful examination, there is no evidence to support that the issue and its resolution fall within the Armstrong v. Davis Court Ordered Remedial Plan or CCR 3085. As such, it has been processed in accordance with CCR 3084 et sequitur.

**B. BASIS FOR THE DECISION:**
CCR: 3000, 3001, 3350, 3350.1, 3352, 3354

**C. ORDER:** No changes or modifications are required by the institution.

(75)

FERNANDEZ, D-61222
CASE NO. 0614321
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:   Warden, PBSP
      Health Care Manager, PBSP
      Appeals Coordinator, PBSP
      Medical Appeals Analyst, PBSP

EXHIBIT B

1. VICTIMS COMPENSATION AND GOVERNMENT CLAIMS
   BOARD FILED ON 2-27-2007 BY PLAINTIFF

**V C G C B**
. Victim    Compensation    &    Government    Claims    Board

STATE OF CALIFORNIA
ARNOLD SCHWARZENEGGER, Governor

GOVERNMENT CLAIMS PROGRAM
400 R Street, 5th Floor ♦ Sacramento, California 95814
◄Mailing Address: P.O. Box 3035 ♦ Sacramento, California 95814
Toll Free Telephone Number 1-800-955-0045 ♦ Fax Number: (916) 491-6443
Internet: www.vcgcb.ca.gov

ROSARIO MARIN
Secretary
State and Consumer Services Agency
Chairperson
JOHN CHIANG
State Controller
Board Member
MICHAEL A. RAMOS
San Bernardino County District Attorney
Board Member
KAREN McGAGIN
Executive Officer

Frank J Fernandez D61222
PO Box 7500
Cresent City, CA  95532

June 11, 2007

RE:  Claim G566378 for Frank J Fernandez, D61222

Dear Frank Fernandez,

The Victim Compensation and Government Claims Board (VCGCB) received your claim on February 27, 2007.

Based on its review of your claim, Board staff believes that the court system is the appropriate means for resolution of these claims, because the issues presented are complex and outside the scope of analysis and interpretation typically undertaken by the Board. The claim has been placed on the consent agenda. The VCGCB will act on your claim at the August 16, 2007 hearing. You do not need to appear at this hearing.  The VCGCB's rejection of your claim will allow you to initiate litigation should you wish to pursue this matter further.

If you have questions about this matter, please mention letter reference 99 and claim number G566378 when you call or write your claim technician/analyst at (800) 955-0045.

Sincerely,

Government Claims Division
Victim Compensation and Government Claims Board

cc:  B-23 Corrections and Rehabilitation, Attn: Donna Corbin

     Ltr 99 Complex Issue Reject



Victim   Compensation   &   Government   Claims   Board

STATE OF CALIFORNIA
ARNOLD SCHWARZENEGGER, Governor

GOVERNMENT CLAIMS PROGRAM
400 R Street, 5th Floor ♦ Sacramento, California 95814
*Mailing Address: P.O. Box 3035 ♦ Sacramento, California 95814
Toll Free Telephone Number 1-800-955-0045 ♦ Fax Number: (916) 491-6443
Internet: www.vcgcb.ca.gov

ROSARIO MARIN
Secretary
State and Consumer Services Agency
Chairperson
JOHN CHIANG
State Controller
Board Member
MICHAEL A. RAMOS
San Bernardino County District Attorney
Board Member
KAREN McGAGIN
Executive Officer

Frank J Fernandez D61222
PO Box 7500
Cresent City, CA  95532

August 28, 2007

RE:  Claim G566378 for Frank J Fernandez, D61222

Dear Frank Fernandez,

The Victim Compensation and Government Claims Board rejected your claim at its hearing on
August 23, 2007.

If you have questions about this matter, please mention letter reference 118 and claim number G566378 when
you call or write your claim technician or analyst at (800) 955-0045.

Sincerely,

Anita Ahuja,  Program Manager
Government Claims Division
Victim Compensation and Government Claims Board

cc:   B-23 Corrections and Rehabilitation, Attn: Donna Corbin

Warning
"Subject to certain exceptions, you have only six months from the date this notice was personally delivered or
deposited in the mail to file a court action on this claim."   See Government Code Section 945.6.  You may
seek the advice of an attorney of your choice in connection with this matter.  If you desire to consult an
attorney, you should do so immediately.  PLEASE CONSULT GOVERNMENT CODE SECTION 955.4 FOR
PROPER SERVICE OF SUMMONS AND COMPLAINT.

Ltr 118 Board Claim Rejection

EXHIBIT C

1. A DA FORM FILED ON 11-7-2006 BY PLAINTIFF

2. EXPIRED HEALTH CARE SERVICES UNIT CHRONO
   FILED ON 10-16-2006 BY PBSP MEDICAL
   DEPARTMENT

3. CDC-1824 A DA APPEAL SCREENING FORM
   FILED ON 11-13-2006 BY MR WILBER

STATE OF CALIFORNIA

**REASONABLE MODIFICATION OR ACCOMMODATION REQUEST**

CDC 1824 (1/95)

DEPARTMENT OF CORRECTIONS

INSTITUTION/PAROLE REGION: **PBSP**  LOG NUMBER:  CATEGORY: **18. ADA**

PELICAN BAY SHU

*NOTE:* THIS FORM IS TO BE USED ONLY BY INMATES/PAROLEES WITH DISABILITIES

*In processing this request, it will be verified that the inmate/parolee has a disability which is covered under the Americans With Disabilities Act.*

*(handwritten: WANTS EXPIRED LT/LB CHRONO UPDATED)*

| INMATE/PAROLEE'S NAME (PRINT) | CDC NUMBER | ASSIGNMENT | HOURS/WATCH | HOUSING |
|---|---|---|---|---|
| FERNANDEZ, FRANK | D-01222 | | | D3-110 |

In accordance with the provisions of the Americans With Disabilities Act (ADA), no qualified individuals with a disability shall, on the basis of disability, be excluded from participation in, or be denied the benefits of the services, activities, or programs of a public entity, or be subjected to discrimination.

You may use this form to request specific reasonable modification or accommodation which, if granted, would enable you to participate in a service, activity or program offered by the Department/institution/facility, for which you are otherwise qualified/eligible to participate.

Submit this completed form to the institution or facility's Appeals Coordinator's Office. A decision will be rendered within 15 working days of receipt at the Appeals Coordinator's Office and the completed form will be returned to you.

If you do not agree with the decision on this form, you may pursue further review. The decision rendered on this form constitutes a decision at the FIRST LEVEL of review.

To proceed to SECOND LEVEL, attach this form to an Inmate/Parolee Appeal Form (CDC 602) and complete section "F" of the appeal form.

Submit the appeal with attachment to the Appeals Coordinator's Office within 15 days of your receipt of the decision rendered on this request form.

If you are not satisfied with the SECOND LEVEL review decision, you may request THIRD LEVEL review as instructed on the CDC 602.

**MODIFICATION OR ACCOMMODATION REQUESTED**

DESCRIPTION OF DISABILITY:
Spinal fusion.

WHAT VERIFICATION DO YOU HAVE OF YOUR DISABILITY?
MEDICAL FILE VERIFIES OPERATION OF LUMBAR 4-5 IN 2803.

DESCRIBE THE PROBLEM: I have had a medical chrono for extra mattress/extra pillow, lower tier, lower bunk that expired on 9-9-06. I submitted request before that deadline as well as after, to have this chrono renewed. On 10-10-06 I went to Dr. line and was told that I would be brought back the following week because my medical file was not there. Although, it has been 3 weeks and I still have not seen the Dr. to renew my chrono. I feel I am deliberately being excluded from participation and subjected to discrimination and request reasonable accommodation, as I feel I am being denied these accommodations.

WHAT SPECIFIC MODIFICATION OR ACCOMMODATION IS REQUESTED?

That a permanent chrono for lower/tier, lower bunk, extra mattress extra pillow.

INMATE/PAROLEE'S SIGNATURE

NOV 13 2006

DATE SIGNED 11-7-06

(ATTACHMENT 2)    (81)

PBSP Patient Information System

PELICAN BAY S.H.U.
UNIT D 3

Pelican Bay State Prison, Appeals Office                                    ADA Appeal Screen-Out Form (Rev. 2/06)

# CDC-1824  ADA APPEAL SCREENING FORM

To: FERNANDEZ | CDC #: D61222 | Housing: D3 110 | Appeal Log #:

## YOUR APPEAL IS BEING RETURNED TO YOU FOR THE FOLLOWING REASON(S):

[ ] You have already submitted an appeal on this same issue. CCR 3084.3(c)(2) Refer to Log #

[ ] In your appeal you are requesting a transfer solely for medical treatment. This request is a non-Americans with Disabilities Act issue; therefore, your appeal was re-categorized as a CDC 602, Inmate/Parolee Appeal Form. ARP §IV.23.b.

[X] In your appeal you are complaining about pain and requesting medical treatment with no indication that program access is denied or impeded. This request is a non-Americans with Disabilities Act issue; therefore, your appeal was re-categorized as a CDC 602, Inmate/Parolee Appeal Form. ARP §IV.23.b.

[ ] You are requesting a Second Level review. However, you have not adequately explained your dissatisfaction with the First Level review. Pursuant to the Armstrong Remedial Plan, you must explain your dissatisfaction with the First Level Response and suggest an appropriate resolution. ARP §IV.23.e.

[ ] Your appeal includes both Americans with Disabilities Act (ADA) and non-ADA issues. Staff shall address your ADA issues only. Your non-ADA issues may be recorded on a CDC 602, Inmate/Parolee Appeal Form. ARP §IV.23.b.

[ ] You are requesting a Second Level review. However, you failed to submit the appeal within 15 working days of receipt of the First Level decision by the Division Head; therefore, your appeal is rejected. ARP §IV.23.e / CCR 3084.3(c)(6).

[ ] You have inadequately completed the CDC Form 1824 or 602 (e.g., no signature, section incomplete, missing appeal attachments, etc.). Correct the missing information and forward the appeal back to the Appeal Coordinator's office. CCR 3084.3(c)(5).

Remarks: PLEASE RE-SUBMIT APPEAL ON A PBSP-C 602
WITH COPY OF EXPIRED CHRONO.

Please correct the indicated problems and return your appeal to the Appeals Office.

C. E. WILBER                    NOV 1 3 2006
Appeals Coordinator                 Date

# PELICAN BAY S.H.U.
# UNIT D-3

Note: Failure to follow instructions will be reviewed as non-cooperation and your appeal will be automatically dismissed pursuant to CCR 3084.4(d). This screening decision may not be appealed unless you allege the above reasons are inaccurate. In such a case, please return this form to the Appeals Coordinator with the necessary information. You have only 15 days to comply with any of the above directives. CCR 3084.3(c)(6) / 3084.6(c).

# PERMANENT APPEAL ATTACHMENT – DO NOT REMOVE!
NOV 1 3 2006

(ATTACHMENT 1)    |84|

EXHIBIT D

1. INMATE/PAROLEE APPEALS SCREENING FORM
   FILED ON 2-1-2007 BY MR KRAVITZ

2. LETTER TO MR WILBER FROM PLAINTIFF
   WRITTEN ON 2-2-2007

EXHIBIT E

1. RADIOLOGY REPORTS FILED ON:

1-8-98  BY DR GENE BABBITT

6-22-2001 BY DR'S KATHLEEN J. ADAMS AND ROBERT H. TAMBEAUX

12-19-2001 BY DR MARK M. LAU

2-15-2002 BY DR MICHAEL W. POTTER

4-12-2002 BY DR'S MICHAEL W. POTTER AND WILLIAM R. NEMZEK

2-5-2003 BY DR SAM KOKORIS

12-16-2003 BY DR GENE BABBITT

10-25-2004 BY DR CURTIS COULAM




# X-RAY REPORT

## DEPARTMENT OF CORRECTIONS
## PELICAN BAY STATE PRISON
## HEALTH CARE SERVICES

NAME: <u>FERNANDEZ, FRANK</u>    NO. <u>D61222</u>    RM #: <u>D1-223</u>    DOB: <u>6/23/63</u>    DATE: <u>01/08/98</u>

EXAM REQUESTED:    <u>LS SPINE</u>

REQUESTING M.D.:    <u>DR. SANDS</u>

CLINICAL DATA:    <u>RULE OUT DEGENERATIVE DISC DISEASE</u>

RADIOGRAPHIC REPORT:    LS SPINE

FINDINGS:    Comparison is made to study of 2/24/93. On the frontal image, there is a mild thoracolumbar levoscoliosis measuring approximately 5° which may be positional. The vertebral bodies and disc spaces remain intact. Mild wedging of L-2 anteriorly is stable since the previous study. Disc spaces and posterior elements are intact. No evidence for spondylolysis or spondylolisthesis.

**IMPRESSION:    1.    STABLE LS SPINE WITHOUT EVIDENCE FOR SIGNIFICANT ABNORMALITY RADIOGRAPHICALLY. PROBABLE MINIMAL THORACOLUMBAR LEVOSCOLIOSIS.**



| 1/13/98 | GENE BABBITT, M.D... | JE |
|---|---|---|
| DATE READ | RADIOLOGIST | TRANSCRIBER |

SUTTER COAST HOSPITAL
800 EAST WASHINGTON BOULEVARD
CRESCENT CITY, CALIFORNIA 95531

**RADIOLOGY REPORT**

06/22/01    **MRI OF LUMBOSACRAL SPINE**

**CLINICAL HISTORY**: Degenerative joint disease and back pain in a
patient who sometimes complains of left leg pain.

**FINDINGS**: Sagittal and axial T-1 and T-2 weighted images of the
lumbosacral spine were obtained.

The vertebral bodies of the lumbar spine are normal in height
without evidence of subluxation. There is mild wedging of the
lower thoracic vertebral bodes and prominent Schmorl's nodes
noted at multiple levels. This wedging is probably physiologic.
The conus medullaris near the level of the L1-2 disc space and no
abnormal thecal masses or clumping of the nerve roots are
demonstrated here. The discs show some narrowing throughout the
lower thoracic spine and there is significant desiccation at the
T12-L1 disc with mild bulging but without evidence of spinal
stenosis or neuroforaminal compromise.

At L1-2 there is a right paracentral disc herniation which does
not impinge on the nerve roots or the thecal sac or cause any
compromise of the thecal sac. There is generous facet disease at
this level.

At L2-3 the disc is relatively unremarkable. There is no spinal
stenosis or nerve root compromise.

At L3-4 there is minimal desiccation of the disc and mild
concentric disc bulging along with ligamentum flavum facet
hypertrophy which caused minimal spinal stenosis.

At L4-5 there is a moderate central disc herniation. This may
compromise the descending L5 nerve roots. This does not cause a
significant spinal stenosis and the L4 nerve roots appear to exit
without compromise.

The L5-S1 disc is essentially normal in appearance. There is a
slight fusion anomaly of the lamina and some ligamentum flavum
and facet height hypertrophy which is asymmetric and most

| CRESCENT IMAGING MEDICAL GROUP, INC. | NAME: | CDC D61222 *Fernandez, Frank* |
| KATHLEEN J. ADAMS, M.D. | MR#: | 07-80-18 |
| ROBERT H. TAMBEAUX, M D. | AGE: | M 37 |
| RADIOLOGISTS | DOCTOR: | Wolf. |

9/

SUTTER COAST HOSPITAL
800 EAST WASHINGTON BOULEVARD
CRESCENT CITY, CALIFORNIA 95531

### RADIOLOGY REPORT

Page 2

pronounced on the left. This may slightly displace the left S1
nerve root.

**IMPRESSION**: Multilevel degenerative disc and facet disease as
described above with central herniation at L4-5 with potential
compromise of either L5 nerve root. Anomalous fusion of lamina at
L5 S1 with some eccentric hypertrophic spurring and ligamentum
flavum hypertrophy which comes in close proximity to the left S1
nerve root but does not appear to significantly displace it.

Robert H. Tambeaux, M.D.    /SPS-179/JOB 9460
d: 06/22/01  t: 06/26/01

CRESCENT IMAGING MEDICAL GROUP, INC.
KATHLEEN J. ADAMS, M.D.
ROBERT H. TAMBEAUX, M.D.
RADIOLOGISTS

NAME :        CDC D61222 Fernandez, Frank
MR# :        07-80-18
AGE :        M 37
DOCTOR :     Wolf,

92

## ORTHOPEDIC CONSULTATION
## MARK M. LAU, M.D.
## GREGORY J. DUNCAN, M.D.

The patient is a 37 year-old inmate at Pelican Bay State Prison who presented with a several year history of chronic low back pain. There was no history of trauma. He had attended physical therapy with some relief. However, he is not satisfied with chronic intermittent pain. He describes pain radiating into his buttocks and numbness in the right leg with burning sensation.

**PAST MEDICAL HISTORY**
**REVIEW OF SYSTEM:**      Negative.

**MEDICATIONS:**      Naprosyn and Mylanta.

**ALLERGIES:**      <u>**IODINE CONTRAST.**</u>

**EXAMINATION:**   The patient is a well-developed, well-nourished individual who appears to be in good health. He is not obese. He was moving around the room without difficulty. He had full range of motion of the lumbar spine. Straight leg raise to 90° is negative bilaterally. His hamstrings are not tight. There was no atrophy noted. No lateralizing motor or sensory deficit. Reflexes were depressed, but symmetrical bilaterally. He had 2+ pedal pulses.

MRI studies not available for review today, however, the studies reveal multiple level of degenerative disk disease. There appears to be a right disk herniation at L1-2 without nerve root improvement. There is also a moderate central disk herniation at L4-5 without spinal stenosis.

**IMPRESSION:**      **DEGENERATIVE DISK DISEASE.**

**PLAN:**      The patient was advised on conservative treatment. At his age his prognosis is poor for surgical intervention. However, he is not satisfied with conservative treatment. He wishes to be referred to a neurosurgeon. A referral will be made for him. Due to his poor insight into his problem it is my opinion that surgery most likely will not be helpful.


*m Lau*

MARK M. LAU, M.D.

d:    12/19/01
t:    12/21/01:tb:2956


12/19/01    FERNANDEZ, FRANK    D61222    C10/118L    PBSP    ML
ORTHOPEDICS CONSULTATION    *93*

February 15, 2002        **Frank Fernandez, D61222**

**History:**        education with some college.

**Physical Exam**: The patient is awake, alert, and in no acute distress. Height is 5 feet 8 inches. Weight is estimated at 165 pounds. Gait and station are slightly antalgic favoring the right leg. Heel-toe and tandem gait are done well. Romberg is negative. Chest is clear. There is a regular cardiac rhythm.

**Cranial:** Appearance is normal. The patient is oriented to person, place, and time. Judgment and insight are intact. Memory, both short term and remote are intact. Language is normal and the patient is aware of current events and history. Mood and affect are appropriate and displays no depression, anxiety, or agitation. Cranial nerves 2- 12 are normal. Coordination, both gross and fine motor are intact. There is normal facial motility. Papilledema: not tested.

**Neck and Upper Extremities:** Appearance is normal. There are multiple tattoos. Range of motion of the neck is mildly diminished in flexion, extension, lateral bending, and rotation. There is full and painless range of motion of both arms at the shoulders and elbows. Spurling's foraminal compression test is negative bilateral.  Motor exam: (R/L) shoulder shrugging 5/5, infraspinatus 5/5, deltoid 5/5, biceps 5/5, triceps 5/5, wrist extensor 5/5, wrist flexors 5/5, pronation5/5, supination 5/5, grip 5/5, and intrinsics 5/5. There is no obvious rigidity or tremor. Sensory exam is normal. There is no sensory level. There is no Lhermittes. DTR's are biceps 0/0, triceps 0/0 and brachial-radialis 1/0. There is no biceps atrophy. There is no joint enlargement or tenderness. There is no pain on percussion of the cubital or carpal tunnels. Adson's maneuvers are negative. Phalen's is negative.

**Back and Lower Extremities:** Appearance is normal. Waddell's On-block Trunkal Rotation and Axial Loading tests are negative.  The patient can do a full squat and recover. There is normal range of motion of the trunk in all modalities. The back is tender to touch, palpation, and percussion at the lumbosacral junction without sacroiliac or sacral notch tenderness. There is no paravertebral muscle spasm. There is normal alignment without step-offs. Motor exam:(R/L) hip flexors 5/5, extensors 5/5, abductors 5/5, adductors 5/5, hamstrings 5/5, quadriceps 5/5, plantar flexors 5/5, dorsiflexors 5/5, EHL 5/5, EDB 5/5, evertors 5/5, inverters 5/5. Sensory exam is normal. DTR's are quadriceps 0/0, achilles 0/0. There is no calf atrophy. Plantar reflexes are flexor. There is no ankle clonus. There is no leg spasticity. There is full and painless ROM of the legs at the hips. Straight leg raising produces low back pain, bilaterally

**X-rays:** Plain x-rays of the lumbar spine show a normal lordotic curve. There is some increased bone deposition at the L5-S1 facet joints. MRI shows a small paramedian disc herniation at L1

94

February 15, 2002        **Frank Fernandez, D61222**

2. There is a broad-based disc herniation at L4-5. The L4-5 joint is collapsed and degenerated.

**Diagnosis**:    Herniated Lumbar Disk, L4-5 & L1-2, 722.10
                 Lumbago, 724.2
                 Lumbar Spondylosis, 721.3
                 Lumbar Radiculopathy, 724.4
                 Cervicalgia, 723.1
                 Cervical Radiculopathy, resolved, 723.4

**Medical Decision Making:** Since he has more back pain than leg pain, he would need an evaluation for the pain generator. This evaluation would include both diskogram and facet blocks. Final recommendation would be determined on the basis of these test results.

**Recommendation**: Diskogram and facet blocks at L3-4, L4-5, and L5-S1. Recommend we began with the diskogram and post diskogram CT scan at the levels above. I would see him when he returns for the series of facet blocks. These blocks should be done bilateral with each level separated by one-week. The diskogram should be done in Medford by the radiologists. I would do the facet blocks.

Michael W. Potter, M.D.
cc: Pelican Bay State Prison
C:\TEXTOFFICE\DICT\02\0215_Fernandez-D61222.doc

C

COPY

95

04/12/2002:      CT LUMBAR SPINE

INDICATIONS:   Back pain.

FINDINGS:   CT scans were performed through the L3-4 and L4-5, and L5-S1 disks after the injection of contrast.   There is a small anterior annular tear noted at L3-4 with otherwise normal appearing L3-4 nucleus pulposus.

There is diffuse degeneration of the L4-5 nucleus pulposus with annular tear.   There is a central disk protrusion of L4-5 associated with facet arthropathy and ligamentum flavum hypertrophy producing a mild spinal stenosis.

There appears to be a partial posterior annular tear of L5-S1 which does not extend through the periphery of the annulus.

CONCLUSIONS
1.   Small anterior annular tear at L3-4, otherwise normal appearing L3-4 nucleus pulposus.
2.   Diffuse degeneration of the L4-5 nucleus pulposus with annular tears and small central disk protrusion with mild spinal stenosis.
3.   Partial posterior annular tear L5-S1, otherwise normal appearing L5-S1 nucleus pulposus.
4.   There is narrowing of the L4-5 disk space.


                                                   WILLIAM R. NEMZEK, MD

WRN/kpf
D: 04/12/2002   1:43 P   T: 04/12/2002   2:26 P   JOB: 022297   DOCUMENT: 1068564
cc:


   -- Signed by WILLIAM NEMZEK on 04/12/2002 03:18:10 PM PDT






**ROGUE VALLEY MEDICAL CENTER,** Medford OR (RVMC)

DATE OF SERVICE: **04/12/2002**                           Name: Fernando D61222
                                                 CASE: **371583 / 61246419**
Room#: **RAD**                                              DOB: **06/23/1963**
PT TYPE:                         Admitting Physician: **Michael Potter MD**
Rad Index: **23-15-85**          Dictating Physician: **William Nemzek MD**
                                 **RADIOLOGY**
                        Page 1 of 1

                            *96*                              *a*



*FERNANDEZ*

# RADIOLOGY: *BAY*, D61222

**- 04/12/2002**

**Result Information**
Name:                 *BAY* D61222
Date of Birth:        06/23/1963
Facility/Patient ID:  RVMC
Loc./Room/Bed:        RAD //

Date:     04/12/2002
Result:   Radiology
Status:   Signed

**Account Information**
**Account:** 61246419
**Medical Record:** 371883
**Date of Service:** 04/12/2002
**Admitting:** Michael Potter MD
**Dictating:** William Nemzek MD

**Result**

04/12/2002:       LUMBOSACRAL DISKOGRAPHY

INDICATIONS
1.  The patient is a 38-year-old man with a long history of low back pain
    and right leg pain.
2.  He has a history of a herniated disk at L4-5.
3.  Past medical history includes hepatitis C.
4.  There are no prior surgeries.
5.  The patient is allergic to iodine contrast and "Telepaque."

MEDICATIONS: The patient was pretreated with prednisone and Benadryl prior
to the procedure.  Medications include Naproxen b.i.d.

FINDINGS: The procedure, alternatives, and risks were explained to the
patient, who had no additional questions and requested the procedure.

Using aseptic precautions and fluoroscopic guidance, 22 gauge needles were
placed at the L3-4, L4-5, and L5-S1 disks via the left posterior oblique
approach.

Injection of the L3-4 disk is 1.5 cc of contrast and under low pressure
produced typical low back pain described on a scale of 8/10 and being
moderate in intensity.  There was some atypical radiation of pain down the
patient's left leg.  There appeared to be a small annular tear at L3-4 at
fluoroscopy.

Contrast 1.5 cc was injected under low pressure at the L4-5 disk.  The
produced severe mid low back which the patient described as typical of his
symptoms rated on a scale of 10/10.  There is diffuse degeneration of the
L4-5 nucleus pulposus with annular tears.

Injection of 1.5 cc under decreased pressure at the L5-S1 level produced
typical low back pain described on a scale of 8-9/10 with bilateral leg
pain.  The patient received 2 mg of Versed IV prior to the procedure and
25mcg of Fentanyl after the procedure.  The blood pressure was 129/74.
Heart rate was 75.

*RECEIVED*
*MAY 1*
*...*

*97*

CONCLUSIONS
1.  Injection of the L3-4 disk produced moderate typical back pain without leg radiation described on a scale of 8/10. There is a small anterior annular tear at L3-4.
2.  L4-5 diskography demonstrates diffuse degeneration of the L4-5 nucleus pulposus with annular tear and severe typical mid low back pain without radiation described on a scale of 8/10.
3.  L5-S1 diskography demonstrated a normal nucleus pulposus at fluoroscopy with production of typical low back pain described on a scale of 8-9/10 and bilateral leg pain.

                                        WILLIAM R. NEMZEK, MD

WRN/kpf
D: 04/12/2002  1:35 P   T: 04/12/2002  2:14 P   JOB: 022293   DOCUMENT: 1068561
cc:


**Jump To Top**
▶ **Signature**
▼ **Action Log**


04/12/2002 03:18:05 PM PDT -- Signed by William Nemzek/Asante on 04/12/2002 03:17:56 PM
-- Result / Report update received.
04/12/2002 02:27:49 PM PDT -- Result / Report received.


**Jump To Top**



http://edge.asante.md/asante/trans/medresrepportrepos.nsf/MedResReportRepos.nsf/0/A0E... 9.05/02/2002

```
DOCTORS HOSPITAL OF MANTECA   PT:   FERNANDEZ, FRANK
1205 East North Street        MR#:  000253681      DHM
Manteca, CA  95336            PT:   2              RM:
                              ADM:  02/05/2003     DIS:  02/05/2003
D61222                        ACCT: 7054364        AUTH ID:  0942
DOB:  06/23/1963              000228246 KOKORIS
```

**Page 1**                                        **RADIOLOGY REPORT**

cc:   CORRECTIONAL FACILITY

DATE OF SERVICE: February 5, 2003

CLINICAL DATA
Low back pain.

MAGNETIC RESONANCE IMAGING OF THE LUMBAR SPINE

TECHNIQUE
Scanner: General Electric 1.0T Signa MR imaging system.
Sequences: Sagittal T1, sagittal T2, axial T1 and axial T2 (four).

COMPARISON
No comparison studies are available.

FINDINGS
Normal vertebral alignment and vertebral body height are
demonstrated throughout.  Small Schmorl's nodes are visualized along
the superior endplate of L1 and L3.  There is no fracture,
subluxation, spondylolysis or spondylolisthesis.  No paraspinous
mass is detected.  The signal within the disc at the L4-5 level is
diminished, due to desiccation and degeneration.  The conus
medullaries appears normal and terminates at an appropriate level.

Axial images:
L3-4
An extremely subtle, focal right paracentral disc bulge is present
at this level.  There was no associated stenosis of the lateral
recesses, neural foramina or central canal.

L4-5
A large, broad-based central disc protrusion with a small left
paracentral caudal extrusion is documented at this level.  The small
left extrusion appears to tract along the left lateral recess, and
almost recently accounts for the patient's symptoms.  The right
neural foramen is patent.  There is borderline stenosis of the
central spinal canal (anteroposterior dimension 10 mm).

L5-S1

CC:   CORRECTIONAL FACILITY                  99

```
DOCTORS HOSPITAL OF MANTECA   PT:   FERNANDEZ, FRANK
1205 East North Street        MR#:  000253681        DHM
Manteca, CA   95336           PT:   2                RM:
                              ADM:  02/05/2003       DIS:  02/05/2003
D61222                        ACCT: 7054364          AUTH ID:  0942
DOB:  06/23/1963              000228246 KOKORIS
Page 2                                               RADIOLOGY REPORT
```

There is no significant disc bulge or protrusion.  Mild to moderate
arthropathic change and ligamentum flavum hypertrophy has developed
bilaterally.

IMPRESSION
Magnetic resonance imaging of the lumbar spine reveals a moderate,
broad-based central disc protrusion with a mild, but clinically
significant, left paracentral caudal extrusion at the L4-5 vertebral
level. The small left paracentral disc fragment has obliterated the
left lateral recess.   There is only borderline stenosis of the
central spinal canal.

SK:m2
D. 02/05/2003  3:48 P
T. 02/06/2003  7:56 A
JOB #:000228246
DOCUMENT # 941039

                              SAM KOKORIS, M.D.

                              Not Authenticated until
                              electronically signed.


Electronically Authenticated by
SAM KOKORIS, M.D. 02/06/2003 10:18




# X-RAY REPORT

## DEPARTMENT OF CORRECTIONS
### PELICAN BAY STATE PRISON
### HEALTH CARE SERVICES

NAME: FERNANDEZ, FRANK  NO. D61222  RM: C10-102  DOB: 06/23/63  DATE: 12/16/03

EXAM REQUESTED:                LS SPINE

REQUESTING M.D.:               J. ARENAS, M.D.

CLINICAL DATA:                 HISTORY OF PAIN, PREVIOUS SURGERY

RADIOGRAPHIC REPORT:           LS SPINE

FINDINGS:                      Three views are compared to study of 01/08/1998.  In the interval the patient has had posterior instrument fusion at L4-5.  The L5 left pedicle screw is deviated towards the right.  Overall alignment is satisfactory.  Surgical clips are noted anterior to L4.  There is some sclerosis and possibly slight erosion of the end plate of lower L4 and upper L5 which may be related to the previous surgery.  A spacer-like device marked by four small radiopaque dots is noted in adequate position radiographically.  Old mild anterior compression at L1 is noted.

**IMPRESSION:**                **POSTERIOR INSTRUMENT FUSION AT L4-5 WITH DISC SPACER AS DESCRIBED ABOVE. COMPARISON TO PREVIOUS POSTOPERATIVE STUDY MAY BE HELPFUL IF AVAILABLE.**

CLINICAL DATA:                 HISTORY OF PAIN

RADIOGRAPHIC REPORT:           CHEST

FINDINGS:                      Two views reveal normal cardiac silhouette size.  Lung fields appear clear.  Bony thorax is intact.

**IMPRESSION:**                **NO ACTIVE CARDIOPULMONARY DISEASE RADIOGRAPHICALLY. FOLLOW-UP RECOMMENDED AS CLINICALLY INDICATED.**

12/16/03                       GENE BABBITT, M.D.                              LSP
DATE READ                      RADIOLOGIST                                    TRANSCRIBER




# X-RAY REPORT

### DEPARTMENT OF CORRECTIONS
### PELICAN BAY STATE PRISON
### HEALTH CARE SERVICES

NAME: FERNANDEZ, FRANK   NO. D61222   RM: C10-105   DOB:  06/23/63   DATE: 10/22/04

EXAM REQUESTED: LUMBAR SPINE

REQUESTING M.D.: D. M. HECHANOVA, Jr., M.D.

CLINICAL DATA: HISTORY OF LUMBAR FUSION.

RADIOGRAPHIC REPORT: LUMBAR SPINE

FINDINGS: Comparison is made to a previous study dated 12/16/2003.

Posterior instrumentation is again noted with pedicle screws and fixation devices transfixing L4 and L5. Again the L5 pedicle screw on the left is deviated towards the right, which was present on the previous study and unchanged.

A disc spacer is noted at the L4-5 level. Small surgical clips are noted anterior to the L4 vertebral body.

**IMPRESSION:** **PREVIOUS LOW BACK SURGERY INCLUDING DISC SPACER AT L4-5 AND POSTERIOR FIXATION DEVICE AS DESCRIBED IN THE BODY OF THE REPORT. COMPARED TO THE PREVIOUS STUDY, THERE HAS BEEN NO SIGNIFICANT INTERVAL CHANGE.**

**ORIGINAL**

| 10/25/04 | CURTIS COULAM, M.D. | DLK |
| --- | --- | --- |
| DATE READ | RADIOLOGIST  /02 | TRANSCRIBER |

EXHIBIT F

1 MEDICAL CHRONOS FOR AN EXTRA MATTRESS FILED ON :

4-26-2002 BY DR's W. ECHENDU AND DWIGHT W. WINSLOW

10-31-2002 BY DR's CHARLES I. HOOPER AND DOUGLAS C. PETERSON

8-12-2003 BY DR GABRIEL BORGES

10-24-2003 BY DR LINDA ROWE

2-10-2004 BY DR J. TURELLA

10-8-2004 BY DR D. M. HECHANOVA

103



**ZACK**

**PRODUCTS CORPORATION**

800-344-FILE (3453)

**INSTRUCTIONS**

To mount report, pull off the plastic tab. Position
report edges to top and side guide lines, then press
the report down over the exposed adhesive.

The adhesive is *pressure-sensitive:* be sure to
press the report over the adhesive area.

**Name & Number:    FERNANDEZ, FRANK    D61222        C10/118        CDC-128C**

Due to a medical condition, please issue this patient a double mattress for the duration of one (1) year. EXPIRES
April 26, 2003. (Written by: W. Echendu, M.D.)

Original: Medical Records

cc:    Unit Sgt.        Inmate
       CCII-Fac.        C-File
       Capt-Fac

DWIGHT W. WINSLOW, M.D.
Health Care Manager

**Written: 04/26/02**
**Typed: 04/30/02        FERNANDEZ, FRANK    D61222        PBSP/ab        MEDICAL**



/04



**FERNANDEZ, F  CDC# D61222    A  6-2  20L**                                 CDC-128C

**MEDICAL RECOMMENDATION - [HCM] For medical reasons, the following special medical
recommendation is made:
Double mattress.**

CC  Central File
    Assignment Lieutenant
    Housing Unit
    Counselor
    Inmate
    Health Record

*Not valid until signed by Health Care Manager*  *Valid from 10/29/2002 until 10/28/2003*
*below.*

**Douglas C. Peterson, M.D.**          **Charles I. Hooper, D.O.**
*Health Care Manager*                  *Physician and Surgeon*

10/31/2002 11:06:22 AM  CSP-SAC        MEDICAL-PSYCHIATRIC-DENTAL

**FERNANDEZ, F   CDC# D61222     A  6-2  20L**                                 CDC-128C

**SOFT SHOE - Because of a medical condition, this inmate should not be assigned to work where hard
soled, protective shoes must be worn.**



CC  Central File
    Assignment Lieutenant
    Housing Unit
    Counselor
    Inmate
    Health Record

*Valid from 10/29/2002 until 10/28/2003*

**Charles I. Hooper, D.O.**
*Physician and Surgeon*

10/31/2002 11:06:22 AM  CSP-SAC    MEDICAL-PSYCHIATRIC-DENTAL

/05

FERNANDEZ   CDC# D61222   A 62 0000001201                    CDC-128C

LOWER BUNK – Inmate needs to be assigned to a lower bunk for a medical condition.

C.F. Central File
Housing Unit
Counselor
Inmate
Health Record

Valid from 8/12/2005 until 8/02/2008

Gabriel Borges, M.D.
Physician and Surgeon

16/12/2005 2:43:28 PM CSP-SAC          MEDICAL PSYCHIATRIC DENTAL

COPY

106

**PELICAN BAY STATE PRISON**
**HEALTH CARE SERVICES UNIT**
**CHRONO**

NAME: Fernandez Frank  CDC#: D6/222  HOUSE: D8-205  DATE: 10/24/03

The above-named inmate has a medical condition which requires the below-listed medically-indicated chrono(s).

- [ ] COTTON BLANKETS
- [ ] EXTRA MATTRESS
- [ ] EGG CRATE MATTRESS
- [X] EXTRA PILLOWS/WEDGE  *new request*
- [ ] SHORT BEARD
- [ ] TINTED GLASSES–FADE GRAY (Please Circle One: #1  #2  #3)    (By Optometrist Recommendation Only)
- [ ] ORTHOTICS: Type: _____
- [ ] MEDICAL EQUIPMENT: Please check appropriate medical equipment below:

- [ ] LOW BUNK
- [X] LOW BUNK/LOW TIER
- [ ] INSOLES/ARCH SUPPORTS  Size: ____
- [ ] WAIST CHAINS AND DOUBLE CUFFS

- [ ] Cane  [ ] Walker  [ ] Wheelchair  [ ] Crutches  [ ] C-PAP/BIPAP  [ ] Oxygen  [ ] Ice Pack  [ ] Ace Wraps
- [ ] Shower Chair

(When appropriate, please name body part affected and size, e.g., right arm): _____ size: ____

Due to a refusal of (please circle one) **MEDICAL APPOINTMENT/EXAMINATION/TEST/FOLLOW-UP** appointment/(please circle one) **FIRST/SECOND/THIRD** chronic care appointment, the patient is advised that refusal may result in worsening of condition, permanent disability, grave disability, and/or death. You are advised to keep your future medical appointments. If you miss three Chronic Care appointments, you will be removed from the Chronic Care Program, and you must make an appointment with your Primary Care Provider.

EFFECTIVE DATE: 10-24-03    EXPIRATION DATE: 10-24-04

**EFFECTIVE DATE AND EXPIRATION DATE MUST BE PROVIDED FOR CHRONO TO TAKE EFFECT**

Linda Rowe, M.D.

Please Print Name    Signature/Title

DISTRIBUTION: WHITE-Health Record    GREEN-Housing Unit    YELLOW-CCII    PINK-C-File    GOLDENROD-Inmate
***When appropriate, a copy shall be forwarded to Specialty Clinic.

HEALTH RECORDS STAFF SHALL LIST OTHER APPROPRIATE COPIES BELOW AND SHALL DISTRIBUTE ACCORDINGLY: (e.g., Clothing: SHU/GP/L-i):

DATE: 10-24-03  NAME: Fernandez Frank  CDC#: D6/222    PBSP/MEDICAL
6/02.pk    PBSP-HCS 00

101

**HEALTH CARE SERVICES UNIT**
**CHRONO**

NAME: _Fernandez Frank_    CDC#: _D61222_    HOUSE: _C10-105L_    DATE: _10/08/07_

The above-named inmate has a medical condition which requires the below-listed medically-indicated chrono(s).

☐ COTTON BLANKETS                ☒ LOW BUNK/LOW TIER
☒ EGG CRATE MATTRESS             ☒ EXTRA MATTRESS        ⟩ X T year
☒ EXTRA PILLOWS/WEDGE  X + year.  ☐ INSOLES
☒ ORTHOTICS                      ☐ SWEATPANTS
☒ SUNGLASSES                        S/P Lumbar Fusion
                                        Surgery
☒ MEDICAL EQUIPMENT: Please check appropriate medical equipment below:

☒ Cane ☐ Walker ☐ Wheelchair ☒ TENS Units ☐ C-PAP/BIPAP ☒ Oxygen ☐ Ice Pack ☐ Ace Wraps

(When appropriate, please name body part affected, e.g., right arm): _____

EFFECTIVE DATE: _October 8/04_        EXPIRATION DATE: _October 8/05_

**EFFECTIVE DATE AND EXPIRATION DATE MUST BE PROVIDED FOR CHRONO TO TAKE EFFECT**

_D. M. Hechanova, MD_
Please Print Name

_[signature]_
Signature/Title

DISTRIBUTION: <u>WHITE</u>-Medical Record    <u>GREEN</u>-Housing Unit    <u>YELLOW</u>-CCII    <u>PINK</u>-C-File    <u>GOLDENROD</u>-Inmate

HEALTH RECORDS STAFF SHALL LIST OTHER APPROPRIATE COPIES BELOW AND SHALL DISTRIBUTE ACCORDINGLY: (e.g., Clothing: SHU/GP/L-I):

DATE: _10/8/04_    NAME: _Fernandez, Frank_    CDC#: _D61222_    PBSP/MEDICAL

PBSP - HCS 001

109

$EXHIbIT G$

1. MEDICATION ADMINISTRATION RECORDS

**NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.**

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 6/ | | | Ciprofloxacin 750 MG PO BID X 14d |
| 1/17 | | | |
| | 6-10 | 47 | |
| 6/ | 66 | | Audiometry test |
| | | | 1 Gram Tq 20 Tab Tylenol pain X 1 ed |
| 7/7/07 | | | (1.) ENT Consult (written & sent to URN) |
| | | | Daily X 14 ONp |
| | | 4.) Pepto Bismol tablets - Jabs |

**ALLERGIES:** IODINE Continued

**INSTITUTION** PBSP

**ROOM/WING** C6-215

Confidential
client information
See W & I Code, Sections 4514 and 5328

CDC NUMBER, NAME (LAST, FIRST, MI)

D61229

Fernandez, Frank

**PHYSICIAN'S ORDERS**

(11)

CDC 7221 (4/90)
STATE OF CALIFORNIA        94  85598        DEPARTMENT OF CORRECTIONS

TO PHARMACY AFTER EACH ORDER IS SIGNED. ORDER FOR MEDICATION

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 11/25/97 | | | Robaxin Tabs 750 mgm |
| | | | X 30 Days for Back Discomfort |
| | | | Tabs ii am + Tab ii HS |
| | | | ( Do not exceed 4 Tabs |
| | | | Renew 30 Days |

ALLERGIES:  INSTITUTION  ROOM/WING  D1-223

CDC NUMBER, NAME (LAST, FIRST, MI)

D61222

Fernandez, Frank

Confidential client information
See W & I Code, Sections 4514 and 5328

**PHYSICIAN'S ORDERS**

CDC 7221 (4/90)
STATE OF CALIFORNIA   94  85598   DEPARTMENT OF CORRECTIONS

112

# PELICAN BAY
## OVER THE COUNTER

FERNANDEZ, FRANK       D-61222
C10L-120L   DR: ALLEN, EVERETT
420580- 4   RPH: JD      MFG: BD
GLUCOSE TABS 5GM #6          2
USE AS DIRECTED 4X/DAY

START: 08/16/99 STOP: 10/29/98

FERNANDEZ, FRANK       D-61222
C10L-120L   DR: ALLEN, EVERETT
420580-10   RPH: JD      MFG: BD
GLUCOSE TABS 5GM #6          2
USE AS DIRECTED 4X/DAY

START: 10/08/99 STOP: 10/29/99

FERNANDEZ, FRANK       D-61222
C10L-120L   DR: CANNON, R.O.
387673- 8   RPH: JD      MFG: RU
MULTIVITAMINS TABLET        30
TAKE ONE TABLET DAILY

START: 10/29/99 STOP: 02/01/00

FERNANDEZ, FRANK       D-61222
C10L-120L   DR: CANNON, R.O.
388429- 8   RPH: JD      MFG: RU
ASCORBIC ACID 500MG TAB     30
TAKE ONE TABLET DAILY

START: 10/29/99 STOP: 02/04/00

FERNANDEZ, FRANK       D-61222
C10L-120L   DR: MENENDEZ, ROBE
434006- 0   RPH: ES      MFG:
*DC VIT E CREAM # 4 OZ*      0
***** DISCONTINUED ******
***** DISCONTINUED ******
START: 11/22/99 STOP: 12/02/99

FERNANDEZ, FRANK       D-61222
C10L-120L   DR: MENENDEZ, ROBE
435411- 0   RPH: ES      MFG: ZZ
TOLNAFTATE POWDER 1% 45GM    2
USE AS DIRECTED AS NEEDED
(2/MONTH)
START: 12/02/99 STOP: 12/01/00

FERNANDEZ, FRANK       D-61222
C10L-120L   DR: MENENDEZ, ROBE
434007- 0   RPH: ES      MFG:
*DC MYLANTA TABS (GENERI*    0
***** DISCONTINUED ******
***** DISCONTINUED ******
START: 11/22/99 STOP: 12/02/99

For Pain

FERNANDEZ, FRANK       D-61222
C10L-120L   DR: MENENDEZ, ROBE
435404- 0   RPH: ES      MFG: UA
ACETAMINOPHEN 325MG TABS    60
ONE TO 2 TABLETS EVERY 4
HRS AS NEEDED FOR PAIN
START: 12/02/99 STOP: 12/01/00

FERNANDEZ, FRANK       D-61222
C10L-120L   DR: MENENDEZ, ROBE
435407- 0   RPH: ES      MFG: ZZ
VIT E CREAM # 4 OZ           2
USE AS DIRECTED AS NEEDED
8OZ/MONTH
START: 12/02/99 STOP: 12/01/00

FERNANDEZ, FRANK       D-61222
C10L-120L   DR: MENENDEZ, ROBE
435408- 0   RPH: ES      MFG: MS
OMEPRAZOLE 20MG CAP         30
TAKE ONE CAPSULE DAILY

START: 12/02/99 STOP: 06/02/00

FERNANDEZ, FRANK       D-61222
C10L-120L   DR: MENENDEZ, ROBE
435409- 0   RPH: ES      MFG: RU
MYLANTA TABS (GENERIC)     100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 12/02/99 STOP: 12/01/00

| PRINT NAME | MTA | INITIAL | PRINT NAME | MTA | INTIAL |
|---|---|---|---|---|---|
|  | MTA |  | Broce | MTA | C |
|  | MTA |  |  | MTA |  |
|  | MTA |  |  | MTA |  |
|  | MTA |  |  | MTA |  |
|  | MTA |  |  | MTA |  |

| NAME OF INMATE | CDC | MED. ALLERGIES | HOUSING |
|---|---|---|---|
| Fernandez | D 61222 |  | C9720 |

113

# OVER THE COUNTER MEDICATION RECORD

5/11/99
gp

FERNANDEZ, FRANK          D-61222
D01U-219L    DR: CANNON, R.O.
387673- 3   RPH: JD      MFG: RU
MULTIVITAMINS TABLET           30
TAKE ONE TABLET DAILY

START: 05/13/99 STOP: 02/01/00

FERNANDEZ, FRANK          D-61222
D01U-219L    DR: MORROW, JAMES
375244- 7   RPH: JA      MFG: 22
VIT E CREAM # 4 OZ
APPLY DAILY AS NEEDED

START: 05/25/99 STOP: 11/10/99

5/11/99
gp

FERNANDEZ, FRANK          D-61222
D01U-219L    DR: CANNON, R.O.
388428- 3   RPH: JD      MFG: RU
ASCORBIC ACID 500MG TAB       30
TAKE ONE TABLET DAILY

START: 05/13/99 STOP: 02/04/00

FERNANDEZ, FRANK          D-61222
D01U-219L    DR: MORROW, JAMES
375245-27   RPH: JA      MFG: RU
MYLANTA TABS (GENERIC)       100
CHEW AND SWALLOW 2
TABLETS  DAILY AS NEEDED
START: 05/24/99 STOP: 11/10/99

C5-13

FERNANDEZ, FRANK          D-61
D01U-219L    DR: MORROW, JAM
369810-40   RPH: JA      MFG:
GLUCOSE TABS 5GM #6
1-2 TABS TO BE CHEWED
EVERY 4 HRS AS NEED ONLY
START: 05/13/99 STOP: 10/0'

FERNANDEZ, FRANK          D-6122
D01U-219L    DR: MORROW, JAMES
369810-44   RPH: JD      MFG: 8
GLUCOSE TABS 5GM #6
1-2 TABS TO BE CHEWED
EVERY 4 HRS AS NEED ONLY
START: 05/27/99 STOP: 10/09/99

5-20-99
gp

FERNANDEZ, FRANK          D-6122
D01U-219L    DR: MORROW, JAMES
369810-42   RPH: JA      MFG: 1
GLUCOSE TABS 5GM #6
1-2 TABS TO BE CHEWED
EVERY 4 HRS AS NEED ONLY
START: 05/20/99 STOP: 10/07/

FERNANDEZ, RAYMOND        C-80243
D10U-220L    DR: MORROW, JAMES
378749-11   RPH: JD      MFG: RU
MYLANTA TABS (GENERIC)       100
CHEW AND SWALLOW 2
TABLETS 2 TIMES DAILY
START: 05/27/99 STOP: 12/03/99

C5-25

FERNANDEZ, FRANK          D-61
D01U-219L    DR: MORROW, JAM
369810-43   RPH: JA      MFG:
GLUCOSE TABS 5GM #6
1-2 TABS TO BE CHEWED
EVERY 4 HRS AS NEED ONLY
START: 05/24/99 STOP: 10/0'

FOR PAIN

FERNANDEZ, RAYMOND        -8024:
D10U-220L    DR: MORROW, JAMES
378700-14   RPH: JD      MFG: 1
IBUPROFEN TAB 400MG          60
TAKE ONE TABLET 3 TIMES
DAILY AS NEEDED
START: 06/05/99 STOP: 12/03/99

| PRINT NAME | MTA | INITIAL | PRINT NAME | MTA | INITIAL |
|---|---|---|---|---|---|
| F-9//3 | MTA | 9( |  |  | C |
| D. Hanema | MTA | DL; | BROCE | MTA | |
|  | MTA |  |  | MTA |  |
|  | MTA |  |  | MTA |  |
|  | MTA |  |  | MTA |  |

| NAME OF INMATE | CDC # | MED. ALLERGIES | HOUSING |
|---|---|---|---|
| FERNANDEZ, FRANK | 061222 |  | 1-219 |



114

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: PISTONE,JOSEPH
447635- 2  RPH: JD       MFG: ZZ
VIT E CREAM # 4 OZ              2
APPLY TWICE DAILY
            4OZ/WEEK
START: 03/01/00 STOP: 03/16/00

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: MENENDEZ, ROBE
435409-11  RPH: JD       MFG: RU
MYLANTA TABS (GENERIC)         100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 02/28/00 STOP: 12/01/00

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: MENENDEZ, ROBE
435408- 3  RPH: JD       MFG: MS
OMEPRAZOLE 20MG CAP             30
TAKE ONE CAPSULE DAILY

START: 03/06/00 STOP: 06/02/00

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: PISTONE,JOSEPH
447635- 3  RPH: JD       MFG: ZZ
VIT E CREAM # 4 OZ              2
APPLY TWICE DAILY
            4OZ/WEEK
START: 03/08/00 STOP: 03/16/00

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: MENENDEZ, ROBE
435409-12  RPH: JD       MFG: RU
MYLANTA TABS (GENERIC)         100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 03/06/00 STOP: 12/01/00

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: BECKER
454667  0  RPH: PDN      MFG: ZZ
NAPROXEN 375MG TABLET          60
TAKE ONE TABLET 3 TIMES
DAILY
START: 03/31/00 STOP: 06/29/00

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: PISTONE,JOSEPH
447634- 1  RPH: JD       MFG: QU
METHOCARBAMOL 750MG            60
TAKE ONE TABLET TWICE
DAILY FOR ACHES/PAIN
START: 03/17/00 STOP: 04/15/00

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: BECKER
454668  0  RPH: PDN      MFG: ZZ
VIT E CREAM # 4 OZ             1
APPLY DAILY

START: 03/31/00 STOP: 06/29/00

115



*NAME ALERT

# PELICAN BAY STATE PRISON
## OVER THE COUNTER MEDICATION RECORD

FERNANDEZ, FRANK          D-61222
C10L-120L   DR: MENENDEZ, ROBE
435409- 4  RPH: AS      MFG: RU
MYLANTA TABS (GENERIC)        100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 12/27/99 STOP: 12/01/00

1-4-00
KB

FERNANDEZ, FRANK          D-61222
C10L-120L   DR: MENENDEZ, ROBE
435409- 5  RPH: JD      MFG: RU
MYLANTA TABS (GENERIC)        100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 01/03/00 STOP: 12/01/00

1-4-00
KB

FERNANDEZ, FRANK          D-61222
C10L-120L   DR: MENENDEZ, ROBE
435408- 1  RPH: JD      MFG: MS
OMEPRAZOLE 20MG CAP          30
TAKE ONE CAPSULE DAILY

START: 01/03/00 STOP: 06/02/00

1-19-00
KB

FERNANDEZ, FRANK          D-61222
C10L-118L   DR: MENENDEZ, ROBE
435409- 6  RPH: JA      MFG: RU
MYLANTA TABS (GENERIC)        100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 01/18/00 STOP: 12/01/00

1/31/00
BR

FERNANDEZ, FRANK          D-61222
C10L-118L   DR: MENENDEZ, ROBE
435411- 1  RPH: JD      MFG: ZZ
TOLNAFTATE POWDER 1% 45GM      2
USE AS DIRECTED AS NEEDED
(2/MONTH)
START: 01/31/00 STOP: 12/01/00

FOR PAIN
1/31/00
BR

FERNANDEZ, FRANK          D-61222
C10L-118L   DR: MENENDEZ, ROBE
435404- 2  RPH: JD      MFG: UA
ACETAMINOPHEN 325MG TABS       60
ONE TO 2 TABLETS EVERY 4
HRS AS NEEDED FOR PAIN
START: 01/31/00 STOP: 12/01/00

2/7
SG

FERNANDEZ, FRANK          D-61222
C10L-118L   DR: MENENDEZ, ROBE
435407- 2  RPH: JD      MFG: ZZ
VIT E CREAM # 4 OZ             2
USE AS DIRECTED AS NEEDED
8OZ/MONTH
START: 02/09/00 STOP: 12/01/00

1/31/00
BR

FERNANDEZ, FRANK          D-61222
C10L-118L   DR: MENENDEZ, ROBE
435408- 2  RPH: JD      MFG: MS
OMEPRAZOLE 20MG CAP          30
TAKE ONE CAPSULE DAILY

START: 02/02/00 STOP: 06/02/00

2/7
SG

FERNANDEZ, FRANK          D-61222
C10L-118L   DR: MENENDEZ, ROBE
435409- 9  RPH: JD      MFG: RU
MYLANTA TABS (GENERIC)        100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 02/07/00 STOP: 12/01/00

1/31/00
BR

FERNANDEZ, FRANK          D-61222
C10L-118L   DR: MENENDEZ, ROBE
435409- 8  RPH: JD      MFG: RU
MYLANTA TABS (GENERIC)        100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 01/31/00 STOP: 12/01/00

| PRINT NAME | MTA | INITIAL | PRINT NAME | MTA | INTIAL |
|---|---|---|---|---|---|
|  | MTA |  |  | MTA |  |
|  | MTA |  |  | MTA |  |
|  | MTA |  |  | MTA |  |
|  | MTA |  |  | MTA |  |



| NAME OF INMATE | CDC | MED. ALLERGIES | HOUSING |
|---|---|---|---|
| Fernandez, F. | D61222 |  | C10-120 |

**\* NAME ALERT** 116



PELICAN BAY STATE PRISON
OVER THE COUNTER MEDICATION RECORD

| COLUMN 2 | COLUMN 1 |
|---|---|

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: MENENDEZ, ROBE
435409-22  RPH: JA      MFG: RU
MYLANTA TABS (GENERIC)        100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 06/05/00 STOP: 12/01/00

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: MENENDEZ, ROBE
435409-27  RPH: JA      MFG: RU
MYLANTA TABS (GENERIC).        100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 07/20/00 STOP: 12/01/00

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: MENENDEZ, ROBE
435409-26  RPH: JD      MFG: RU
MYLANTA TABS (GENERIC)        100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 07/10/00 STOP: 12/01/00

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: JOHNS, K
462963- 2  RPH: JD      MFG: ZZ
SALSALATE TAB 750MG          60
TAKE ONE TABLET 3 TIMES
DAILY AS NEEDED
START: 07/03/00 STOP: 08/16/00

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: MENENDEZ, ROBE
435409-25  RPH: JD      MFG: RU
MYLANTA TABS (GENERIC)        100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 07/03/00 STOP: 12/01/00

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: MENENDEZ, ROBE
435409-24  RPH: JD      MFG: RU
MYLANTA TABS (GENERIC)        100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 06/26/00 STOP: 12/01/00

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: BECKER
454668- 2  RPH: JA      MFG: ZZ
VIT E CREAM # 4 OZ            1
APPLY DAILY
START: 06/01/00 STOP: 06/29/00

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: JOHNS, K
462963- 1  RPH: JD      MFG: ZZ
SALSALATE TAB 750MG          60
TAKE ONE TABLET 3 TIMES
DAILY AS NEEDED
START: 06/09/00 STOP: 08/16/00

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: JOHNS, K
463014- 1  RPH: JD      MFG: WZ
CHLORZOXAZONE 500MG TAB      60
TAKE 1/2 TABLET FOUR
TIMES DAILY
START: 06/09/00 STOP: 08/16/00

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: MENENDEZ, ROBE
435409-23  RPH: JD      MFG: RU
MYLANTA TABS (GENERIC)        100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 06/19/00 STOP: 12/01/00

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: SANKUS, R.
469646- 0  RPH: PBN     MFG: ZZ
VIT E CREAM # 4 OZ            1
APPLY DAILY
START: 06/23/00 STOP: 09/21/00

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: SANKUS, R.
469647- 0  RPH: PBN     MFG: ZZ
NAPROXEN 375MG TABLET        28
TAKE ONE TABLET 2 TIMES
DAILY
START: 06/23/00 STOP: 07/07/00

| PRINT NAME | MTA | INITIAL | PRINT NAME | MTA | INITIAL |
|---|---|---|---|---|---|
|  | MTA |  |  | MTA |  |
|  | MTA |  | Forsonen |  |  |
|  | MTA |  |  | MTA |  |

| NAME OF INMATE | CDC# | HOUSING |
|---|---|---|
| FERNANDEZ, F. | D-61222 |  |

PELICAN BAY STATE PRISON

## OVER THE COUNTER MEDICATION RECORD

COLUMN 2

COLUMN 1

FERNANDEZ, FRANK          D-61222
C10L-118L     DR: MENENDEZ, ROBE
435409-15   RPH: JD          MFG: JD
MYLANTA TARS (GENERIC)        100
CHEW &SWALLOW 1-2 TARS
EVERY 4 HOURS AS NEEDED
START: 04/11/00 STOP: 12/01/00

FERNANDEZ, FRANK          D-61222
C10L-118L     DR: JOHNS, K
462963-0    RPH: PBN        MFG: ZZ
SALSALATE TAB 750MG            60
TAKE ONE TABLET 3 TIMES
DAILY AS NEEDED
START: 05/18/00 STOP: 08/16/00

5-1-00

FERNANDEZ, FRANK          D-61222
C10L-118L     DR: MENENDEZ, ROBE
435409-18   RPH: JD          MFG: RU
MYLANTA TARS (GENERIC)        100
CHEW &SWALLOW 1-2 TARS
EVERY 4 HOURS AS NEEDED
START: 05/01/00 STOP: 12/01/00

4-17-00

FERNANDEZ, FRANK          D-61222
C10L-118L     DR: MENENDEZ, ROBE
435409-16   RPH: JD          MFG: RU
MYLANTA TARS (GENERIC)        100
CHEW &SWALLOW 1-2 TARS
EVERY 4 HOURS AS NEEDED
START: 04/17/00 STOP: 12/01/00

FERNANDEZ, FRANK          D-61222
C10L-118L     DR: MENENDEZ, ROBE
435409-19   RPH: JD          MFG: RU
MYLANTA TARS (GENERIC)        100
CHEW &SWALLOW 1-2 TARS
EVERY 4 HOURS AS NEEDED
START: 05/08/00 STOP: 12/01/00

FERNANDEZ, FRANK          D-61222
C10L-118L     DR: MENENDEZ, ROBE
435409-17   RPH: JD          MFG: RU
MYLANTA TARS (GENERIC)        100
CHEW &SWALLOW 1-2 TARS
EVERY 4 HOURS AS NEEDED
START: 04/24/00 STOP: 12/01/00

FOR PAIN
5-8-00

FERNANDEZ, FRANK          D-61222
C10L-118L     DR: BECKER
454667-2    RPH: JD          MFG: 77
NAPROXEN 375MG TABLET         60
TAKE ONE TABLET 3 TIMES
DAILY
START: 05/14/00 STOP: 06/29/00

FERNANDEZ, FRANK          D-61222
C10L-118L     DR: MENENDEZ, ROBE
435411-2    RPH: JD          MFG: 77
TOLNAFTATE POWDER 1% 45GM      2
USE AS DIRECTED AS NEEDED
(2/MONTH)
START: 04/24/00 STOP: 12/01/00

FOR PAIN

FERNANDEZ, FRANK          D-61222
C10L-118L     DR: JOHNS, K
463014-0    RPH: PBN        MFG: WZ
CHLORZOXAZONE 500MG TAB       60
TAKE 1/2 TABLET FOUR
TIMES DAILY
START: 05/18/00 STOP: 08/16/00

FOR PAIN

FERNANDEZ, FRANK          D-61222
C10L-118L     DR: BECKER
454667-1    RPH: JD          MFG: 77
NAPROXEN 375MG TABLET         60
TAKE ONE TABLET 3 TIMES
DAILY
START: 04/24/00 STOP: 06/29/00

6-3-00

FERNANDEZ, FRANK          D-61222
C10L-118L     DR: MENENDEZ, ROBE
435409-21   RPH: JA          MFG: RU
MYLANTA TABS (GENERIC)        100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 05/30/00 STOP: 12/01/00

5-1-00

FERNANDEZ, FRANK          D-61222
C10L-118L     DR: BECKER
454668-1    RPH: JD          MFG: 77
VIT E CREAM # 4 OZ             1
APPLY DAILY

START: 05/01/00 STOP: 06/29/00

| PRINT NAME | MTA | INITIAL | PRINT NAME | MTA | INITIAL |
|---|---|---|---|---|---|
|  | MTA |  |  | Bruce  MTA |  |
|  | MTA |  |  | For Sonier |  |
|  | MTA |  |  |  |  |

| NAME OF INMATE | CDC# | HOUSING |
|---|---|---|
| Fernandez | D 61222 | 10-18 |

118

PELICAN BAY STATE PRISON
OVER THE COUNTER MEDICATION CARD

COLUMN 2

FOR PAIN

FERNANDEZ, FRANK        D-61222
C10L-118L   DR: MENENDEZ, ROBE
435404- 3  RPH: JD     MFG: UA
ACETAMINOPHEN 325MG TABS      60
ONE TO 2 TABLETS EVERY 4
HRS AS NEEDED FOR PAIN
START: 10/16/00 STOP: 12/01/00

FERNANDEZ, FRANK        D-61222
C10L-118L   DR: MENENDEZ, ROBE
435409-36  RPH: JD     MFG: RU
MYLANTA TABS (GENERIC)       100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 10/16/00 STOP: 12/01/00

FERNANDEZ, FRANK        D-61222
C10L-118L   DR: MENENDEZ, ROBE
435411- 3  RPH: JD     MFG: ZZ
TOLNAFTATE POWDER 1% 45GM     2
USE AS DIRECTED AS NEEDED
(2/MONTH)
START: 10/16/00 STOP: 12/01/00

FOR PAIN

FERNANDEZ, FRANK        D-61222
C10L-118L   DR: SANKUS, R.
485953- 1  RPH: JD     MFG: ZZ
SALSALATE TAB 750MG          60
TAKE ONE TABLET 3 TIMES
DAILY
START: 10/16/00 STOP: 12/20/00

FOR PAIN 9-22

FERNANDEZ, FRANK        D-61222
C10L-118L   DR: SANKUS, R.
486023- 0  RPH: PBN    MFG: WZ
CHLORZOXAZONE 500MG TAB       30
TAKE 1/2 TABLET 4 X DAILY

START: 09/21/00 STOP: 12/20/00

FERNANDEZ, FRANK        D-61222
C10L-118L   DR: SANKUS, R.
485954- 0  RPH: PBN    MFG: ZZ
VIT E CREAM # 4 OZ            1
APPLY DAILY
AS DIRECTED
START: 09/21/00 STOP: 12/20/00

COLUMN 1

FERNANDEZ, FRANK        D-6122
C10L-118L   DR: MENENDEZ, ROBE
435409-29  RPH: JD     MFG: RU
MYLANTA TABS (GENERIC)       100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 08/22/00 STOP: 12/01/00

FERNANDEZ, FRANK        D-61222
C10L-118L   DR: SANKUS, R.
469646- 2  RPH: JD     MFG: ZZ
VIT E CREAM # 4 OZ            1
APPLY DAILY

START: 08/22/00 STOP: 09/21/00

FERNANDEZ, FRANK        D-61222
C10L-118L   DR: MENENDEZ, ROBE
435409-30  RPH: JD     MFG: RU
MYLANTA TABS (GENERIC)       100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 08/28/00 STOP: 12/01/00

FERNANDEZ, FRANK        D-61222
C10L-118L   DR: MENENDEZ, ROBE
435409-31  RPH: JD     MFG: RU
MYLANTA TABS (GENERIC)       100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 09/05/00 STOP: 12/01/00

FERNANDEZ, FRANK        D-61222
C10L-118L   DR: MENENDEZ, ROBE
435409-32  RPH: JD     MFG: RU
MYLANTA TABS (GENERIC)       100
CHEW &SWALLOW 1-2 TABS
EVERY 4 HOURS AS NEEDED
START: 09/18/00 STOP: 12/01/00

FOR PAIN

FERNANDEZ, FRANK        D-61222
C10L-118L   DR: SANKUS, R.
485953- 0  RPH: PBN    MFG: ZZ
SALSALATE TAB 750MG          60
TAKE ONE TABLET 3 TIMES
DAILY
START: 09/21/00 STOP: 12/20/00

| PRINT NAME | MTA | INITIAL | PRINT NAME | MTA | INITIAL |
|---|---|---|---|---|---|
|  | MTA |  |  | MTA |  |
|  | MTA |  |  | MTA |  |
| NAME OF INMATE | | | CDC# | | HOUSING |
| FERNANDEZ, F. | | | D-61222 | | |

119

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS

| YEAR | MONTH |
|---|---|

| ST/ Fn. | STOP DATE & TIME | MEDICATION, DOSE, ROUTE, SITE | TIME | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

1-17-01

FERNANDEZ, FRANK      D-61222
C10L-118L   DR: SANKUS, R.
500950- 2  RPH: JD    MFG: RU
MYLANTA TABS (GENERIC)     100
CHEW AND SWALLOW 2
TABLETS 4 TIMES DAILY
START: 01/16/01 STOP: 03/18/01

FOR pain
Issued 12/22/00

FERNANDEZ, FRANK      D-61222
C10L-118L   DR: ALLEN, EVERETT
501974- 0  RPH: PBN    MFG: WZ
CHLORZOXAZONE 500MG TAB    60
TAKE 1/2 TABLET 4 TIMES
DAILY AS DIRECTED
START: 12/22/00 STOP: 03/22/01

Issued 1/5/01

FERNANDEZ, FRANK      D-61222
C10L-118L   DR: SANKUS, R.
500950- 1  RPH: JD    MFG: RU
MYLANTA TABS (GENERIC)     100
CHEW AND SWALLOW 2
TABLETS 4 TIMES DAILY
START: 01/05/01 STOP: 03/18/01

Issued 1/5/01 R

FERNANDEZ, FRANK      D-61222
C10L-118L   DR: SANKUS, R.
500951- 1  RPH: JD    MFG: ZZ
VIT E CREAM # 4 OZ      1
APPLY DAILY
START: 01/05/01 STOP: 03/18/01

FOR pain
Issued 1/5/01

FERNANDEZ, FRANK      D-61222
C10L-118L   DR: SANKUS, R.
500952- 1  RPH: JD    MFG: ZZ
SALSALATE TAB 750MG     60
TAKE ONE TABLET 3 TIMES
DAILY
START: 01/05/01 STOP: 03/18/01

Issued 1/5/01 R

FERNANDEZ, FRANK      D-61222
C10L-118L   DR: ALLEN, EVERETT
501974- 1  RPH: JD    MFG: WZ
CHLORZOXAZONE 500MG TAB    60
TAKE 1/2 TABLET 4 TIMES
DAILY AS DIRECTED
START: 01/05/01 STOP: 03/22/01

**INJECTION SITE CODES:**
1) RIGHT UPPER OUTER QUADRANT
2) LEFT UPPER OUTER QUADRANT
3) RIGHT DELTOID
4) LEFT DELTOID
5) RIGHT THIGH
(6) LEFT THIGH
(7) RIGHT ABDOMINAL
(8) LEFT ABDOMINAL
(9) RIGHT VENTRAL GLUTEUS
(10) LEFT VENTRAL GLUTEUS

ALLERGY | DIAGNOSIS

INSTITUTION | PHYSICIAN | ROOM NO.

CDC NUMBER, NAME (LAST, FIRST, MD)

| INITIALS | SIGNATURE | INITIALS | SIGNATURE |
|---|---|---|---|

GH Graham RT1

Fernandez
D61222

CDC 7231-A (7/90)   **OUTPATIENT MEDICATION RECORD**

120

COLUMN 2

COLUMN 1

FOR PAIN

FERNANDEZ, FRANK    D-61222
C10L-118L   DR: WOLF, CARL W.
514381- 0  RPH: PBN   MFG: WZ
CHLORZOXAZONE 500MG TAB   60
TAKE 1 TABLET 3 TIMES
DAILY IF NEEDED
START: 03/05/01 STOP: 06/03/01

FERNANDEZ, FRANK    D-61222
C10L-118L   DR: SANKUS, R.
500950- 3  RPH: JD   MFG: RU
MYLANTA TABS (GENERIC)   100
CHEW AND SWALLOW 2
TABLETS 4 TIMES DAILY
START: 02/05/01 STOP: 03/18/01

FERNANDEZ, FRANK    D-61222
C10L-118L   DR: WOLF, CARL W.
514380- 0  RPH: PBN   MFG: ZZ
SALSALATE TAB 750MG   60
TAKE ONE TABLET 3 TIMES
DAILY IF NEEDED
START: 03/05/01 STOP: 06/03/01

FERNANDEZ, FRANK    D-61222
C10L-118L   DR: SANKUS, R.
500951- 2  RPH: JD   MFG: ZZ
VIT E CREAM # 4 OZ   1
APPLY DAILY
START: 02/05/01 STOP: 03/18/01

FERNANDEZ, FRANK    D-61222
C10L-118L   DR: WOLF, CARL W.
514379- 0  RPH: PBN   MFG: RU
MYLANTA TABS (GENERIC)   100
CHEW AND SWALLOW 2
TABLETS 4 TIMES DAILY
START: 03/05/01 STOP: 06/03/01

FERNANDEZ, FRANK    D-61222
C10L-118L   DR: SANKUS, R.
500952- 2  RPH: JD   MFG: ZZ
SALSALATE TAB 750MG   60
TAKE ONE TABLET 3 TIMES
DAILY
START: 02/05/01 STOP: 03/18/01

FERNANDEZ, FRANK    D-61222
C10L-118L   DR: WOLF, CARL W.
514378- 0  RPH: PBN   MFG: ZZ
VIT E CREAM # 4 OZ   1
APPLY DAILY
START: 03/05/01 STOP: 06/03/01

FERNANDEZ, FRANK    D-61222
C10L-118L   DR: ALLEN, EVERETT
501974- 2  RPH: JD   MFG: WZ
CHLORZOXAZONE 500MG TAB   60
TAKE 1/2 TABLET 4 TIMES
DAILY AS DIRECTED
START: 02/05/01 STOP: 03/22/01

FERNANDEZ, FRANK    D-61222
C10L-118L   DR: ALLEN, EVERETT
501974- 3  RPH: JD   MFG: WZ
CHLORZOXAZONE 500MG TAB   60
TAKE 1/2 TABLET 4 TIMES
DAILY AS DIRECTED
START: 02/26/01 STOP: 03/22/01

FERNANDEZ, FRANK    D-61222
C10L-118L   DR: SANKUS, R.
500950- 4  RPH: JD   MFG: RU
MYLANTA TABS (GENERIC)   100
CHEW AND SWALLOW 2
TABLETS 4 TIMES DAILY
START: 02/26/01 STOP: 03/18/01

FERNANDEZ, FRANK    D-61222
C10L-118L   DR: SANKUS, R.
500952- 3  RPH: JD   MFG: ZZ
SALSALATE TAB 750MG   60
TAKE ONE TABLET 3 TIMES
DAILY
START: 02/26/01 STOP: 03/18/01

FERNANDEZ, FRANK    D-61222
C10L-118L   DR: SANKUS, R.
500951- 3  RPH: JD   MFG: ZZ
VIT E CREAM # 4 OZ   1
APPLY DAILY
START: 03/07/01 STOP: 03/18/01

| PRINT NAME | MTA | INITIAL | PRINT NAME | MTA | INITIAL |
|---|---|---|---|---|---|
| | MTA | | | MTA | |
| | MTA | | | MTA | |
| NAME OF INMATE | | | CDC# | | HOUSING |

## MEDICATION ADMINISTRATION RECORD

| COLUMN 1 | COLUMN 1 |
|---|---|

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
527719- 0   RPH: PBN      MFG: ZZ
TOLNAFTATE POWDER 1% 45GM        1
USE AS DIRECTED

START: 05/14/01 STOP: 08/12/01

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
527720- 0   RPH: PBN      MFG: ZZ
VIT E CREAM # 4 OZ               1
APPLY AS DIRECTED

START: 05/14/01 STOP: 08/12/01

FOR PAIN

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: SANKUS, R.
537143- 0   RPH: ES       MFG: UA
METHOCARBAMOL 500MG TAB        30
TAKE ONE TABLET 3 TIMES
DAILY
START: 06/29/01 STOP: 07/09/01

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: SANKUS, R.
538346- 0   RPH: PBN      MFG: HL
DOXYCYCLINE 100MG TABLET      60
TAKE ONE TABLET TWICE
DAILY
START: 07/06/01 STOP: 10/04/01

7/9- 01

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
527720- 2   RPH: JA       MFG: ZZ
VIT E CREAM # 4 OZ               1
APPLY AS DIRECTED

START: 07/13/01 STOP: 08/12/01

7/9/01

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
527719- 2   RPH: JA       MFG: ZZ
TOLNAFTATE POWDER 1% 45GM        1
USE AS DIRECTED

START: 07/13/01 STOP: 08/12/01

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
514380- 0   RPH: PBN      MFG:
*DC SALSALATE TAB 750MG*
***** DISCONTINUED ******
***** DISCONTINUED ******
START: 03/05/01 STOP: 03/22/01

FOR PAIN

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: SANKUS, R.
517751- 0   RPH: PBN      MFG: GG
NAPROXEN TAB 500MG            60
TAKE ONE TABLET TWICE
DAILY
START: 03/22/01 STOP: 06/20/01

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: SANKUS, R.
525493- 0   RPH: PBN      MFG:
*DC TOLNAFTATE CREAM 30G*
***** DISCONTINUED ******
***** DISCONTINUED ******
START: 05/02/01 STOP: 05/14/01

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: SANKUS, R.
525494- 0   RPH: PBN      MFG:
*DC CHLORZOXAZONE 500MG*
***** DISCONTINUED ******
***** DISCONTINUED ******
START: 05/02/01 STOP: 05/14/01

FOR PAIN

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
527717- 0   RPH: PBN      MFG: GG
NAPROXEN TAB 500MG            60
TAKE ONE TABLET TWICE
DAILY
START: 05/14/01 STOP: 08/12/01

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
527718- 0   RPH: PBN      MFG: RU
MYLANTA TABS (GENERIC)       100
CHEW AND SWALLOW 2
TABLETS 4 TIMES DAILY
START: 05/14/01 STOP: 08/12/01

| PRINT NAME | | MTA | INITIAL |
|---|---|---|---|
| H ATKIN | KM    WK | MTA | DG |
| D. Aanend | | MTA | DG |
| | | MTA | |

| NAME OF INMATE | CDC# | HOUSING |
|---|---|---|
| Fernandez, Frank | D 61222 | |

122

MEDICATION ADMINISTRATION RECORD

| COLUMN 2 | COLUMN 1 |
|---|---|

*HC 8/30/01*

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
550194- 0   RPH: PBN      MFG: RU
MYLANTA TABS (GENERIC)       100
CHEW AND SWALLOW 2 TABS
4 X DAILY IF NEEDED
START: 08/30/01 STOP: 11/28/01

*HC 8/30/01*

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
550195- 0   RPH: PBN      MFG: SB
ARTIFICIAL TEARS 15ML        1
USE AS DIRECTED
DAILY IF NEEDED
START: 08/30/01 STOP: 11/28/01

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
542339- 1   RPH: JD       MFG: RU
MYLANTA TABS (GENERIC)       100
CHEW AND SWALLOW 2
TABLETS 4 TIMES DAILY
START: 08/22/01 STOP: 10/24/01

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
550191- 0   RPH: PBN      MFG: GG
NAPROXEN TAB 500MG           60
TAKE ONE TABLET TWICE
DAILY IF NEEDED
START: 08/30/01 STOP: 11/28/01

*HC 8/30/01*

*FOR PAIN*

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
542340- 1   RPH: JD       MFG: GG
NAPROXEN TAB 500MG           60
TAKE ONE TABLET TWICE
DAILY IF NEEDED
START: 08/25/01 STOP: 10/24/01

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
550192- 0   RPH: PBN      MFG: ZZ
TOLNAFTATE POWDER 1% 45GM    1
USE AS DIRECTED
DAILY
START: 08/30/01 STOP: 11/28/01

*HC 8/30/01*

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
542341- 1   RPH: JD       MFG: ZZ
TOLNAFTATE POWDER 1% 45GM    1
USE AS DIRECTED
DAILY
START: 08/25/01 STOP: 10/24/01

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
550193- 0   RPH: PBN      MFG: ZZ
VIT E CREAM # 4 OZ           1
APPLY AS DIRECTED

START: 08/30/01 STOP: 11/28/01

*HC 8/30/01*

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
542342- 1   RPH: JD       MFG: ZZ
VIT E CREAM # 4 OZ           1
APPLY AS DIRECTED

START: 08/25/01 STOP: 10/24/01

| PRINT NAME | MTA | INITIAL | PRINT NAME | MTA | INITIAL |
|---|---|---|---|---|---|
|  | MTA |  |  | MTA |  |
|  | MTA |  |  | MTA |  |
| NAME OF INMATE | | | CDC# | | HOUSING |

123

MEDICATION ADMINISTRATION . F9RD

| COLUMN 1 | COLUMN 1 |
|---|---|

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: GETTY, GEORGE
557640- 1  RPH: ES    MFG:
*DC DOXYCYCLINE 100MG TA*    0
***** DISCONTINUED ******
***** DISCONTINUED ******
START: 11/01/01 STOP: 11/16/01

11/19/01
rec

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: WOLF, CARL W.
567077- 0  RPH: ES    MFG: GG
NAPROXEN TAB 500MG    60
TAKE ONE TABLET TWICE
DAILY IF NEEDED
START: 11/16/01 STOP: 02/14/02

FOR PAIN
11/19/01
rec

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: WOLF, CARL W.
567082- 0  RPH: ES    MFG: PG
LOWILA SOAP    1
USE AS DIRECTED
DAILY
START: 11/16/01 STOP: 02/14/02

11/19/01
rec

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: WOLF, CARL W.
567078- 0  RPH: ES    MFG: ZZ
TOLNAFTATE POWDER 1% 45GM    1
USE AS DIRECTED AS NEEDED

START: 11/16/01 STOP: 02/14/02

11/19/01
rec

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: WOLF, CARL W.
567079- 0  RPH: ES    MFG: ZZ
VIT E CREAM # 4 OZ    1
APPLY AS DIRECTED
AS NEEDED
START: 11/16/01 STOP: 02/14/02

11/19/01
rec

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: WOLF, CARL W.
567080- 0  RPH: ES    MFG: RU
MYLANTA TABS (GENERIC)    100
CHEW AND SWALLOW 2 TABS
4 X DAILY
START: 11/16/01 STOP: 02/14/02

11/19/01
rec

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: WOLF, CARL W.
567081- 0  RPH: ES    MFG: SB
ARTIFICIAL TEARS 15ML    1
USE AS DIRECTED AS NEEDED

START: 11/16/01 STOP: 05/06/04

11/19/01
rec

| PRINT NAME | MTA | INITIAL | PRINT NAME | MTA | INITIAL |
|---|---|---|---|---|---|
|  | MTA |  |  | MTA |  |
|  | MTA |  |  | MTA |  |

| NAME OF INMATE | CDC# | HOUSING |
|---|---|---|
| Fernandez | 061222 |  |

124

| COL. .1 | COLUMN 1 |
|---|---|

FOR PRN

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
567077- 1  RPH: JD        MFG: GC
NAPROXEN TAB 500MG               6C
TAKE ONE TABLET TWICE
DAILY IF NEEDED
START: 12/16/01 STOP: 02/14/02

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
567078- 1  RPH: JD        MFG: ZZ
TOLNAFTATE POWDER 1% 45GM        1
USE AS DIRECTED AS NEEDED

START: 12/16/01 STOP: 02/14/02

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
567079- 1  RPH: JD        MFG: ZZ
VIT E CREAM # 4 OZ               1
APPLY AS DIRECTED
AS NEEDED
START: 12/16/01 STOP: 02/14/02

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
567080- 1  RPH: JD        MFG: RU
MYLANTA TABS (GENERIC)         100
CHEW AND SWALLOW 2 TABS
4 X DAILY
START: 12/13/01 STOP: 02/14/02

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
567081- 1  RPH: JD        MFG: SB
ARTIFICIAL TEARS 15ML            1
USE AS DIRECTED AS NEEDED

START: 12/16/01 STOP: 05/06/04

moved
12-13-01
JDm

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
567082- 1  RPH: JD        MFG: PG
LOWILA SOAP                      1
USE AS DIRECTED
DAILY
START: 12/16/01 STOP: 02/14/02

| PRINT NAME | MTA | INITIAL | PRINT NAME | MTA | INITIAL |
|---|---|---|---|---|---|
|  | MTA |  | D. Aanend | MTA | DG |
|  | MTA |  |  | MTA |  |

| NAME OF INMATE | CDC# | HOUSING |
|---|---|---|
| Fernandez, Frank | D61222 |  |

125

STATE OF CALIFORNIA                                                                  DEPARTMENT OF CORRECTIONS

| YEAR 2002 | MONTH JAN | MEDICATION, DOSE, ROUTE, SITE | TIME | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| START DATE & TIME | STOP DATE & TIME | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

FERNANDEZ, FRANK       D-61222
10L-118L    DR: WOLF, CARL W.
567077- 2  RPH: JD    MFG: GG
NAPROXEN TAB 500MG        60
TAKE ONE TABLET TWICE
DAILY IF NEEDED        for pain
START: 01/15/02 STOP: 02/14/02

ERNANDEZ, FRANK       D-61222
10L-118L    DR: WOLF, CARL W.
67078- 2  RPH: JD    MFG: ZZ
OLNAFTATE POWDER 1% 45GM     1
JSE AS DIRECTED AS NEEDED

START: 01/15/02 STOP: 02/14/02

FERNANDEZ, FRANK       D-61222
C10L-118L    DR: WOLF, CARL W.
567079- 2  RPH: JD    MFG: ZZ
VIT E CREAM # 4 OZ        1
APPLY AS DIRECTED
AS NEEDED
START: 01/15/02 STOP: 02/14/02

FERNANDEZ, FRANK       D-61222
C10L-118L    DR: WOLF, CARL W.
567080- 2  RPH: JD    MFG: RU
MYLANTA TABS (GENERIC)     100
CHEW AND SWALLOW 2 TABS
4 X DAILY
START: 01/14/02 STOP: 02/14/02

FERNANDEZ, FRANK       D-61222
C10L-118L    DR: WOLF, CARL W.
567081- 2  RPH: JD    MFG: SB
ARTIFICIAL TEARS 15ML     1
JSE AS DIRECTED AS NEEDED

START: 01/14/02 STOP: 05/06/04

**INJECTION SITE CODES:**
(1) RIGHT UPPER OUTER QUADRANT
(2) LEFT UPPER OUTER QUADRANT
(3) RIGHT DELTOID
(4) LEFT DELTOID
(5) RIGHT THIGH
(6) LEFT THIGH
(7) RIGHT ABDOMINAL
(8) LEFT ABDOMINAL
(9) RIGHT VENTRAL GLUTEUS
(10) LEFT VENTRAL GLUTEUS

INSTITUTION
PBSP

PHYSICIAN

ROOM NO.

CDC NUMBER, NAME (LAST, FIRST, MI)

FERNANDEZ, F.
D-61222

ALLERGY

DIAGNOSIS

| INITIALS | SIGNATURE | INITIALS | SIGNATURE |
|---|---|---|---|
| | | ✑ | Folsom |
| | | | |
| | | | |

CDC 7231-A (7/90)    **OUTPATIENT MEDICATION RECORD**

YARD

126

**STATE OF CALIFORNIA**                                                                        **DEPARTMENT OF CORRECTIONS**

| YEAR 2002 | MONTH MAR |
|-----------|-----------|

| | TIME | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|------|---|---|---|---|---|---|---|---|---|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|

FER DEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
582278- 1   RPH: JD     MFG: RU
MYLANTA TABS (GENERIC)      100
CHEW AND SWALLOW 2 TABS
4 X DAILY
START: 03/05/02 STOP: 05/05/02

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
582280- 1   RPH: JD     MFG: GG
NAPROXEN TAB 500MG          60
TAKE ONE TABLET TWICE
DAILY
START: 03/06/02 STOP: 05/05/02

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
582281- 1   RPH: JD     MFG: ZZ
TOLNAFTATE POWDER 1% 45GM     1
USE AS DIRECTED

START: 03/06/02 STOP: 05/05/02

FERNANDEZ, FRANK          D-61222
C10L-118L    DR: WOLF, CARL W.
582282- 1   RPH: JD     MFG: ZZ
/IT    REAM # 4 OZ          1
APPLY AS DIRECTED

START: 03/06/02 STOP: 05/05/02
ERNANDEZ, FRANK          D-61222
10L-118L    DR: WOLF, CARL W.
82284- 1   RPH: JD     MFG: PG
OWILA SOAP                  1
SE AS DIRECTED

TART: 03/06/02 STOP: 05/05/02

**INJECTION SITE CODES:**
(1) RIGHT UPPER OUTER QUADRANT
(2) LEFT UPPER OUTER QUADRANT
(3) RIGHT DELTOID
(4) LEFT DELTOID
(5) RIGHT THIGH
(6) LEFT THIGH
(7) RIGHT ABDOMINAL
(8) LEFT ABDOMINAL
(9) RIGHT VENTRAL GLUTEUS
(10) LEFT VENTRAL GLUTEUS

| INSTITUTION PBSP | PHYSICIAN | ROOM NO. |
|---|---|---|

CDC NUMBER, NAME (LAST, FIRST, MI)

FERNANDEZ, F.
D-61222

| ALLERGY | | DIAGNOSIS | |
|---------|--|-----------|--|

| INITIALS | SIGNATURE | INITIALS | SIGNATURE Folsom |
|----------|-----------|----------|----------|

127

CDC 7231-A (7/90)    **OUTPATIENT MEDICATION RECORD**

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

YEAR 2002    MONTH April

| START DATE & TIME | STOP DATE & TIME | MEDICATION, DOSE, ROUTE, SITE | TIME | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

For pain

FERNANDEZ, FRANK        D-61222
C10L-122L    DR: ECHENDU, A.
597615- 0  RPH: PBN      MFG: GG
NAPROXEN TAB 500MG        60
TAKE ONE TABLET TWICE
DAILY IF NEEDED
START: 04/26/02 STOP: 07/25/02

FERNANDEZ, FRANK        D-61222
C10L-122L    DR: ECHENDU, A.
597616- 0  RPH: PBN      MFG: RU
MYLANTA TABS (GENERIC)      100
CHEW AND SWALLOW 2 TABS
EVERY 8 HOURS IF NEEDED
START: 04/26/02 STOP: 07/25/02

FERNANDEZ, FRANK        D-61222
C10L-122L    DR: ECHENDU, A.
597617- 0  RPH: PBN      MFG: FO,
BACIT/POLY UNG. 15GM        1
APPLY TO TIP OF RIGHT
THUMB DAILY AS DIRECTED
START: 04/26/02 STOP: 05/10/02

**INJECTION SITE CODES:**
(1) RIGHT UPPER OUTER QUADRANT
(2) LEFT UPPER OUTER QUADRANT
(3) RIGHT DELTOID
(4) LEFT DELTOID
(5) RIGHT THIGH
(6) LEFT THIGH
(7) RIGHT ABDOMINAL
(8) LEFT ABDOMINAL
(9) RIGHT VENTRAL GLUTEUS
(10) LEFT VENTRAL GLUTEUS

INSTITUTION  PBSP

PHYSICIAN

ROOM NO  C10-122

CDC NUMBER, NAME (LAST, FIRST, MI)

Fernandez
D-61222

128

ALLERGY

DIAGNOSIS

| INITIALS | SIGNATURE | INITIALS | SIGNATURE |
|---|---|---|---|

CDC 7231-A (7/90)   **OUTPATIENT MEDICATION RECORD**

CDC HCSD-ASU MED/MAR FORM Style #3 (01/93)

MEDICATION ADMINISTRATION RECORD    For the Month of: April    Year: 2002

| OF RN/MTA | Initial | NAME OF RN/MTA | Initial | NAME OF RN/MTA | Initial | NAME OF RN/MTA | Initial |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: WOLF, CARL W.
582278- 2   RPH: JA        MFG: RU
MYLANTA TABS (GENERIC)        100
CHEW AND SWALLOW 2 TABS
4 X DAILY
START: 04/03/02 STOP: 05/05/02

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: WOLF, CARL W.
582280- 2   RPH: JA        MFG: GG
NAPROXEN TAB 500MG        60
TAKE ONE TABLET TWICE
DAILY
START: 04/05/02 STOP: 05/05/02

FERNANDEZ, FRANK        D-6122
C10L-118L    DR: WOLF, CARL W.
582282- 2   RPH: JA        MFG: Z
VIT E CREAM # 4 OZ
APPLY AS DIRECTED

START: 04/05/02 STOP: 05/05/0

FERNANDEZ, FRANK        D-61222
C10L-118L    DR: WOLF, CARL W.
582284- 2   RPH: JA        MFG: PG
LOWILA SOAP        1
USE AS DIRECTED

START: 04/05/02 STOP: 05/05/02

FERNANDEZ, FRANK        D-61222
C10        DR: ISENHART,GEORG
595346- 0   RPH: ES        MFG: ZZ
VIT E CREAM # 4 OZ        1
APPLY AS DIRECTED

START: 04/12/02 STOP: 05/12/02

FERNANDEZ, FRANK        D-61222
C10        DR: ISENHART,GEORG
595342- 0   RPH: ES        MFG: ZZ
TOLNAFTATE POWDER 1% 45GM        1
USE AS DIRECTED

START: 04/12/02 STOP: 05/12/02

FERNANDEZ, FRANK        D-61222
C10        DR: ISENHART,GEORG
595343- 0   RPH: ES        MFG: SB
ARTIFICIAL TEARS 15ML        1
USE AS DIRECTED AS NEEDED

START: 04/12/02 STOP: 05/12/02

FERNANDEZ, FRANK        D-61222
C10        DR: ISENHART,GEORG
595344- 0   RPH: ES        MFG: RU
MYLANTA TABS (GENERIC)        100
CHEW AND SWALLOW 2 TABS
4 X DAILY IF NEEDED
START: 04/12/02 STOP: 05/12/02

FERNANDEZ, FRANK        D-61222
C10        DR: ISENHART,GEORG
595345- 0   RPH: ES        MFG: GG
NAPROXEN TAB 500MG        60
TAKE ONE TABLET TWICE
DAILY
START: 04/12/02 STOP: 05/12/02

FERNANDEZ, FRANK        D-61222
C10        DR: ISENHART,GEORG
595347- 0   RPH: ES        MFG: PG
LOWILA SOAP        1
USE AS DIRECTED

START: 04/12/02 STOP: 05/12/02

| | 20 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
| | 08 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 12 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 18 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | 20 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

NAME: Fernandez, F    CDC#: D/61222    HOUSE: C 10-118        (129)

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

ALLERGIES:

| START DATE & TIME | STOP DATE & TIME | MEDICATION | DATE / / TOUR/ WATCH | / / TIME GIVEN INJ. CODE & INIT'LS | / / TIME GIVEN INJ. CODE & INIT'LS | / / TIME GIVEN INJ. CODE & INIT'LS | / / TIME GIVEN INJ. CODE & INIT'LS | / / TIME GIVEN INJ. CODE & INIT'LS | / / TIME GIVEN INJ. CODE & INIT'LS | / / TIME GIVEN INJ. CODE & INIT'LS |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 11 - 7 | | | | | | | |
| | | FERNANDEZ, FRANK      D-61222 C10L-117L   DR: ECHENDU, A. 597615- 2   RPH: JD    MFG: G0 NAPROXEN TAB 500MG        54 TAKE ONE TABLET TWICE DAILY IF NEEDED START: 06/26/02 STOP: 07/25/02 | | 6/26/02 | | | | | | |
| | | FERNANDEZ, FRANK      D-61222 C10L-117L   DR: ECHENDU, A. 597616- 2   RPH: JD    MFG: RU MYLANTA TABS (GENERIC)     100 CHEW AND SWALLOW 2 TABS EVERY 8 HOURS IF NEEDED START: 06/26/02 STOP: 07/25/02 | | 6/26/02 | | | | | | |
| | | | 11 - 7 | | | | | | | |
| | | | 7 - 3 | | | | | | | |
| | | | 3 - 11 | | | | | | | |
| | | | 11 - 7 | | | | | | | |
| | | | 7 - 3 | | | | | | | |
| | | | 3 - 11 | | | | | | | |
| | | | 11 - 7 | | | | | | | |
| | | | 7 - 3 | | | | | | | |
| | | | 3 - 11 | | | | | | | |
| | | | 11 - 7 | | | | | | | |
| | | | 7 - 3 | | | | | | | |
| | | | 3 - 11 | | | | | | | |

**INJECTION SITE CODES:**
(1) RIGHT UPPER OUTER QUADRANT     (6) LEFT THIGH
(2) LEFT UPPER OUTER QUADRANT      (7) RIGHT ABDOMINAL
(3) RIGHT DELTOID                  (8) LEFT ABDOMINAL
(4) LEFT DELTOID                   (9) RIGHT VENTRAL GLUTEUS
(5) RIGHT THIGH                    (10) LEFT VENTRAL GLUTEUS

| INSTITUTION | PHYSICIAN | ROOM NO. |
|---|---|---|

CDC NUMBER, NAME (LAST, FIRST, MI)

Fernandez
D61222

130

| TRANSCRIBED BY | | CHECKED BY | | RN |
|---|---|---|---|---|
| INITIALS | SIGNATURE | INITIALS | SIGNATURE | |
| | | | | |

CDC 7231 (4/90)   **INPATIENT MEDICATION RECORD**

CDC HCSD-ASU MED/MAR FORM Style #3 (01/93)

# ...CATION ADMINISTRATION RECORD

For the Month of: _____ June    Year: 05

| NAME OF RN/MTA | Initial | NAME OF RN/MTA | Initial | NAME OF RN/MTA | Initial | NAME OF RN/MTA | Initial |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

'83070- 0     DR: DAVID, C
GABAPENTIN SOLN 250/5ML
.200MG TWICE DAILY       240cc

Start: 03/07/2005    Stop: 06/05/2005

gabapentin 12B
24 cc
BID

561      911

FOR PAIN

NAME: FERNANDEZ, FRANK      CDC#: D-61222    HOUSE: C10L-105L      131

CDC HCSD-ASU MED/MAR FORM Style #3 (01/93)

# MEDICATION ADMINISTRATION RECORD

For the Month of: _____ Kelly    Year: 05

| NAME OF RN/MTA | Initial | NAME OF RN/MTA | Initial | NAME OF RN/MTA | Initial | NAME OF RN/MTA | Initial |
|---|---|---|---|---|---|---|---|
| Miller | AV | R. Nelson | N | L. Gray | L | Custer | R |
| L. Graham | H | McCampbell | M | Tik | | CBaker MM | CB |
| | | awn | a | Summon | om | Richardk | CR |

**798626- 0     DR: ALLEN, E**
GABAPENTIN SOLN 250/5ML
1200MG TWICE DAILY
Start: 06/05/2005    Stop: 09/03/2005

**799022- 0     DR: ALLEN, E**
GABAPENTIN SOLN 250/5ML        0
DRUG REQUIRES TRACKING
FORM
Start: 06/01/2005    Stop: 08/30/2005

**799023- 0     DR: ALLEN, E**
GABAPENTIN SOLN 250/5ML        0
1200MG TWICE DAILY
Start: 06/01/2005    Stop: 08/30/2005

FOR PAIN

**NAME:** FERNANDEZ, FRANK        **CDC#:** D-61222        **HOUSE:** C10L-105L        132

## Subjective

**`Entry Date:** 11-15-2006 1309        **Entered By:** MPIMSSER , RISENHOOVER, FNP

**Updated Date:** 11-15-2006 1332        **Updated By:** MPIMSSER , RISENHOOVER, FNP

pt here f/u req extra mattress, extra pillows,low tier,lower bunk chrono expired 9/9/06 pt states i had back surgery 2003 for lumbar disc fusion L4-5 since that time i still have left leg pain constant goes down side of my leg to back of my knee and at times into my foot has numbness/tingling  has been this way since the surgery, the problem w/my back improved was always real painful, then the pain started up in my left leg about 6 months after the surgery, i have been back to the surgeon he said it was probably scar tissue Dr Remington in Modesto i last saw him in 2004."

pt states for exerc i do stretches that is about it"
pt states "on pain scale is 4-5 throb, does not wake me up unless i sleep on my stomach that is why i have extra pillow because when i stretch my legs out straight in the am it is real painful the pillow keeps my legs elevated keeps me from rolling on my side or my stomach." pt deneis incont stool urine"
pt states i was on neurontin but they just took me off said i was on it too long last year i was in CSHU "

pt states i had allergic reaction to iodine doing a test on my kidneys i broke out in hives about 10 yrs ago denies any other drug allergies"

pt states all i am asking you to do is renew my extra mattress every other doctor renewed all the stuff why are you different that is all i am asking

| | |
|---|---|
| **PHYSICIAN'S PROGRESS NOTES** | **CDC #:** D61222<br>**Name(L.F.M.S):** FERNANDEZ, FRANK |
| CDC 7230<br>STATE OF CALIFORNIA    DEPARTMENT OF CORRECTIONS | /33 |

**Provider:** RISENHOOVER, FNP , SUE    **Plan Dt/Tm:** 11-15-2006 1348    **Completed By:** RISENHOOVER, FNP , SUE

**Completed Dt/Tm:** 11-15-2006 1353    **Patient Education:** Y    **Phone Order Status:** NONE

    **Entry Date:** 11-15-2006 1335        **Entered By:** MPIMSSER, RISENHOOVER, FNP

A: 1.s/p L4-5 anterior lumbar interbody fusion w/sextant pedicle screw fixation 8/7/03 per Dr Remington
2. req chrono renewal

1. review mpims  chart # 3
2. try amitriptyline 10mg po qpm dot pain x 14 days
3. review case w/Dr Sayre w/recom renew all chronos except low tier
4. renew chrono due to medical condition one extra mattress x one year  phys order filled out
5. renew chrono due to medical condition one extra pillow x one year one to one exchange
6. informational chrono  discontinue low tier chrono
7. rtc 14 days f/u new medication
8. review Dr Remington cons note 5/17/04 w/recom f/u 6 months w/preclinic ap/lateral spine xrays  was this appt done ? if appt
was not kept will submit to medical committee for review
9. review LS xrays 12/03, MRI LS2/5/03, CT spine 4/12/02
10. reviwe lab 8/06 ast  96 alt 162, review liver bx 2/6/98 gr 1 st 1, 11/14/03 liver bx gr 1-2 st 1

---

## PHYSICIAN'S PROGRESS NOTES

**CDC #:** D61222

**Name(L.F.M.S):** FERNANDEZ, FRANK

CDC 7230
STATE OF CALIFORNIA    DEPARTMENT OF CORRECTIONS

*/3 4*

**Medications**

| Start Dt/Tm | Medication | Strength | Rte | Freq | Duration | Provider |
|---|---|---|---|---|---|---|
| 11-15-2006 1353 | AMITRIPTYLINE HCL 10 MG TAB | 10 MG | PO | QPM | 14 | RISENHOOVER, FNP, SUE |

**Treatments**

| Start Dt: | CPT | Treatment | Freq | Anatomical Location | Provider |
|---|---|---|---|---|---|
| 11-15-2006 1354 | 99999 | RTC 14 DYS F/U NEW MED . | NA | | RISENHOOVER, FNP, SUE |

## Instructions

| Start Dt/Tm | Instruction Type: | Provider |
|---|---|---|
| 11-15-2006 1341 | INFO | RISENHOOVER, FNP, SUE |
| 11-15-2006 1342 | LBK | RISENHOOVER, FNP, SUE |
| 11-15-2006 1342 | XPL | RISENHOOVER, FNP, SUE |

| | **CDC #:** D61222 |
|---|---|
| **PHYSICIAN'S PROGRESS NOTES** | **Name(L.F.M.S):** FERNANDEZ, FRANK |
| | / 35 |

CDC 7230
STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS

## Subjective

**Entry Date:** 03-05-2007 1126                    **Entered By:** MPIMSSER , RISENHOOVER, FNP

**Updated Date:** 03-05-2007 1130                **Updated By:** MPIMSSER , RISENHOOVER, FNP

pt-here f/u new medication states "i did not get that medication" then states i did get it did not help i want something for my
back you don't understand it bothers me i want something what worked the best was gabapentin"
pt states"i don't have an extra mattress i am trying to get one i have only one mattress in my cell right now i have the 602 to
the next level"
pt states "i did not get a current chrono for the low bunk or extra pillow"

## Objective

### Vitals

**Vitals Dt/Tm:** 03-05-2007 1118         **Temp (°F):**   98.2  **Pulse:**   102    **Respiration:** 18

**Blood Pressure:** 144/92        **Wgt:** 170   **Hgt:** ` `        **Provider:** ESTEPA, JR, MTA , ALFONSO

   **Notes:**

### Other

**Name:** f/u new med carafate, review current chrono
**Provider:** RISENHOOVER, FNP , SUE                    **Other Dt/Tm:** 03-05-2007 1130
**Notes:**

| PHYSICIAN'S PROGRESS NOTES | CDC #: D61222 |
|---|---|
| | Name(L.F.M.S): FERNANDEZ, FRANK |
| CDC 7230 | /36 |
| STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS | |

## Pelican Bay State Prison
### Physician Request for Services
(To be completed by requesting Physician and forwarded to Utilization Management RN)

| | | |
|---|---|---|
| Patient's Name: FERNANDEZ, FRANK | CDC #: D61222 | Housing: 403L110L |
| DOB: 06-23-1963 | Gender: MALE | |
| Institution: PBSP | EPRD Date: 00-00-0000 0000 | |
| Principal Diagnosis: BACK DISORDER | | ICD-9 Code: 724.5 |

Location: PHYSICAL THERAPY CLINIC                    Cpt Code: 9999

*Please check all that apply:*

[✓] Initial [ ] Follow Up [ ] Diagnostic [ ] Outpatient [ ] Inpatient [ ] Consultation [ ] Elective

Treatment Priority: [ ] Emergent    [ ] Urgent    [✓] Routine

Proposed Provider: physical therapy LBP      Anticipated Length Of Stay:

Expected Disposition: OUTPAT

Medical Necessity (Briefly describe the clinical situation, history of the illness, treatments used, pertinent lab and imaging studies, etc.)
per pt req referral to physical therapy for LBP


Estimated Time for service delivery, recovery, rehab, and follow up:

Summary of preliminary or diagnostic work up and/or conservative treatment provided within the last three (3) months:



Requesting Physician's Name: RISENHOOVER, FNP, SUE      Date: 08-29-2007 1436

| UM REVIEW | | |
|---|---|---|
| 1st Level: | Signature: MPIMSDKA | Date: 08-30-2007 1036 |
| 2nd Level: | Signature: MPIMSMCS | Date: 09-04-2007 1408 |
| 3rd Level: | Signature: | Date: |

*137*

## Subjective

**Entry Dt/Tm:** 08-30-2007 0839        **Entered By:** MPIMSSER , RISENHOOVER, FNP

**Updated Dt/Tm:** 08-30-2007 0842        **Updated By:** MPIMSSER , RISENHOOVER, FNP

pt here f/u referral phys therapy
pt states "my back is the same I try not to use the naprosyn, pain scale 1-10
is a 5 or 6, esp when I wake up takes me a while to get moving, like a harsh
cramp goes to my calf I feel that throughout the day. Last xray of my back was
2004"

## Objective

### Vitals

**Vitals Dt/Tm:** 08-30-2007 0834        **Temp (°F):** 95.3        **Pulse:** 91        **Respiration:** 16

**Blood Pressure:** 110/70        **Wgt:** 165    **Hgt:** 5'8"        **Provider:** WILSON, MTA , AMANDA

    **Notes:** 0/10 pain scale

### Other

**Name:** f.u referral phys therapy

**Provider:** RISENHOOVER, FNP , SUE                                **Other Dt/Tm:** 08-30-2007 0842

    **Notes:** v/s stable a&o nad color good w/d  gait wnl smiling laughing w/CO's no exam
    today see 7/5/07 hcv cc notes back exam next visit

## Assessment

### Medical Diagnosis

**Code:**  724.5            **Description:** BACK DISORDER

**Axis:**        **GAF:**            **Status:** CURRENT        **Provider:** RISENHOOVER, FNP, SUE

**Diagnosis Dt/Tm:** 08-30-2007 0846        **Resolve Dt/Tm:** 00-00-0000 0000        **Priority:** 001

**Notes:**  chronic lbp

**Code:**  999999            **Description:** NORMAL SKIN

**Axis:**        **GAF:**            **Status:** COMPLETE        **Provider:** SAYRE, MD/CMO, MICHAEL

**Diagnosis Dt/Tm:** 10-05-2005 0920        **Resolve Dt/Tm:** 08-01-2006 0825        **Priority:**

**Notes:**

| **PHYSICIAN'S PROGRESS NOTES** | **CDC #:** D61222 |
| --- | --- |
| | **Name(L,F,M,S):** FERNANDEZ, FRANK |
| CDC 7230 | |
| STATE OF CALIFORNIA        DEPARTMENT OF CORRECTIONS | |

## Plan

**Provider:** RISENHOOVER, FNP , SUE     **Plan Dt/Tm:** 08-30-2007 0846     **Completed By:** RISENHOOVER, FNP , SUE

**Ccmpleted Dt/Tm:** 08-30-2007 0849     **Patient Education:** Y     **Phone Order Status:** NONE

    **Entry Dt/Tm:** 08-30-2007 0846     **Entered By:** MPIMSSER, RISENHOOVER, FNP

```
A: 1. f/u referral phys therapy chro lbbp
1. reviwe mpims
2. dc naprosyn
3. lft today  done
4. review lab 6/12/07
5. ibuprofen 200mg po bid w/food prn pain x 30 dys
6. tylenol 650mg po bid w/increase water prn pain x 30 dys dne one gram/day
7. avoid strenuous exerc  increase stretching warmups   notify rn/lvn prob/conc
8. ls xray                                          ,
```

## Order

### Medications

| Start Dt/Tm | Medication | Strength | Rte | Freq | Duration | Provider |
|---|---|---|---|---|---|---|
| 08-30-2007 0849 | ACETAMINOPHEN 325MG (MAPAP) | 650 MG | PO | BIDPRN | 30 | RISENHOOVER, FNP, SUE |
| 08-30-2007 0849 | IBUPROFEN 200MG TABLET | 200 MG | PO | BIDPRN | 30 | RISENHOOVER, FNP, SUE |

### Treatments

| Start Dt/Tm | CPT | Treatment | Freq | Anatomical Location | Provider |
|---|---|---|---|---|---|
| 08-30-2007 0850 | 99999 | REFER XRAY LS | NA | | RISENHOOVER, FNP, SUE |
| 08-30-2007 0850 | 99999 | RTC 30 DYS F/U LBP | NA | | RISENHOOVER, FNP, SUE |

### Tests

| Order Dt/Tm | Test/Instructions | Ordered By |
|---|---|---|
| 08-30-2007 0849 | LIVER FUNCTION today done | RISENHOOVER, FNP, SUE |
| 08-30-2007 0849 | X-RAY LS | RISENHOOVER, FNP, SUE |

| PHYSICIAN'S PROGRESS NOTES | CDC #: D61222 <br> Name(L,F,M,S): FERNANDEZ, FRANK  |
|---|---|

CDC 7230
STATE OF CALIFORNIA     DEPARTMENT OF CORRECTIONS

ATTACHMENT A

1. APPLICATION TO PROCEED IN FORMA PAUPERIS

Ms. C.E. Wilbur

I am writing your office in order to bring to your attention the enclosed appeal attachment by J. Kravitz ecte al. I had initially filed an ADA appeal on 11-7-06. at which time you informed me that my appeal was void of an indication that I was being denied or impeded medical treatment. therefore as a result you informed me to pursue the matter on a 602 appeal. in which I did do. the 602 appeal was partially granted, in that, I was granted a renewal of my medical chronos for a lower-bunk and an extra pillow. however, I was denied the renewal of my medical chronos for an extra mattress. in light of the above, I am now being denied the accommodation of an extra mattress for my present back ailment, which was the result of a back surgery on 8-7-2003. I have submitted substantial documentation establishing this fact. See pages 7 thru 10 of the 602 appeal. furthermore, I have not changed the issues of my appeal as alleged by J. Kravitz. the issues remain the same. I am merely resubmitting my appeal before your office as I was instructed to do. if I am in violation of some procedural rule, I wish to know what it is. so that I may correct any errors.

In addition, the ADA provisions provide in part that: no qualified individuals with a disability shall, on the basis of disability, be excluded from participation in, or be denied the benefits of the services, activities, or programs of a public entity, or be subjected to discrimination. take note that, my request for the reasonable accommodation of an extra mattress

(ATTACHMENT 4)

(87)

PELICAN BAY STATE PRISON

**APPEAL FORM**
CDC 602 (12/87)

UNIT D-3

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| FERNANDEZ FRANK | D04222 | | D3-110 |

A. Describe Problem: On 9-1-06 I submitted a 7362 to DLNE for Chronic Care as a matter of extra pillow, lower tier/lower bunk. reviewed on 9-15-06 by RN Christenson and asked about getting this change renewed as it expired on 9-1-06. She told me I was there for Chronic Care and to DL is a 7362. I told her I've already submitted it and went over it and discussed it with me and asked if she would then renew it since it already expired. I explained that I've had spinal fusion surgery and that's the reason for the change.

If you need more space, attach one additional sheet.

B. Action Requested: That the chrono be renewed and reasons I stated be answered to address it appropriately.

Inmate/Parolee Signature: _Frank Fernandez_    Date Submitted: ___

C. INFORMAL LEVEL (Date Received: 9-18-06)

Staff Response: _____

Staff Signature: _____    Date Returned to Inmate: ___

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

I am resubmitting this 602 well over the necessary within 15 days for the following reasons. First it was partially approved. Then I was scheduled to see the DR. So I waited until then. I went to see PSP then took on 10-16-06 for the response (see attached)

Signature: _Frank Fernandez_    Date Submitted: 11-17-06
Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E Inmate Claim

NOV 27 REC'D

FEB 01 2007

FEB 0

First Level   ☐ Granted   ☒ P. Granted   ☐ Denied   ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days) Date assigned: 11-27-06   Due Date: _____

Interviewed by: _____

Staff Signature: _____ Title: CFM   Date Completed/Returned: JAN 2 9 2007

Division Head Approved:
Signature: MC Sayer   Title: CMO   Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

I AM PURSUING MY 602 APPEAL AND REQUESTING THAT MY ADA APPEAL BE REPROCESSED BY YOUR OFFICE. I WAS INITIALLY ADVISED BY YOUR OFFICE ON 11-13-2006 THAT I HAD RAISED AN ISSUE IN WHICH I FAILED TO ESTABLISH THAT I WAS DENIED OR IMPEDED (CONTINUED PAGE 5)

Signature: Frank Fernandez   Date Submitted: _____

Second Level   ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days) Date assigned: 2/5/07   Due Date: 3/07
☒ See Attached Letter

Signature: _____ CCII A.   Date Completed: _____
Warden/Superintendent Signature: M M McGee HCM   Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

I am pursuing this appeal to the third level review for two reasons... to bring to your attention the deficient medical department here at Pelican Bay state prison which has and continues to fail to adequately address my medical problem in accordance with article 8, § 3350 (a) of the title 15, penal code 5058 (c); and the eighth and fourteenth amendments of the california and united states ...

Signature: Frank Fernandez   Date Submitted: 2-18-2007

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:   ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other _____
☐ See Attached Letter
CDC 602 (12/87)   Date: JUL 0 8 2007

(63)